IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| ADAM SINDELL,<br>   Plaintiff,<br>v.<br><br>LATONYA COACH, *et al.*,<br>   Defendants. | )<br>)<br>)   CIVIL ACTION FILE NO.:<br>)<br>)<br>)   5:22-cv-00365-CAR<br>) |

### DEFENDANTS' JOINT STATEMENT OF MATERIAL FACTS WARRANTING SUMMARY JUDGMENT

COME NOW the Defendants in the above-styled civil action, and file this joint Statement of Material Facts in connection with their Motion for Summary Judgment:

### BACKGROUND

1. On the date of this incident Plaintiff Adam Sindell was an inmate in the Houston County Detention Center. Sindell Dep. at 64.

2. Defendants are officers who worked at the Detention Center. Doc. 1.

3. Plaintiff knew the rules governing inmates at the jail, having been incarcerated on multiple occasions at this particular facility. Sindell Dep. at 65-66.

4. On June 30, 2020, Officer LaTonya Coach was supervising a dormitory with approximately 80 male prisoners, including Plaintiff. Sindell Dep. at 88;

1

      Coach Dep. at 58-59.

5. On this occasion Plaintiff was locked in his cell and not allowed to leave the cell. Sindell Dep. at 105.

6. Plaintiff wanted to email a message to his girlfriend by using the kiosk, which he could not access due to being locked in his cell. Sindell Dep. at 105.

7. Plaintiff asked Officer Coach for toilet paper. Sindell Dep. at 105.

8. Officer Coach gave toilet paper to another inmate to take to Sindell. Sindell Dep. at 113; Coach Dep. at 59:10-16.

9. Officer Coach caused Plaintiff's cell door to open so that toilet paper could be provided. Sindell Dep. at 105; Coach Dep. at 59:10-16.

## SINDELL LEAVES HIS CELL AND REFUSES ORDERS TO RETURN

10. Plaintiff used that opportunity to leave his cell and go to the kiosk. Sindell Dep. at 120; Pod video at 14:05:40 *et seq*.; Coach Dep. at 59:10-16.

11. According to Plaintiff, the First Amendment assertion in the Complaint relates to officers reacting to his trying to send a message to his girlfriend. Sindell Dep. at 177-178.

12. Officer Coach ordered Plaintiff to go back to his cell. Coach Dep. at 59:17-18; Pod video at 14:05:40 *et seq*.

13. Plaintiff did not respond. Coach Dep. at 59:17-18; Pod video at 14:05:40 *et seq*.

14. In recogniation that there could be a confrontation, and so that other officers could identify Plaintiff as the subject of the call, Coach told all inmates in the pod to lock down. Coach Dep. at 64:20-22; Pod video at 14:05:55 *et seq*.

15. Plaintiff remained at the kiosk, ignoring Coach's orders. Pod video at 14:05:55 *et seq*.

16. All other inmates in the pod went to their cells. Sindell Dep. at 115; Pod video at 14:05:40 *et seq*.; Coach Dep. at 60:2-5.

17. Plaintiff acknowledges he had no special permission to be out of his cell or go to the kiosk. Sindell Dep. at 118, 119.

### OFFICER COACH CALLS FOR BACKUP OFFICERS

18. Officer Coach called for other officers to respond to the pod due to an inmate refusing to lock down. Cleckner Dep. at 38:8-13, 75:9-12; Pod video at 14:07:10 *et seq*.

19. In response to the call, Officers Cleckner and Boerger responded to the dormitory. Cleckner Dep. at 38:8-13, 40:17-18; 43:3-6.

20. Video reveals that Plaintiff remained at the kiosk when Officers Cleckner and Boerger arrived. Pod video at 14:07:42 *et seq*.

## SINDELL REFUSES MORE ORDERS TO LOCK DOWN

21. Officer Cleckner told Plaintiff to lock down at least two or more times. Cleckner Dep. at 41:6-10; Pod video at 14:07:42 *et seq*.

22. According to Plaintiff, Cleckner told him "lock down" and "I'm going to tell you one time to go to your cell." Sindell Dep. at 106.

23. Plaintiff began to move toward the officers. Pod video at 14:07:50 *et seq*.

24. Plaintiff began to argue, clenching his fists and his jaw. Cleckner Dep. at 77:19-22; Boerger IA interview at 1:50 *et seq*.

25. Plaintiff dropped his shoulder, possibly indicating he was preparing an attack. Cleckner Dep. at 41:11-20, 66:17-22.

26. The officers perceived Plaintiff as refusing commands and taking an aggressive posture. Cleckner Dep. at 44:24-25 – 45:1-2; Boerger IA interview at 1:50 *et seq*.

## DEPUTY CLECKNER'S TAKEDOWN

27. Deputy Cleckner put his arms around Plaintiff's knees and took him to the floor. Pod video at 14:07:50 *et seq*.

28. Deputy Boerger supported Plaintiff's upper back area on the way down to make sure that his head did not slam against the concrete. Pod video at 14:07:50 *et seq*.

29. The following are still shots of the takedown from the video recording.

 

Pod video at 14:07:53 *et seq*.

30. According to Plaintiff, he does not recall anything until he was in a hallway. Sindell Dep. at 22.

31. Plaintiff remained conscious and resisted giving up his right arm. Cleckner Dep. at 60:1-8; Boerger IA interview at 2:30 *et seq*.

32. Deputy Boerger got Plaintiff's arm and the deputies cuffed him. Pod video at 14:08 *et seq*.; Boerger IA interview at 3:05.

33. The officers did not strike Plaintiff in any way. Pod video at 14:07:53 *et seq*.; Boerger IA interview at 6:30 *et seq*.

34. The officers tried to pick up Plaintiff, who then went limp. Pod video at 14:08:20 *et seq*.; Boerger IA interview at 3:20 *et seq*.

35. Deputy Cleckner then decided to put Plaintiff in a chair. Cleckner Dep. at

5

61; Pod video at 14:08:43 *et seq*.

## MEDICAL RESPONSE TO ALLEGED SEIZURE

36. After that, Plaintiff began having what the officers interpreted as a seizure. Cleckner Dep. at 61:20-24.

37. An officer called the nurse and other officers to assist. Coach Dep. at 79.

38. Plaintiff was protected from striking hard surfaces, and after stabilization he was wheeled toward the medical unit in a wheelchair. Pod video at 14:18:25 et seq.; Boerger IA video at 4:00 *et seq*.

39. According to Plaintiff, he regained consciousness just before he was taken from a hallway into an outdoor recreation area on the way to the jail's medical facility. Sindell Dep. at 128.

40. Video shows that Plaintiff flopped out of his wheelchair in this area. Hall video at 0:30 *et seq.*; Boerger IA video at 5:40 *et seq*.

41. Whereas Plaintiff claims Officer Cleckner choked him at this point, video reveals Plaintiff's claim is a complete fabrication. Hall video at 0:30 *et seq*.

## NO VERIFIABLE SERIOUS INJURY

42. Officers took Plaintiff to a medical area where he was evaluated and photographed. Sindell Dep. at 51, 138; Medical photos.

43. Photographs reveal the only visible injury was a mildly lacerated lip. Sindell Dep. at 50; Medical photos.

44. According to Plaintiff his injuries included bruising and small cuts, all of which healed within the normal time frame for minor injuries. Sindell Dep. at 52-53.

45. Additionally, Plaintiff claims he has persistent low back pain from the incident. Sindell Dep. at 9.

                                      WILLIAMS & WAYMIRE, LLC

                                      /s/ *Jason Waymire*

                                      JASON C. WAYMIRE
                                      Georgia Bar No: 742602
                                      Attorneys for Defendants

4330 South Lee St., NE
Building 400, Suite A
Buford, Ga 30518-3027
Telephone: (678) 541-0790
Facsimile: (678) 541-0789
jason@wmwlaw.com