IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| ADAM SINDELL,<br>　　Plaintiff,<br>v.<br>LATONYA COACH, *et al.*,<br>　　Defendants. | )<br>)<br>)<br>)  CIVIL ACTION FILE NO.:<br>)<br>)  5:22-cv-00365-CAR<br>) |

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

COME NOW Defendants COACH and CLECKNER and, pursuant to Rule 56 of the Federal Rules of Civil Procedure, respectfully submit this brief in support of their motion for summary judgment by showing the Court the following:

**PROCEDURAL HISTORY**

Plaintiff, a former inmate, filed his complaint under 42 U.S.C § 1983 alleging excessive force and medical indifference claims arising from an incident in the Houston County Jail. Doc. 1. The complaint also references the First Amendment, and asserts claims under state law. Defendants Coach and Cleckner move for complete summary judgment.[1]

**FACTUAL OVERVIEW**

Plaintiff Adam Sindell was an inmate in the Houston County Detention Center. Sindell Dep. at 64. Defendants are officers who worked at the Detention Center. Doc. 1.

---

[1] Plaintiff previously agreed to dismiss Defendant Boerger, so he is not a movant.

Plaintiff knew the jail rules, having been incarcerated on multiple occasions at this particular facility. Sindell Dep. at 65-66.

On June 30, 2020, Officer LaTonya Coach was supervising a dormitory with approximately 80 male prisoners, including Plaintiff. Sindell Dep. at 88; Coach Dep. at 58-59. On this occasion Plaintiff was locked in his cell and not allowed to leave the cell. Sindell Dep. at 105. Plaintiff wanted to email a message to his girlfriend by using the kiosk, which he could not access becaue he was locked in his cell. Sindell Dep. at 105.

Plaintiff asked Officer Coach for toilet paper. Sindell Dep. at 105. Officer Coach gave toilet paper to another inmate to take to Sindell. Sindell Dep. at 113; Coach Dep. at 59:10-16. Officer Coach caused Plaintiff's cell door to open so that toilet paper could be provided. Sindell Dep. at 105; Coach Dep. at 59:10-16.

**PLAINTIFF LEAVES HIS CELL AND REFUSES ORDERS TO RETURN**

Plaintiff used that opportunity to leave his cell and go to the kiosk. Sindell Dep. at 120; Pod video at 14:05:40 *et seq*.; Coach Dep. at 59:10-16. According to Plaintiff, the First Amendment assertion in the Complaint relates to officers reacting to his trying to send a message to his girlfriend. Plaintiff Dep. at 177-178.

Officer Coach ordered Plaintiff to go back to his cell. Coach Dep. at 59:17-18; Pod video at 14:05:40 *et seq*. Plaintiff did not respond. Coach Dep. at 59:17-18; Pod video at 14:05:40 *et seq*. In recogniation that there could be a confrontation, and so that responding officers could identify Plaintiff as the subject of the call, Coach told all inmates in the pod to lock down. Coach Dep. at 64:20-22; Pod video at 14:05:55 *et seq*.

Plaintiff remained at the kiosk, ignoring Coach's orders to lock down. Pod video at 14:05:55 *et seq*. All other inmates in the pod went to their cells. Sindell Dep. at 115; Pod video at 14:05:40 *et seq*.; Coach Dep. at 60:2-5. Plaintiff acknowledges he had no special permission to be out of his cell or go to the kiosk. Sindell Dep. at 118, 119.

### OFFICER COACH CALLS FOR BACKUP OFFICERS

Officer Coach called for other officers to respond to the pod due to an inmate refusing to lock down. Cleckner Dep. at 38:8-13, 75:9-12; Pod video at 14:07:10 *et seq*. In response to the call, Officers Cleckner and Boerger responded to the dormitory. Cleckner Dep. at 38:8-13, 40:17-18; 43:3-6. Video reveals that Plaintiff remained at the kiosk when Officers Cleckner and Boerger arrived. Pod video at 14:07:42 *et seq*.

### SINDELL REFUSES MORE ORDERS TO LOCK DOWN

Officer Cleckner told Plaintiff to lock down at least two or more times. Cleckner Dep. at 41:6-10; Pod video at 14:07:42 *et seq*. According to Plaintiff, Cleckner told him "lock down" and "I'm going to tell you one time to go to your cell." Sindell Dep. at 106. Plaintiff began to move toward the officers. Pod video at 14:07:50 *et seq*. Plaintiff began to argue, clenching his fists and his jaw. Cleckner Dep. at 77:19-22; Boerger IA interview at 1:50 *et seq*. Plaintiff dropped his shoulder, possibly indicating he was preparing an attack. Cleckner Dep. at 41:11-20, 66:17-22. The officers perceived Plaintiff as refusing commands and taking an aggressive posture. Cleckner Dep. at 44:24-25 – 45:1-2; Boerger IA interview at 1:50 *et seq*.

## DEPUTY CLECKNER'S TAKEDOWN

Deputy Cleckner put his arms around Plaintiff's knees and took him to the floor. Pod video at 14:07:50 *et seq*. Deputy Boerger supported Plaintiff's upper back area on the way down to make sure that Plaintiff's head did not slam against the concrete. Pod video at 14:07:50 *et seq*. The following are still shots of the takedown from the video recording.

 

Pod video at 14:07:53 *et seq*. According to Plaintiff, he does not recall anything until he was in a hallway. Sindell Dep. at 22.

Plaintiff remained conscious and resisted giving up his right arm. Cleckner Dep. at 60:1-8; Boerger IA interview at 2:30 *et seq*. Deputy Boerger got Plaintiff's arm and the deputies cuffed Plaintiff. Pod video at 14:08 *et seq*.; Boerger IA interview at 3:05. The officers did not strike Plaintiff in any way. Pod video at 14:07:53 *et seq*.; Boerger IA interview at 6:30 *et seq*.

4

The officers tried to pick up Plaintiff, who then went limp. Pod video at 14:08:20 *et seq.*; Boerger IA interview at 3:20 *et seq*. Deputy Cleckner then decided to put Plaintiff in a chair. Cleckner Dep. at 61; Pod video at 14:08:43 *et seq*.

## MEDICAL RESPONSE TO ALLEGED SEIZURE

After that, Plaintiff began having what the officers interpreted as a seizure. Cleckner Dep. at 61:20-24. An officer called the nurse and other officers to assist. Coach Dep. at 79. Plaintiff was protected from striking hard surfaces, and after stabilization he was wheeled toward the medical unit in a wheelchair. Pod video at 14:18:25 et seq.; Boerger IA video at 4:00 *et seq*.

According to Plaintiff, he regained consciousness just before he was taken from a hallway into an outdoor recreation area on the way to the jail's medical facility. Sindell Dep. at 128. Video shows that Plaintiff flopped out of his wheelchair in this area. Hall video at 0:30 *et seq.*; Boerger IA video at 5:40 *et seq*. Whereas Plaintiff claims Officer Cleckner choked him at this point, video reveals Plaintiff's claim is a complete fabrication. Hall video at 0:30 *et seq*.

## NO VERIFIABLE SERIOUS INJURY

Officers took Plaintiff to a medical area where he was evaluated and photographed. Sindell Dep. at 51, 138; Medical photos. Photographs reveal the only visible injury was a mildly lacerated lip. Sindell Dep. at 50; Medical photos. According to Plaintiff his injuries included bruising and small cuts, all of which healed within the normal time frame for minor injuries. Sindell Dep. at 52-53. Additionally, Plaintiff claims

5

he has persistent low back pain from the incident. Sindell Dep. at 9.

## ARGUMENT AND CITATION OF AUTHORITY

Plaintiff's claims are without merit, barred by qualified immunity, and the use of force involved here was *de minimis* as a matter of law. Accordingly, Defendants are entitled to summary judgment.

### I. QUALIFIED IMMUNITY BARS PLAINTIFF'S FEDERAL CLAIMS

#### A. Qualified Immunity Standards

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.' " Ashcroft v. al-Kidd, 131 S.Ct. 2074, 2085 (2011) (emphases supplied; quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Since it should be undisputed that Defendants acted within their discretionary authority, Plaintiff bears the "the burden ... to show that [Defendants are] not entitled to qualified immunity." Cottone v. Jenne, 326 F.3d 1352, 1358 (11th Cir.2003). Plaintiff must show that the law was so well settled at the time of the operative acts, that each Defendant had fair and clear warning *"that his [or her] conduct was unlawful in the situation [each] confronted."* Saucier v. Katz, 533 U.S. at 202, 121 S.Ct. 2151, 2156 (2001) (emphasis supplied); Cottone, 326 F.3d at 1358. To meet his burden, Plaintiff must show that "existing precedent … placed the statutory or constitutional question **beyond debate**." Stanton v. Sims, 134 S.Ct. 3, 5 (2013) (emphasis added); Reichle v.

6

Howards, 132 S.Ct. 2088, 2089 (2012) (same standard).

### B. Qualified Immunity Bars Plaintiff's Excessive Force Claim

#### 1. Fundamental Fourth Amendment Standards

Plaintiff asserts an excessive force claim based on an incident where he disobeyed lockdown restriction and then refused officer orders to return to his cell. Plaintiff was a pretrial detainee, so this action is governed by the objective reasonableness standard detailed in Kingsley v. Hendrickson, 576 U.S. 389, 135 S. Ct. 2466 (2015). Kingsley identifies the following non-exclusive factors to evaluate this type of claim:

> [1] the relationship between the need for the use of force and the amount of force used; [2] the extent of the plaintiff's injury; [3] any effort made by the officer to temper or to limit the amount of force; [4] the severity of the security problem at issue; [5] the threat reasonably perceived by the officer; and [6] whether the plaintiff was actively resisting.

Kingsley, 576 U.S. at 397.

The objective reasonableness determination must be made "from the perspective of a reasonable officer on the scene," and it must account for the legitimate interests of the institution by "appropriately deferring to 'policies and practices that in th[e] judgment' of … officials 'are needed to preserve internal order and discipline and to maintain institutional security.' " *Id.* (quoting Bell v. Wolfish, 441 U.S. 520, 540, 547, 99 S.Ct. 1861 (1979)). "Decisions made at the scene of a disturbance to restore order are entitled to a degree of deference." Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir.1990).

The absence of imminent danger does not automatically make the use of force unconstitutional, because jail officers can properly use force preemptively to maintain

security or restore order. See Whitley v. Albers, 475 U.S. 312, 322, 106 S.Ct. 1078 (1986) (the deference afforded to prison guards applies not only to measures taken in response to actual imminent danger, but also to "prophylactic or preventive measures" undertaken to avoid such dangers and maintain institutional discipline).

As discussed below, application of the Kingsley factors and controlling case law yields the conclusion that the use of force was not excessive.

**2. Application of the Kingsley Factors**

**a. Use of Force Was Proportional to the Situation**

The first Kingsley factor is "the relationship between the need for the use of force and the amount of force used." Kingsley, 576 U.S. at 397. "The need for the use of force is established by the undisputed evidence that [Plaintiff] created a disturbance." Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990). "Prison guards may use force when necessary to restore order." Id. at 1533.

Plaintiff triggered this situation by breaching his lockdown status and then refusing multiple lawful orders to go back to his cell. The whole pod had to be locked down and backup called. When Officers Cleckner and Boerger arrived, Plaintiff argued and appeared ready to fight. Under the circumstances, some force was authorized to regain control and make Plaintiff comply. The Eleventh Circuit has upheld more significant uses of force in less severe circumstances. Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007). It follows that use force was proportional to the situation, and this first factor favors Defendants.

### b. Plaintiff Did Not Sustain Substantial Injury

The second Kingsley factor is "the extent of the plaintiff's injury." Kingsley, 576 U.S. at 397. An excessive force claim requires Plaintiff to "offer some evidence of injury beyond a minimal one." Bennett, 898 F.2d at 1533. Here, Plaintiff's only verifiable, visible injury was a slight laceration to his inner lip. That is a prototypical *de minimis* injury. See Riggins v. Beseler, 568 F. App'x 850, 853 (11th Cir. 2014); Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir.1994) (*de minimis* injury can serve as conclusive evidence that *de minimis* force was used). Because there was minimal force and no serious injury, this factor favors a finding of reasonable force.

### c. Use of Force Was Limited

The third Kingsley factor is "any effort made by the officer to temper or to limit the amount of force." Kingsley, 576 U.S. at 397. Efforts to temper the severity of force may include "ceasing the use of force once a detainee has been subdued" and "post injury efforts to ameliorate the effects of force used, such as immediately summoning medical assistance." Johnson v. McLaughlin, 5:13-CV-366 MTT, 2014 WL 7662517, at *7 (M.D. Ga. Dec. 9, 2014), *report and recommendation adopted in part,* 5:13-CV-366 MTT, 2015 WL 269134 (M.D. Ga. 2015) (citing Cockrell, 510 F.3d at 1312).

Here, Officer Cleckner performed an ordinary takedown and Officer Boerger broke Plaintiff's fall to prevent injury to Plaintiff from hitting the floor. There was no use of force after that, except to apply handcuffs. Shortly after handcuffing, officers acted to protect Plaintiff from any "seizure" and called the medical staff to manage the incident.

There was very little force at all, and that limited force was mitigated by post-incident measures. Therefore, this factor also supports that Officer Cleckner did not use excessive force.

### d. Plaintiff Needlessly Created a Significant Confrontation

The fourth Kingsley factor is "the severity of the security problem at issue." Kingsley, 576 U.S. at 397. Here, Plaintiff created a significant incident for a trivial reason, namely he wanted to send a kiosk message. The entire pod had to be locked down and Officer Coach was compelled to get other officers involved to deal with Plaintiff's gratuitous conflict. Plaintiff intentionally provoked a confrontation in an environment where order and stability are crucial to safe and secure functioning of the institution.

There is no question that officers "may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir.1990). Plaintiff created a confrontation for no good reason, his intentions were unclear and Officer Cleckner was entitled to use reasonable force to bring the situation under control using the minimal force involved here. The fourth Kingsley factor favors Defendants.

### e. Defendants Reasonably Perceived Plaintiff as a Significant Threat

The fifth Kingsley factor is "the threat reasonably perceived by the officer." Kingsley, 576 U.S. at 397. Here, Defendants recognized that Plaintiff was an intransigent, unrestrained inmate who seemed poised to square off and fight. Reasonable officers could easily view Plaintiff as threatening under these circumstances. In this scenario the

prudent course is to take decisive, preemptive action to prevent a more serious altercation. The fifth Kingsley factor favors Defendants.

### f. The Incident Involved Active Resistance

The sixth Kingsley factor is "whether the plaintiff was actively resisting." Kingsley, 576 U.S. at 397. Here, Plaintiff left his cell in intentional violation of his lockdown status and then refused multiple, repeated orders to return to his cell. Sindell effectively dared Officer Coach—a female responsible to supervise roughly 80 male inmates—to deal with his insubordination by herself. Officer Coach had to respond by locking down every inmate in the pod and calling other officers from their duties. While Plaintiff was not fighting anyone yet, there is no question that his conduct qualified as "active resistance." See Blake v. Orange Cnty. Sheriff's Office, 2023 U.S. App. LEXIS 19104, *7 (11th Cir. 2023) (affirming qualified immunity to officers who used force on handcuffed detainee, where "[b]oth [detainee's] words and body language threatened the officers."). The sixth Kingsley factor favors Defendants.

### 3. Defendant Coach Cannot Be Liable for Defendant Cleckner's Use of Force

Officer Coach did not touch Plaintiff and she did not determine how Officers Cleckner and Boerger would handle the situation. When events occur so quickly that the officer cannot intervene or cannot determine whether another officer's impending force would be excessive, the officer is not liable for her fellow officer's use of force. Fils v. City of Aventura, 647 F.3d 1272, 1290 n.21 (11th Cir. 2011). "Instances of force that occur within seconds do not place officers in a realistic position to intervene." Johnson v.

White, 725 F. App'x 868, 878 (11th Cir. 2018).

Similarly, the Eleventh Circuit has held that in the absence of evidence from which a reasonable jury could find that an officer "could have anticipated and then stopped" another officer from using excessive force, particularly in the case of a single force measure, there is no liability for failing to intervene. Hadley v. Gutierrez, 526 F.3d 1324, 1330-31 (11th Cir. 2008); Riley v. Newton, 94 F.3d 632, 635 (11th Cir. 1996).

Here, video reveals that Officer Coach had no reason to conclude whether or what type of force her fellow officers might use, and she was not close enough to intervene. Had Officer Coach wanted to intervene there was no practical way to do so.

Under the undsiputed facts, there is no basis to hold that Officer Coach had a clear, non-debatable duty under the Fourth Amendment to stop Officer Cleckner from taking Plaintiff to the floor. Therefore, there is no basis for holding Defendant Coach liable for excessive force.

### 4. Qualified Immunity Bars the Excessive Force Claim and Any "Failure to Intervene" Claim

In sum, all of the Kingsley factors indicate that Officer Cleckner's use of force was not excessive and there is no legitimate Fourth Amendment claim. The record demonstrates that Plaintiff instigated this altercation, insisted on the sure escalation that would follow, Defendants responded reasonably under the circumstances, and Plaintiff did not suffer substantial injury. Even if Plaintiff is given every benefit of the doubt, the lawfulness of Defendants' conduct plainly is subject to reasonable debate and there is no binding authority that says otherwise. Therefore, qualified immunity bars this action.

Stanton v. Sims, 134 S.Ct. 3, 5 (2013).

### C. Qualified Immunity Bars Plaintiff's Medical Neglect Claim

Plaintiff asserts a medical deliberate indifference claim, apparently based on what he claims was a seizure. The standards governing a deliberate indifference claim are summarized as follows:

> To establish "deliberate indifference," Plaintiff must show that a Defendant had (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir.2005). Plaintiff must demonstrate that a Defendant was "both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and must also have drawn the inference." Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994).
>
> No liability arises under the Constitution for "an official's failure to alleviate a significant risk that he should have perceived but did not ....". Id. As such, imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. [Cits omitted] Each individual Defendant must be judged separately and on the basis of what that person knows.

Burnette v. Taylor, 533 F.3d 1325, 1330-31 (11th Cir.2008) (cleaned up).

Additionally, an officer "may escape liability for known risks 'if [the officer] responded reasonably to the risk, even if the harm ultimately was not averted.'" Chandler v. Crosby, 379 F.3d 1278, 1290 (11th Cir.2004). Finally, Plaintiff must show causation between the Defendant's improper conduct and constitutionally cognizable harm. Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir.1995).

Here, Plaintiff's medical deliberate indifference claim is completely without merit. Video and undisputed testimony reveal that immediately after Plaintiff began displaying seizure-like activity, officers took steps to protect him from harm. They also called

13

medical staff. Notably, seizures have no immediate cure. The only thing onlookers can do for a seizure victim is provide protection from striking dangerous objects, falling, etc. That is exactly what was done with Plaintiff in this case.

When Plaintiff could be loaded into a wheelchair, he was wheeled to the medical area under medical supervision, then evaluated by the medical staff. There is no evidence that Plaintiff suffered any harm whatsoever from this alleged seizure.

Accordingly, there is no basis for a jury to find "deliberate indifference" by any Defendant. Defendants' prompt and appropriate reaction to the alleged seizure was the exact opposite of indifference, and Plaintiff was not harmed precisely *because* officers took reasonable measures to protect him. Therefore, Plaintiff has no evidence to support the subjective or objective components of a medical neglect claim, and he cannot show causation of harm.

There is no binding authority that told Defendants they had to take some different action in response to an apparent seizure. Thefore, qualified immunity entitles Defendants to summary judgment on the medical indifference claim.

### D. Qualified Immunity Bars Plaintiff's First Amendment Claim

The Complaint technically invokes the First Amendment by stating "[a]ssuming arguendo that Defendants' violent actions were in response to any action by Plaintiff, Defendants' actions were solely in response to protected speech by Plaintiff, a violation of his First Amendment rights." Complaint at ¶ 43. It is quite doubtful that this actually raises a First Amendment claim under Rule 8 (a), but if a claim is raised then it has no

merit.

> To prevail [on a First Amendment retaliation claim], the inmate must establish these elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech.

Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008).

"In order to establish a causal connection, the plaintiff must show that the defendant was subjectively motivated to take the adverse action because of the protected speech." Castle v. Appalachian Tech. Coll., 631 F.3d 1194, 1197 (11th Cir. 2011) (citing Smith, 532 F.3d at 1278 (emphasis added).

As for whether Plaintiff's conduct was protected, "an inmate's First Amendment right to free speech is not protected if affording protection would be inconsistent with the inmate's 'status as a prisoner or with the legitimate penological objectives of the corrections system.'" Smith, 532 F.3d at 1277 (quoting Pell v. Procunier, 417 U.S. 817, 822, 94 S. Ct. 2800 (1974)).

Here, Plaintiff's only asserted protected speech consisted of his sending an email to his girlfriend using the kiosk. Plaintiff was not allowed out of his cell to do anything, including send a message to his girlfriend. Moreover, Defendants did not take action based on the content of any message from Plaintiff to his girlfriend, which Defendants did not even see.

So there is no causal connection between protected speech and officer action. Instead, Defendants were reacting to Plaintiff's violation of the lockdown rule and his

15

persistent refusal to obey lawful orders. The First Amendment provides no protection for a inmate's decision to defy the rules and clear, repeated officer orders. Smith, 532 F.3d at 1277.

Aside from the clear lack of any merit to a First Amendment claim, qualified immunity bars the claim because no binding authority told Defendants that the First Amendment was even implicated in this situation, much less clearly violated in a manner that is "beyond debate." Therefore, qualified immunity entitles Defendants to summary judgment.

## II.    OFFICIAL IMMUNITY BARS PLAINTIFF'S STATE CLAIMS

Plaintiff sues under state law for battery and medical neglect. Doc. 1-1 at 5-6. Under Georgia law, official immunity bars a lawsuit against a police officer in connection with use of force, provision of medical care or supervision of other officers unless the officer acted with actual malice, *i.e.*, an actual intent illegally to cause injury. See Ga. Const. of 1983, Art. I, Sec. 2, Par. IX (d); Alford v. Osei-Kwasi, 203 Ga. App. 716, 721 (1992) (holding jail officer's use of force against inmate was discretionary) ; Daley v. Clark, 282 Ga. App. 235, 245, 638 S.E.2d 376, 385 (2006) (holding that officers' decision whether to undertake CPR was discretionary); Russell v. Barrett, 296 Ga.App. 114, 120, 673 S.E.2d 623, 629 (2009) (official immunity barred claims against sheriff for alleged failure to instruct, train, and supervise deputy).

Even if the Court were to rule that either Defendant's conduct was improper in some respect, that is something far different from the extremely high "actual malice"

showing required to pierce official immunity. Black v. Wigington, 811 F.3d 1259, 1266 (11th Cir.2016) (explaining actual malice standard and stating "Even recklessly illegal conduct does not support an inference of actual malice.").

Given the high standard for "actual malice" and the facts of this case, Plaintiff cannot overcome official immunity. The record reflects that Defendants were deputies who reasonably tried to handle an intransigent inmate. Officer Cleckner used minimal, lawful force and inflicted minimal injury without "actual malice." When officers believed Sindell might have a medical problem, medical staff was called to the scene to provide care. Also, officers took action to protect Plaintiff from injury due to a seizure.

There is no indication that either Defendant intentionally acted to harm Plaintiff in an illegal manner. Therefore, official immunity entitles Defendants to summary judgment on all state law claims.

### III. THE JUSTIFICATION DOCTRINE SHIELDS DEFENDANTS FROM LIABILITY

Under the justification doctrine there is no tort liability "[i]f the defendant in a tort action was authorized to do the act complained of." O.C.G.A. § 51-11-1. Georgia law provided Defendants with authority to use reasonable force to deal with Plaintiff's misconduct.[2] Defendants' actions were lawfully justified under Georgia law, which bars

---

[2] See Williams v. State, 301 Ga. App. 731, 733 (2009) ("A correctional officer is within the lawful discharge of his or her duties when enforcing jail rules. [Cit.] In doing so, such officer may use that force reasonably necessary to effect compliance with the same or to make an arrest, if appropriate, and an inmate has no right to resist the exercise of such reasonable force."); Stewart v. Williams, 243 Ga. 580, 582(2), 255 S.E.2d 699 (1979) (justification defense to false arrest claim); Bell v. Smith, 227 Ga.App. 17, 18, 488 S.E.2d 91 (1997) (person is legally justified in using force against another to the extent he reasonably believes such force is necessary under the circumstances); O.C.G.A. § 16-3-

civil liability.

## IV.     DEFENDANTS CANNOT BE LIABLE FOR PUNITIVE DAMAGES

Plaintiff pleads for punitive damages. Under Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640 (1983), to recover punitive damages a plaintiff must show "conduct … motivated by evil motive or intent, or … reckless or callous indifference to the federally protected rights of others." The undisputed facts here reveal that Plaintiff cannot show a constitutional violation, much less "callous indifference" to his federally protected rights. See Memphis Community School District, 477 U.S. 299, 307 n.9, 106 S.Ct. 2537, 2542 n.9 (1986) (discussing requisite culpable subjective intent required for punitive damages).

Likewise, there is no evidence that meets the even higher standard for state law punitive damages under O.C.G.A. § 51-12-5.1(b) (requiring clear and convincing evidence). Accordingly, Defendants are entitled to summary judgment on Plaintiff's punitive damages claim.

## CONCLUSION

For each of the foregoing reasons, Defendants are entitled to summary judgment. Should the Court dismiss fewer than all Defendants or claims, Defendants respectfully request the Court to certify any dismissal as a final order under Fed. R. Civ. P. 54.

---

21 (a) (right to use force in self defense); O.C.G.A. § 17-4-20 (right to use force in detention or arrest); O.C.G.A. § 35-8-2(5)(A) (jail officer defined).

        Williams & Waymire, LLC

        /s/ Jason Waymire
        Jason C. Waymire
        Georgia Bar No. 742602
        Attorney for Defendants

Bldg. 400, Suite A
4330 South Lee Street
Buford, Georgia 30518
678-541-0790
678-541-0789
jason@wmwlaw.com