IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| ADAM SINDELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION FILE |
| v. | ) | |
| | ) | NO.  5:22-cv-00365-TES |
| LATONYA COACH, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff hereby responds to Defendants' Motion for Summary Judgment as follows:

## INTRODUCTION AND RELEVANT FACTS

Adam Harlen Sindell, "Plaintiff", was a pretrial detainee being housed in the Houston County jail by the Sheriff's Office in June of 2020. Exhibit 1. He is described as being a "playful" individual, including with the jailers, and not "a mean person". Coach Dep. at 88:7-16; 90:1-2. During this time, Plaintiff encountered Defendants who were employed as jailers with the Houston County Sheriff's Office. Exhibit 1; Sindell Dep.; Coach Dep.; Cleckner Dep. Generally each pod could hold up to 85 inmates, however during the COVID pandemic, which is the time frame in which the relevant events in this case

1

occurred, pods were limited to about 50 inmates. Coach Dep. at 55:19 – 56:4.

While the jail had rules for inmates, these rules were arbitrarily enforced. For example, while some jailers were somewhat relaxed on certain rules, Defendant Coach was stricter. Sindell Dep. at 86:12-24. This led to a large portion of the inmates in Defendant Coach's pod being on lockdown at a time, as inmates began doing things that would be permitted by their usual jailers that Defendant Coach would not permit. Id. See also Id. at 87:8-14.

As a stricter jailer with Houston County, Defendant Coach once got onto Plaintiff for allegedly having too many books in his cell. Sindell Dep. at 92:5-8. In Defendant Coach's opinion, inmates as a whole "have a bad habit of hoarding books in their room." Coach Dep. at 91:16-18. According to Plaintiff, Defendant Coach took all of the books in his cell, including his Bible, and threw them in the trashcan, instead of removing any disallowed books. Id. at 92:5 – 93:10. During this encounter, Defendant Coach allegedly pulled Plaintiff's mattress out from under him, flipping him over and injuring his arm when it hit the metal bed. Id. at 92:10-16. As a result of this encounter, Defendant Coach refused to let Plaintiff out of his cell for the entire day, which is over the four hours that would not have generally required a disciplinary report for the inmate. Id. at 93:11-19.

After more than four hours on lockdown, Plaintiff was finally allowed out of lockdown and permitted to use the kiosk, which he was in order to file a grievance against Defendant Coach for the encounter with throwing away his books, including his Bible. Id. at 93:20 – 94:7. To Plaintiff's understanding, Defendant Coach was reprimanded for both pulling the mattress out from under him, as well as having thrown away Plaintiff's Bible. Id. at 95:11-18.

On June 30, 2020, which Plaintiff believes was the day after having his grievance against Defendant Coach substantiated, Defendant Coach put Plaintiff on lockdown for the entire day. Id. at 94:6-7. To Plaintiff's recollection, Defendant Coach had more inmates on lockdown. Id. at 95:23-25. Defendant Coach verbalized that the reason for the stricter rules for the day was due to inmates having "people that want to write grievances on [her]," at which time she pointed to Plaintiff's door. Id. at 96:1-13. Defendant Coach further stated that if the inmates did not like the new rules, then they should "go talk to Room One[,]" which is where Plaintiff was housed, as "[h]e's the reason that this is happening." Id. at 97:11-15.

While Plaintiff was left on lockdown all day, from his perspective being due to filing a grievance against Defendant Coach, he requested toilet paper in order to leave his cell so that he could get a message to his fiancée about what

was happening, and asking that she call the detention center about the situation. Id. at 105:20 – 106:4. Plaintiff hoped that his fiancée would inform the detention center that Plaintiff was being mistreated by Defendant Coach. Id. at 107:4-5. While focused on typing his message, Plaintiff did not hear Defendant Coach's alleged instructions to him or the pod to lockdown. Id. at 115:19 – 116:5. Upon hanging up the kiosk, Plaintiff saw Defendants Cleckner and Boerger coming in. Id. at 106:4-7. At that time, Plaintiff recalled hearing Defendant Coach telling Defendants Cleckner and Boerger: "We got one needs his ass kicked." Id. at 106:20. As Defendant Cleckner advanced toward Plaintiff, Plaintiff peacefully walked toward Defendant Cleckner with his arms at his side and his hands flat with the palms facing upwards. Pod Video at 14:07:55. Defendant Cleckner told Plaintiff to lock down. Id. Plaintiff recalls assenting to the command by verbally saying "Yes sir." Sindell Dep. at 122:1-6.

At this time, Defendant Cleckner grabbed Plaintiff from below the buttocks in an effort to "take him to the ground." Cleckner Dep. at 77:22-24; Pod video at 14:07:55; Exhibit 1 at 11. This method resembled a "form tackle," which is used in football, and not a technique that is taught in Use of Force training. Exhibit 1 at 14, 21. As Defendant Cleckner essentially body-slammed

Plaintiff, Defendant Boerger grabbed Plaintiff's upper torso around the back and shoulders in an unsuccessful attempt to prevent Plaintiff's head from hitting the ground. Pod Video at 14:07:55. Despite this attempt, Plaintiff's head, along with his neck and shoulder, hit the concrete ground before the rest of his body. Id. See also Exhibit 1 at 11. Plaintiff had a moment of visible pain where he can be seen clutching his head with his hand and moaning, and then became unconscious. Id. While unconscious, Defendants Cleckner and Boerger attempted to place handcuffs on Plaintiff, while Defendant Coach did nothing but stand to the side and watch. Id. Plaintiff then began having seizures, at which point Defendants called for the medical unit to respond to the pod, where a blanket was then placed under Plaintiff's head in an attempt to prevent his head from hitting the concrete ground further, and then transported to the medical unit. Prior to this physical take down, Plaintiff was neither physically, nor verbally aggressive, nor had he ever had a history of being an aggressive or threatening inmate. Id. See also Coach Dep. at 59:17-23; Pod video at 14:07:46; Sindell Dep. at 107:8-12; Cleckner Dep. at 56:14-18. Plaintiff further suffered injuries to his wrist and mouth, and suffered from a low grade fever of 99.9 upon the initial evaluation. Exhibit 1. Despite ongoing pain for the months that Plaintiff remained in Houston County Sheriff's Office's custody, he was

mainly treated with things such as ibuprofen, despite multiple grievances submitted in writing by Plaintiff about his ongoing pain. Exhibits 1 and 2.

An internal investigation was conducted by Houston County Sheriff's Office, which was led by Lt. George Runyon who worked in the Office of Professional Standards. See Exhibit 1. The investigation discovered that Defendant Cleckner used a move to take down Plaintiff which was neither approved, nor taught in excessive force training. Id. at 14, 21. The report even concedes that the take down is difficult to watch in the pod video. Id. at 22. It further conceded that Defendant Boerger's allegations in his interview that Plaintiff had clenched jaws was not verifiable on the video. Id. at 21. Apparently, no body camera footage exists to verify any further details of the incident, as none of the defendants admit to utilizing their body cameras, despite there being a policy to have body cameras recording if there was a possibility of an incident. Cleckner Dep. at 79:19 – 80:21, 86:9-24; Coach Dep. at 77:17 – 78:20.

While the internal investigation report contained multiple contradictions to Defendants' accounts of what occurred, it also contained factual inaccuracies, such as stating that after the take down, Defendants Boerger and Cleckner returned Plaintiff to his cell. Id. at 14; Pod video at 14:07:55 onward.

Houston County's Lt. Runyon ultimately opined that, despite this unapproved takedown of a passive and non-threatening inmate, Defendants (who were Houston County Agents) did nothing wrong. Exhibit 1.

In the aftermath of the incident, Plaintiff has continued to suffer with pain, as well as his memory of the incident not being clear due to his seizures and unconsciousness. Sindell Dep. at 83:10-14; 108:2-7. Furthermore, Plaintiff has had to limit his work since the incident, as he normally does labor-intensive side jobs that he is no longer able to do due to the continued pain. Sindell Dep. at 166:17-25.

## **ARGUMENT**

Summary judgment is only appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

## **ARGUMENT AND CITATION OF AUTHORITY**

Plaintiff has a number of clearly established rights, that were clearly established as of the date of the incident, and that were violated by Defendants. Specifically, Plaintiff has a right to be free from the use of excessive force. This is a violation both of state law and of the Fourth, Eighth, and Fourteenth

Amendments to the United States Constitution.

Plaintiff will explain the overview of law in each area, and then address Defendants' claims of immunity as to them.

### Clearly Established that Force Used Must Be Reasonable

It is clearly established law in the Eleventh Circuit that using even *de minimis* force against a handcuffed, non-resisting suspect was unlawful for purposes of qualified immunity as early as February 2002. Saunders v. Duke, 766 F.3d 1262, 1268 (11th Cir. 2014). It was even established that not every disobedience of an order leads to qualified immunity, as "…a court must ask whether a reasonable officer would believe that this level of force *is necessary in the situation at hand.*" *Id.* At 1269, quoting Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002)).

Under the test in Graham v. Connor, the Court must evaluate the facts of each case, including the severity of the crime at issue, whether the suspect poses an immediate threat, and whether or not he is actively resisting arrest. Graham v. Connor, 490 U.S. 386, 396 (1989).

### Other Officers Are Liable if They Are Able To, and Fail To Intervene in Citizens' Rights being Violated

"An officer who is present and in a position to intervene to prevent another

officer from violating the constitutional rights of an arrestee can be held liable for his inaction. *Crenshaw v. Lister*, 556 F.3d 1283, 1293–94 (11th Cir. 2009)." Quick v. Geddie, 763 Fed. Appx. 909, 915 (11th Cir. 2019).

## I.    Defendants are not entitled to qualified immunity to Plaintiff's excessive force claims.

Qualified immunity is immunity from 42 U.S.C. 1983 claims, while official immunity is immunity for state law claims which were undertaken either without malice (if a discretionary duty), or without negligence (if a ministerial duty). Under the qualified immunity doctrine, "officials acting within their discretionary authority are immune from suit unless the official's conduct violates clearly established federal statutory or constitutional rights of which a reasonable person would have known." Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010) (quoting GJR Invs., Inc. v. County of Escambria, 132 F.3d 1359, 1366 (11th Cir. 1998)).

Excessive force claims may be brought under the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution. In this case, Plaintiff has raised excessive force claims under each provision, and Defendants are not entitled to qualified immunity from these 42 U.S.C. § 1983 excessive force claims because there is and has been clearly established law that people have a right to be free from being subjected to excessive force, which specifically includes non-

resisting individuals not being further attacked, and Defendants violated that right.

### a. Plaintiff's excessive force claim under the Fourth Amendment

Excessive force claims are analyzed under the objective reasonableness standard of the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 387 (1989). To determine whether the use of force is "reasonable", the courts look to three main factors: (1) the severity of the crime at issue; (2) whether the plaintiff poses an immediate threat to the safety of the officers or others; and (3) whether the plaintiff is actively resisting arrest or attempting to evade arrest by flight. Id. at 396.

In the present case, Plaintiff's alleged "crime" was seeking help by being at a kiosk without permission so that he could email his fiancée about how Defendant Coach had been continuously mistreating him, and asking his fiancée to call the jail about the situation. In no instance was Plaintiff harming, or threatening to harm himself or others, nor was his behavior a threat to anyone else at the jail.

In fact, Defendant Coach testified that Plaintiff "was no immediate threat to anyone, so everybody and everything was calm." Coach Dep. at 59:17-21. It further cannot be viewed by any reasonable jury that Defendant was a threat to others immediately prior to being body slammed on the concrete floor given that he was one inmate being confronted by three jailers, all of whom were larger than

Plaintiff. These facts demonstrate Defendants' unreasonableness under the first two factors.

Furthermore, Plaintiff was not actively resisting anything. While he did not have permission to be at the kiosk, he was not "resisting" Defendant Coach's orders to lock down, as he did not hear those orders. He further did not resist Defendant Cleckner's orders to lockdown, as he testified that he told Defendant Cleckner "Yes Sir" upon hearing Defendant Cleckner's commands.

At best, Defendants can only argue that any arguable resistance was passive, as nothing indicated that Plaintiff was verbally threatening anyone, nor does the video show him being violent or getting into any sort of fighting stance that would lead a reasonable officer on the scene to believe that he was a threat to anyone. Finally, Plaintiff walked calmly toward Defendant Cleckner as he was giving verbal assent to Defendant Cleckner's commands, indicating that he was complying, not actively fleeing, nor indicating that he was about to attempt to flee the situation. Id. The walk towards Defendant Cleckner was made in a conversational manner rather than any attempt to fight or evade Defendants. Id.

For these reasons, sufficient evidence exists for Plaintiff to prevail on an excessive force claim under the Fourth Amendment of the United States Constitution.

### b. Plaintiff's excessive force claim under the Fourteenth Amendment

Because a pretrial detainee is not convicted of the crime for which he was arrested, he may bring an excessive force claim under the Fourteenth Amendment alleging violations of his substantive due process. Kingsley v. Hendrickson, 576 U.S. 389 (2015). This claim is subject to an objective reasonableness standard, which "turns on the 'facts and circumstances of each particular case[,]' including "what the [defendant] knew at the time, not with the 20/20 vision of hindsight." Id. at 397.

The Supreme Court established six factors to apply in Kingsley in order to determine whether the defendant's use of force was "objectively reasonable": (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or to limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting. Id.

In the instant case, Plaintiff was doing nothing to require the use of force against him. He was in the process of complying with orders from jailers who are charged with the safety and security of inmates.

Plaintiff asserts that the force used in this case was well beyond excessive.

12

Plaintiff was merely at a kiosk asking for help in reporting the targeted abuse by Defendant Coach, which Plaintiff asserts was retaliation for having filed a grievance against Defendant Coach for throwing away Plaintiff's Bible.

Plaintiff was no immediate threat to anyone in the jail while at the kiosk, nor when Defendant Coach called for backup and Defendants Cleckner and Boerger responded.

Plaintiff verbally and physically assented to Defendant Cleckner's command to return to his cell, and posed no physical or verbal threats to any of the defendants. Despite these facts, Defendant Cleckner took no measures to limit the force used against Plaintiff, despite Plaintiff being unarmed, outnumbered by the defendants, and compliant and non-threatening.

When Plaintiff was in the process of going to "lock down" as ordered, Defendant Cleckner immediately body slammed Plaintiff into the concrete ground, causing him to go unconscious and have seizures, and subsequently be diagnosed with a hematoma on the head and a concussion. Even a fellow deputy, Defendant Boerger, though verbally denying excessive force, obviously noticed the force was so excessive that he attempted to prevent Plaintiff's head from hitting the concrete.

While Defendants state that they perceived Plaintiff as a threat, this is post-hac rationalization that is not supported by the video evidence. While Defendants

are speculating on Plaintiff's mindset, and inventing that they saw Plaintiff "drop his shoulder" and twitch his jaws, none of this was caught on the pod video. Furthermore, Defendant Cleckner inaccurately testified that he saw Plaintiff's hands clenched, which was clearly contradicted by the video, as Plaintiff's hands remained by his sides with his palms open and facing outwards in a non-threatening manner.

Additionally, there was no significant security risk at issue, as Plaintiff was the only inmate in the pod and no evidence suggests that there was any other form of threat to Defendants from any source, including but not limited to other inmates, weapons or items that could be used against Defendants, or even any prior knowledge of Plaintiff being aggressive during any of the roughly two years total which he spent in the Houston County jail.

Given these facts, no reasonable officer would have seen Plaintiff as a threat to require the amount of physical force used that resulted in Plaintiff being thrown into unconsciousness and seizures, and resulting in a diagnosed concussion.

Finally, Defendants inaccurately argue that Plaintiff engaged in "active resistance" by stating that Plaintiff intentionally left his cell to use the kiosk, refused repeated commands to return to his cell, and that Plaintiff "effectively dared [Defendant] Coach—a female officer responsible to supervise roughly 80

male inmates—to deal with his [alleged] insubordination by herself".

The evidence suggests otherwise.

Defendants concede that Plaintiff was not fighting anyone, including Defendant Coach testifying herself that Plaintiff "was no immediate threat to anyone" and that "everything was calm."

The evidence shows that Plaintiff was not deliberately disobeying orders to lock down, but that Plaintiff did not hear Defendant Coach's alleged orders to lockdown, and that he was complying to Defendant Cleckner's commands to do so. There is no evidence of Plaintiff attempting to flee from Defendants once Defendants confronted him.

Defendants fail to acknowledge that the Houston County Sheriff's Office would not have placed Defendant Coach in this position, nor promoted her in her three years with the Office, had they not found Defendant Coach capable of handling inmates in any given situation, especially one as non-threatening as the one shown in the video.

Defendant Coach is visibly larger than Plaintiff, and was not left to handle any alleged "insubordination" on her own, but had the backup of two large males who also far exceeded Plaintiff in size. Defendants fail to convey to the Court that this incident occurred during the COVID pandemic, where the pod "did not exceed

50 inmates[,]" which from Defendant Coach's perspective "were not that many inmates" which made it "easier" for her to do her job "because there were not that many inmates." Coach Dep. at 55:22 – 56:2.

Given the evidence as stated above, no officer could reasonably perceive Plaintiff as actively resisting Defendants' commands to lockdown. Plaintiff should survive summary judgment on his excessive force claim under the Fourteenth Amendment.

### c.  Plaintiff's excessive force claim under the Eighth Amendment

The Eighth Amendment to the United States Constitution protects inmates from excessive force, which protects inmates against excessive or cruel punishments. There are two types of inmates: convicted prisoners, and non-convicted, pretrial detainees. At the time of the incident, Plaintiff was a pretrial detainee.

While convicted prisoners have various factors that they must prove in order to prevail on an excessive force claim under the Eighth Amendment, "[p]retrial detainees, (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically'." Kingsley v. Hendrickson, 576 U.S. 389, 400 (2015). The rationale behind this distinction is due to the fact that while a prisoner is imprisoned for punishment of a crime for which he was convicted, a pretrial

detainee is not convicted of any crime, but is "committed to the county [jail] . . . only for safe custody, and not for punishment[.]" Id. at 401.

Generally excessive force claims under the Eighth Amendment are reserved for convicted prisoners. However, considering that there is evidence that Plaintiff suffered abuses by Defendant Coach when she threw away his Bible, and that Plaintiff was targeted for filing a grievance against Defendant Coach for that incident, Plaintiff maintains that he has an excessive force claim under the Eighth Amendment.

## II.    Defendant Coach is not entitled to qualified immunity to Plaintiff's failure to intervene claim

"An officer who is present and in a position to intervene to prevent another officer from violating the constitutional rights of an arrestee can be held liable for his inaction. *Crenshaw v. Lister*, 556 F.3d 1283, 1293–94 (11th Cir. 2009)." Quick v. Geddie, 763 Fed. Appx. 909, 915 (11th Cir. 2019).

In the present case, Defendant Coach was present when Defendant Cleckner used excessive force against Plaintiff, and rather than attempting to prevent the excessive force, she remained to the side and watched as Plaintiff was thrown to the concrete ground, and then roughly pulled upon to be handcuffed while unconscious. Furthermore, there is evidence that Defendant Coach not only failed to intervene, but encouraged the excessive force against Plaintiff when she

allegedly told Defendants Cleckner and Boerger that Plaintiff "needs his ass kicked." Sindell Dep. at 106:20. This is active encouragement and support of unconstitutional actions.

For these reasons, Plaintiff should survive summary judgment on his failure to intervene claim against Defendant Coach.

**III.    Defendants are not entitled to qualified immunity against Plaintiff's First Amendment claim.**

To prevail on a First Amendment Retaliation Claim, the plaintiff must show that (1) he engaged in constitutionally-protected speech; (2) that he suffered from adverse, retaliatory action that would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech. Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008). Plaintiff can meet each element in this case.

First, Plaintiff filed a grievance against Defendant Coach for throwing away his Bible when Plaintiff allegedly had "too many books" in his cell. Sindell Dep. at 112:1-3. Secondly, Defendant Coach placed Plaintiff on lockdown because of the grievance he filed against her, and ignored Plaintiff on the intercom when he attempted to inquire as to why he was on lockdown. Id.; see also Id. at 10-23.

Furthermore, Defendant Coach allegedly told the entire dormitory in which Plaintiff was housed that they would not be able to pass extra food trays and that

they would eat in their cells "all because [they] got people [such as Plaintiff] that want to write grievances on [her]," which she stated while pointing at Plaintiff's door. Sindell Dep. at 96:8-13. She further allegedly told the other inmates that if they did not like it, "go talk to Room One. He [Plaintiff] is the reason this is happening." Id. at 97:11-15.

Given these facts, Plaintiff has demonstrated sufficient evidence to overcome a motion for summary judgment on a First Amendment Retaliation claim.

**IV.    Because Defendants were not justified in the excessive force used against Plaintiff, Defendants are not entitled to the "Justification Doctrine".**

As previously stated, Defendants engaged in unreasonable excessive force in violation of the constitution when carrying out their duties. For this reason, they are not entitled to summary judgment based on the justification doctrine.

**V.    Defendants can be liable for punitive damages**

Given the evidence already presented above, and the fact that Defendants are not entitled to qualified or official immunity on Plaintiff's excessive force claims, nor his state law battery claims, Plaintiff has established sufficient evidence that Defendants' conduct against Plaintiff constitutes a complete lack of care and intentional conduct in targeting and harassing Plaintiff, a jury is entitled to award

punitive damages against Defendants under both state law of torts and federal law pursuant to 42 U.S.C. § 1983.

## **CONCLUSION**

For the reasons set forth above, sufficient evidence exists to create a genuine dispute of material facts of Plaintiff's claims against Defendants, which should be determined by a jury. Defendants are therefore not entitled to summary judgment as a matter of law, and the Court should deny Defendant's motion for summary judgment.

This 11th day of September, 2023.

/s/ Jessica Burton
Jordan Johnson
Georgia State Bar No. 673643
Jessica Burton
Georgia State Bar No. 196253
Attorney for Plaintiff

Bernard & Johnson, LLC
5 Dunwoody Park
Suite 100
Atlanta, GA  30338
404.477.4755
404.592.9089 (Fax)
Alex@Justice.Law
Jessica@Justice.Law

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| ADAM SINDELL, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | CIVIL ACTION FILE |
| v. | ) | |
| | ) | NO.  5:22-cv-00365-TES |
| LATONYA COACH, et al., | ) | |
| | ) | |
|     Defendants. | ) | |

## CERTIFICATE OF SERVICE

On this date, I have served **Brief in Opposition to Defendants'**

**Motion for Summary Judgment** on defense counsel via a valid ECF

system or mail to all defense counsel.

This 11th day of September, 2023.

/s/ Jessica Burton
Jordan Johnson
Georgia State Bar No. 673643
Jessica Burton
Georgia State Bar No. 196253
Attorney for Plaintiff

Bernard & Johnson, LLC
5 Dunwoody Park
Suite 100
Atlanta, GA  30338
404.477.4755
404.592.9089 (Fax)

Alex@Justice.Law
Jessica@Justice.Law

**EXHIBIT 1**

# CULLEN TALTON
# SHERIFF, HOUSTON COUNTY

**Maj. Tommy Jackson**
*Chief Administrator*

**Capt. Jon Holland**
*Chief Investigator*

202 CARL VINSON PARKWAY
WARNER ROBINS, GEORGIA 31088
478-542-2085/FAX 478-329-9715

**Wm. H. Rape, Jr.** *Chief Deputy*

**Capt. Ronnie Harlowe**
*Patrol Commander*

**Maj. Alan Everidge**
*Chief Detention Officer*

Use of Force Analysis

UoF Dated: 06/30/2020

Case Number: 20-08491

Deputies Involved: Cleckner, Jacob / Boerger, Kyle

Suspect(s) Involved: Sindell, Adam

Force Used: Soft Hands (Takedown)

Justification: 1 – Severity of Crime: Refusing to Lockdown

Reasonableness: Suspect had been told multiple times by the Pod deputy to lockdown and had refused. The movement deputies responded to the Pod and Cleckner told him to lockdown again. Sindell stopped walking, put his hands out to the side and asked why? Cleckner thought Sindell's, actions were him "bowing out his chest and closing his hands into fists". Cleckner performed a "takedown" of Sindell (form tackle, controlling Sindell all the way to the floor). Once Sindell was on the ground Cleckner and Boerger handcuffed Sindell and took him to his cell.

Findings: Although the "form tackle" is not a taught technique it does fall within approved Use of Force, because the force was Justified and Reasonable within Policy, State Law, Case Law and Constitutional Rights

Lt. Brian Blanton

07/06/2020

**SHERIFF CULLEN TALTON**

**Major A. Everidge**
Jail Administrator

Houston County Sheriff's Office
Detention Center
203 North Perry Parkway
Perry, Georgia 31069
Phone: (478) 218-4900

**Captain M. Westbrook**
Chief of Detention

### *HOUSTON COUNTY SHERIFF'S OFFICE*
### *INTERNAL AFFAIRS*
### *REPORT OF INVESTIGATION*

**CASE NUMBER**

IA 20-08491

**DATE OF INCIDENT**

June 30, 2020

**SUBJECT**

Dep. LaTonya Coach, Badge #7447, African American Female, DOB: July 02, 1977, SSN: 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, Employer: Houston County Sheriff's Office Detention Center (HCSODC), 203 North Perry Parkway, Perry, GA 31069

Dep. Kyle Boerger, Badge #7386, Caucasian Male, DOB: February 02, 1996, SSN: 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, Employer: Houston County Sheriff's Office Detention Center (HCSODC), 203 North Perry Parkway, Perry, GA 31069

Dep. Jacob Cleckner, Badge #7429, Caucasian Male, DOB: January 16, 1998, SSN: 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, Employer: Houston County Sheriff's Office Detention Center (HCSODC), 203 North Perry Parkway, Perry, GA 31069

**GRIEVANCE / ALLEGATION, INQUIRY, & ALLEGATION (AIC) FORM**     (see attachment 1)

On July 01, 2020, the following verbatim grievance was received from Inmate Adam Sindell (to include any spelling, punctuation, and/or grammar mistakes) :

"I was assaulted by a deputy for the second time ..I will not give many details this time because in doing so last week it seems it only gave this institution names of witnesses in order to threaten/ entice them into helping cover up the brutality.. I was attacked by a deputy do know his name as of yet but he is Caucasian short musclebound with !it's of colorful tattoos on his forearms. He approached me in my



> po (l) on 6/30/20 and said" I'm only gonna tell you to lock down one time" I was already headed to my cell to lock down so I proceed to respond "yes sir" but before I could get the sir out of my mouth he picked me up, lifted me about seven feet high in the air , then slammed me viscously tone pavement causing my head to slam onto the cement floor . I was knocked unconscious. My head was bleeding and has a giant lump . my neck back mouth shoulder wrist and elbow are injured...I am reserving all further details for my attorney. I am formally requesting this officer be charged with assaulting me if not I am formally asking to be allowed to take out a warrant on him. I want his name badge number all footage of body cameras showing the event(it was viewed by several deputies )and dorm camera footage made readily available to my and my attorne."

An AIC form was completed so that an investigation into the allegation(s) could begin.

**POLICY STANDARD**   (see attachment 2)

Section 5, page 5 of the Houston County Sheriff's Office Policy and Procedure Manual under subsection 4(A) titled *Conduct Unbecoming an Officer*, which reads, "An officer must at all times, on and off duty, conduct himself in a manner which does not bring discredit to himself, the department, or the county."

Section 8.1, page 1 of the Houston County Detention Facility Policy and Procedure Manual under subsection II(C) titled *Use of Force,* which reads:

"Detention Deputies shall use the minimum amount of force necessary to:
1. physically control an inmate,
2. protect staff, inmates, and other persons,
3. to prevent damage to the HCDC and HCDC equipment,
4. maintain or restore order and discipline,
5. enforce the lawful orders of the HCDC, and
6. further other legitimate penological interests where safety, security and control are threatened."

**INTERVIEW OF INMATE ADAM SINDELL**    (see attachment 3)

Inmate Sindell was interviewed on July 06, 2020 in the Watch Commander's office at the Houston County Detention Center. Our conversation was recorded. He informed me that he felt as if he was being singled out by Dep. Coach ever since he filed a prior grievance on her for allegedly flipping him off a mattress within his cell, adding that it was clear that changes were being made when she was on-shift to the way the Pod was run. The reason it was clear was that Dep. Coach with either look over to

his assigned cell when mentioning changes or flat out say that changes were happening due to cell #1's grievances.

On the date in question, Inmate Sindell stated that he'd been locked down due to having too many books in his room during a shakedown. He advised that a Bible had been brought to him within an hour of the shakedown and dropped off. He had no chance to return any other books, as the door was closed right afterwards, and at that time, he really wasn't thinking that the Bible would bring him to four books, anyway.

After Dep. Coach took Inmate Sindell's rec time for the afternoon, he buzzed her on the speaker, requesting some tissue and to use the kiosk for a moment to let his fiancé know that he would not be phoning her because he'd been locked down. Dep. Coach told him that it was okay for him to use the kiosk, so when the trustee brought the tissue to his cell, he went ahead and exited, heading straight for the kiosk. Dep. Coach never, not once, told him to lock down after exiting the cell; he overheard her telling the entire Pod to lock down, but that was not directed at him because he had been given the okay to utilize the kiosk. He was directed to lockdown once the other two deputies entered L-Pod.

According to Inmate Sindell, when Deps. Boerger and Cleckner entered the Pod, Cleckner said that he was only going to tell him one time to lock down. Inmate Sindell was already walking back to his cell and put his hands up in the air, saying, "Yes sir." Inmate Sindell stated that Dep. Cleckner blocked his route of travel to the cell, then picked him up and body slammed him head-first into the pavement. He was already on-the-way back to his cell when the two deputies came into the Pod; if Dep. Cleckner had not gotten into his way, Inmate Sindell would have gone back to his cell without any force at all...on his own. Inmate Sindell said that he put up his hands like in the "don't shoot" move to show that he meant no aggression towards the deputies. He added that Dep. Boerger put his arm up to try to block Dep. Cleckner from utilizing force, but Dep. Cleckner slapped the arm down and went for the body slam, adding that Dep. Cleckner has the nickname of "Brock," as in Brock Lesner, the wrestler.

Inmate Sindell advised that he has not really even been seen by a physician yet, besides over a television monitor, adding that he still had a headache from the incident; his back hurt, as well. There were other pains in his right arm, toe, and neck that have somewhat alleviated themselves by now. He said that he was scheduled to see a doctor in-person today (July 06, 2020), but no one has called him to Medical thus far. He also said that he was supposed to have been provided a blanket that he could roll-up under his neck, but Medical never provided it and now his blanket profile has expired. I informed him that I would go by Medical following our talk. All was understood.

**INTERVIEW OF DEPUTY KYLE BOERGER** (see attachment 4)

Dep. Boerger was called to the Office of Professional Standards on July 05, 2020 for a recorded interview in reference to Inmate Sindell's grievance. He informed me that he had been assigned to Movement on June 30, 2020, which was the date of the incident within L-Pod. A radio call came out from L-Pod's deputy, LaTonya Coach, asking for assistance due to an inmate who refused to lockdown. The inmate's name was not given over-the-radio. Dep. Boerger opened-up the side door to the Pod, where another deputy (Jacob Cleckner) was waiting to enter, as well. Both walked into L-Pod and viewed an inmate at the kiosk; all other inmates were inside of their cells. Dep. Cleckner told the inmate to go ahead and lock down. The inmate declined to do so. The inmate, identified as Adam Sindell, began to argue with Dep. Cleckner, who instructed him again to go to his cell; inmate Sindell continued to decline to do so and left the kiosk, walking towards both deputies. Dep. Boerger tried to speak with Inmate Sindell, but the inmate wanted to talk over him. Inmate Sindell clenched his jaw, and very shortly thereafter was taken to the floor by Dep. Cleckner. Dep. Boerger tied to cradle the torso of the inmate on the way to the floor in an effort to keep his head from striking the ground.

Once on the ground, Inmate Sindell resisted by keeping his right hand underneath his chest, between his upper torso and the ground, trying to keep from being handcuffed. Dep. Cleckner had control of the inmate's left arm, and Dep. Boerger was eventually able to get the right arm out from under the inmate, at which time he was cuffed behind his back.

Inmate Sindell was brought to his feet, but then went limp. Deps. Boerger and Cleckner carried him to a chair and called for Medical. The inmate began to twitch as if he was having a seizure, and a blanket was brought over to keep his head from bumping onto anything; he was additionally removed from handcuff restraints at that time. A wheelchair was brought-in to the Pod, and the inmate was taken to Medical for evaluation. On the way into Medical, the inmate began to yell and threw himself out of the wheelchair upon seeing Dep. Cleckner. Dep. Boerger asked Dep. Cleckner to move back, and other deputies helped with getting Inmate Sindell into the evaluation room.

Dep. Boerger stated that his only other interaction with Inmate Sindell was earlier in the day, when he brought the inmate a Bible.

**INTERVIEW OF DEPUTY JACOB CLECKNER** (see attachment 5)

On July 05, 2020, Dep. Jacob Cleckner was asked to respond to the Office of Professional Standards for a recorded interview, as well. He informed me that on June 30th, he had been assigned to D-Pod. A call for help came over-the-radio from Dep. Coach in L-Pod advising that an inmate was refusing to lock down; the inmate's name was not given.

Upon arrival inside of the Pod, Dep. Cleckner viewed a single inmate out in the common area on the kiosk. The deputy told that inmate to lock down. Dep. Cleckner said that he had never had any dealings with the inmate who was refusing to lock down and did not know his name. Inmate Sindell refused to lock down after being instructed and was told twice more by Dep. Cleckner to go to his cell. During this time, Inmate Sindell tightened-up, bowing out his chest, and his fists became clenched, as well. Dep. Cleckner grabbed the inmate by his waist and took him to the ground, advising that he did not know what the inmate might do with the clenched fists and bowed-up posture. The inmate was not thrown to the floor. Dep. Cleckner went to the floor with the inmate; no strikes were thrown by either deputy or the inmate. Once on the floor, Inmate Sindell refused to give-up his right arm/hand for cuffing. Dep. Cleckner had his left arm with a cuff around the inmate's wrist. Dep. Boerger was able to pull the inmate's right arm out from between the ground and the inmate's chest, and he was handcuffed.

The inmate was either having a medical episode or wanted it to look like he was having one; he was placed in a chair and then placed back onto the floor while Medical was called. A nurse arrived within L-Pod and Inmate Sindell was wheeled out of the Pod into Medical for evaluation.

On July 04, 2020, Dep. Cleckner wished to add that he made verbal contact with Inmate Sindell, telling him that the incident was over and what was in the past was in the past; they needed to move forward. The inmate responded that he was hiring a 'special' lawyer who dealt with putting officers behind bars. Dep. Cleckner did not have his bodycam turned-on, but audio from a Pod camera caught the interaction. (see attachment 5b)

**INTERVIEW OF DEPUTY LaTONYA COACH** (see attachment 6)

On July 05, 2020, L-Pod Deputy LaTonya Coach responded to the Office of Professional Standards for an interview. She informed me that on June 30, 2020, Inmate Sindell had lost his afternoon recreation time due to having too many books inside of his cell; he had four and the maximum allowed is three. At around 1400 hours, Inmate Sindell used the buzzer in his room to page Dep. Coach. He told her that he did not give a 'damn' about his rec time, but needed a tissue. Dep. Coach provided tissue to a trustee to give to Inmate Sindell and unlocked the cell door for the tissue to be turned over to the inmate. As soon as the door was unlocked, Inmate Sindell pushed past the trustee and walked directly to a kiosk. Dep. Coach instructed him to lock down, but she was ignored. The deputy told him, again, to go to his cell, but he ignored her. She told the entire Pod to lock down, and each inmate did, less Inmate Sindell. Dep. Coach then called for Movement over-the-radio.

Deps. Boerger and Cleckner arrived within the Pod to help. Dep. Cleckner instructed Inmate Sindell, at least once, to lock down, but Inmate

Sindell refused to follow instructions. Inmate Sindell left the kiosk and walked over to the deputies; she was unable to tell if he bowed-up his chest or if his fists were clenched, but the inmate was taken to the ground by Deps. Cleckner and Boerger.

Inmate Sindell was taken to Medical following the use of force. Dep. Coach saw nothing that was inappropriate done by the involved deputies. She had no further description to provide of the incident, but wished to add that the inmate rumor mill was that Inmate Sindell keeps trying to have altercations with deputies in an effort to get out of jail due to the amount of disturbances.

**USE OF FORCE REPORT, DEPUTY BOERGER** (see attachment 7)

"Date: 06/30/2020
Time: Approximately 1408
Location: L-Pod
Inmate Involved: Adam Sindell  #2020-002217

BACKGROUND
On the above date and time, I was assigned to Movement at the Houston County Sheriff's Office Detention Center.

INCIDENT
Movement was radioed to L-pod for an inmate refusing to lockdown. I ran from the Housing Sgt. Office to L-pod side door. Dep. Jacob Cleckner #7429 and I entered through the side door walking into the dayroom. Sindell was the only inmate in the dayroom on the kiosk.
Sindell looked and was aware that movement entered the pod. While Dep. Cleckner and I walked towards Sindell, Dep. Cleckner instructed him to go lockdown. Sindell started walking away from the kiosk. Dep. Cleckner instructed Sindell to lockdown again. Sindell was saying something to Dep. Cleckner but not moving towards his cell.  Dep. Cleckner again instructed Sindell to lockdown, Sindell began arguing with Dep. Cleckner. I tried to also instruct Sindell to lock down but he continued to talk over me and Dep. Cleckner.  I could not understand what he was saying at this point, but his demeanor was defiant. I continued towards Sindell.
Dep. Cleckner and I arrived face to face with Sindell.  Dep. Cleckner started taking Sindell to the ground, I grabbed Sindell's upper torso while he was falling to the ground and braced his fall. While Sindell was on the ground I had control of Sindell right arm. Sindell was awake and moaning. I brought Sindell's right arm to his back. Dep. Cleckner then held both of Sindell's wrists while I applied cuffs. We tried to help him up, but Sindell went limp. As Dep. Cleckner and I were moving Sindell to place him in a chair, Sindell appeared to have a seizure.

I held Sindell's head and torso before the nurse arrived. We put a blanket under his head to protect it in the event he had another seizure. Sindell appeared to be going in and out of bouts of twitches. Lt. Craig, Theresa Badge #7056 instructed me to keep Sindell on his side to protect his airway. Sindell's head kept wanting to turn into the blanket and I would adjust him so he could breathe.

Sindell seizure stopped, the nurse arrived and cleared him to be moved into a wheelchair to be wheeled to Medical. I took the handcuffs off and helped place Sindell onto the wheelchair and wheeled him to Medical. When we got to the Medical rec yard door Sindell was leaning left and his head was to the side of the wheelchair. As Deputies and I tried pushing through the doorway, Sindell forced himself out of the chair, started screaming and crying. Dep. Bennett Curry Badge #7328, Dep. Andrew Lauritsen Badge #7366, Dep. Bryan Shi Badge #7297 and I carried him from the Medical rec yard to the medical exam room."

**SUPPLEMENTAL REPORT, DEPUTY CLECKNER**   (see attachment 8)

"Date: June 30, 2020
Time: At approximately 1408 hours
Location: L-Pod
Inmate Involved: Adam Sindell #2020-002217
Deputies Involved: Dep. Latonya Coach #7447, Dep. Kyle Boerger #7386, Dep. Bennett Curry #7328, Dep. Andrew Lauristen #7366, Dep. Garrett, Cooley #7196, Sergent Daphne Felder #6865,  Lt. Craig, Theresa #7056

BACKGROUND:
    On Tuesday June 30, 2020 at approximately 1408 hours I was assigned to D-Pod at the Houston County Sheriffs Office Detention Center.

INCIDENT
    Deputy Latonya Coach # 7447 called for Movement via radio to L-pod for an inmate refusing to lockdown. I made my way down the hallway to L-pod with Deputy Kyle Boeger # 7386. We both entered the Pod throught the side door. I witnessed Adam Sindell inmate #2020-002217 using the Kiosk. I approached Sindell and asked him to lockdown. He refused and I told him to Lockdown. Sindell still refused. I used both my arms and wrapped them around his waist and took him to the ground. Deputy Boerger assisted by putting handcuffs on him.

    Deputy Boerger and I realized he was bleeding from his mouth, and Deputy Boerger called for Medical via radio. We attempted to sit Sindell on the chair, and waited for Medical to arrive. Sindell began to have what appeared to be a siezure. We placed him on the ground. Deputy Bennett Curry Badge #7328 assisted keeping him still until Medical arrived. Nurse Sandra Rice arrived and cleared Sindell to be put in a wheel chair. Deputy

Curry, Deputy Boerger, and I escored Sindell to Medical.

CONCLUSION
    Medical assessed the injuries. No further injuries to report. Sindell was reassigned to Medical cell 1 for observation."

**USE OF FORCE REPORT, DEPUTY CLECKNER**   (see attachment 9)

"Date: 6/30/20
Time: 1408 hours
Location: L-pod
Re: Inmate Refusal to Lockdown

BACKGROUND:
    On June 30, 2020 I was assigned to D-pod at the Houston County Sheriff's Office Detention Center, when L-Pod called for assistance for an inmate Refusing to Lockdown.

INCIDENT
    Approximatley 1408 hours, Inmate Sindell, Adam inmate #20-002217 was refusing to lockdown. I ran into L-pod and advised Sindell to lockdown. He refused, so I grabbed Sindell by the waist to maintain control and took him to the ground. While on the floor, I restrained him to the floor by keeping my left arm on his upper back. Deputy Kyle Boerger #7386 assisted by putting handcuffs on Sindell. I assisted Sindell to a chair, while Medical was in route to the pod. Medical arrived and cleared him to be in a wheelchair. Sindell was taken to Medical, and reassigned to Medical cell 1."

**INCIDENT  REPORT, DEPUTY  COACH**   (see attachment 10)

"Date: Tuesday, June 30, 2020
Time: 1324 hrs
Location: L-pod
Reference: Inmate refusing to lockdown

BACKGROUND
    On Tuesday, June 30, 2020, I was assigned as the Pod Deputy in L-Pod at the Houston County Sheriff's Office Detention Center (H.C.S.O.D.C.).

INCIDENT
    At approximately 1324 hours, Adam Sindell #2020002217 lost his rec after his cell was searched and he had too many books in his possession.
    The bottom tier began rec at 1400 hours. Sindell rang the buzzer to exit his cell. I told him his rec was gone because he had too many books. He later rang the buzzer and stated that he didn't care about rec he needed

tissue. I tossed a roll of tissue to my pod orderly to pass to him. I accessed cell L1 for Sindell to retrieve the tissue. When the door opened, he brushed passed the orderly then proceeded to walk to the KIOSK. I turned on my body cam while instructing him to return to his cell, but he refused to comply. I instructed him again to return to his cell, he again refused to comply. I instructed all other inmates to return to their assigned cells. They all complied. Once the pod dayroom was clear with the exception of Sindell, I gave him one last instruction to lock down in his cell. He refused again and continued to use the KIOSK. I called for Movement.

Deputies Jacob Cleckner #7429 and Kyle Boerger #7386 arrived. Deputy Cleckner instructed Sindell to go to his cell and he still refused to comply. As Deputy Cleckner got closer to Sindell, he began to walk towards the deputies. Deputy Cleckner grabbed him and took him to the ground while Deputy Boerger handcuffed Sindell to gain control. Sindell began to have what appeared to be a seizure. By this time, other deputies arrived including shift Lieutenant Theresa Craig #7056. Medical staff was notified. The nurse entered the pod to evaluate Sindell. He was escorted to Medical in a wheelchair.

CONCLUSION
Sindell was reassigned to Medical cell 1 for 24 hour observation. His property was bagged and baggage by myself and pod orderlies, while the body cam was running. Deputy Garrett Cooley #7196 retrieved the property and took it to Medical."

**REVIEW OF L-POD VIDEO**   (see attachment 11)

Video from within L-Pod was pulled and reviewed for the date of June 30, 2020. The following notations were made, with all listed times being approximated:

- 1405:23hrs / Dep. Coach tosses a roll of tissue to a trustee within L-Pod, which is taken to the assigned cell of Adam Sindell

- 1405:39hrs / Inmate Sindell exits his cell and walks to the kiosk within the Pod, disregarding lock down instructions given by Dep. Coach at 1405:47hrs and 1405:51hrs

- 1405:58hrs / Inmate Sindell logs onto the kiosk and sends the following message to Kayla Roberts at 1407hrs:
"Now she is locking me down again for no reason not letting me use the phone to call you call somebody please"   (see attachment 12)

- 1406:04hrs / Dep. Coach instructs the entire Pod to lock down

- 1407:09hrs / Dep. Coach keys-up her radio and calls for assistance to L-Pod for an inmate refusing to lock down

- 1407:44hrs / Deps. Boerger and Cleckner enter L-Pod

- 1407:47hrs / Dep. Cleckner instructs Inmate Sindell to lock down

- 1407:50hrs / Dep. Cleckner instructs Inmate Sindell to lock down and points to the bottom tier of cells

- 1407:50hrs / Inmate Sindell sends his message on the kiosk and walks towards the deputies.

- 1407:53hrs / Inmate Sindell says, "Why," and something else that is inaudible.

- 1407:54hrs – 1407:56hrs / Dep. Cleckner (facing the inmate) grabs Inmate Sindell around the upper thighs, pulling the inmate's legs upward. Dep. Boerger cradles the back of the inmate as the inmate's legs come-up off the ground. Inmate Sindell is taken to the floor, with the right/back of his head and right shoulder hitting first.

- 1407:55hrs – 1408:18hrs / The deputies roll the inmate over to his stomach and begin trying to handcuff him behind the back. Inmate Sindell utters, "Ow," and moves his right arm between his chest and the floor; the arm is moved behind his back by Dep. Boerger.

- 1407:19hrs – 1409:08hrs / Both deputies try to bring the inmate to his feet, but the inmate does not stand. The deputies each hold the inmate underneath an arm and pull him over to the stairway leading to the bottom tier. He is then brought over to the seating area in front of the television. Once seated, Inmate Sindell's body begins to shake, so he is moved back onto the floor.

- 1409:09hrs – 1411:19hrs / Lt. Theresa Craig has entered the Pod and instructs for Medical to be called. Inmate Sindell is kept on his left side by deputies.

- 1411:20hrs – 1412:54hrs / A blanket is placed underneath Inmate Sindell's head. His feet move back/forth off and on during this period.

- 1412:55hrs / Lt. Craig requests an update on the nurse's status.

- 1414:46hrs / A wheelchair is brought into L-Pod.

- 1416:29hrs – 1418:29hrs / A nurse from Southern Correctional Medicine enters the Pod. Inmate Sindell has been unhandcuffed by this time. She clears him to be placed in the wheelchair. Inmate Sindell begins yelling while being picked up to be put into the chair. He is wheeled out of the Pod to Medical.

- 1422hrs / Inmate Sindell is placed on the exam table within Medical for a medical evaluation by Southern Correctional medical personnel

After being placed within Medical housing for observation, Inmate Sindell sends the following message, using a kiosk, to Kayla Roberts at 1941hrs:
"Im about to call you...In case I can't get through they. Beat the shit out of me ...real bad..if I don't talk to you call up here tommmorrow demand to speak to me ...call my lawyer tell him ITE emergency"   (see attachment 12)

**PHONE CALL**  (see attachment 12b)

After utilizing the kiosk in Medical to alert Kayla Roberts that he was going to phone her, the following call was made (summary):

Inmate Sindell tells Ms. Roberts that he had to run out of his cell in order to send her the first message on the kiosk in L-Pod.  A deputy told him that he better get in his room, adding that he was only going to be told one time. Inmate Sindell began walking back to his cell when the deputy picked him up in the air, "as high as he could and slammed my head on the pavement, and they piled up on me."  Ms. Roberts asks why Medical told her that he was sent to Medical for an evaluation, to which the inmate claims injury to multiple body parts.
Inmate Sindell advises that he was locked down after a setup, as he already had three books in his room when he was brought a Bible, which would make four.  About an hour after being brought the Bible, a search of his cell was completed by Dep. Coach, who found that he now had above the allotted number of books and took his rec time.  She refused to let him out to use the kiosk or phone because she knew that Inmate Sindell would notify Ms. Roberts of what was going on.
Inmate Sindell instructs Ms. Roberts to search for a lawyer out of Atlanta with the last name of Johnson and let him know what all has been happening at the jail, adding that he (Sindell) obtained a copy of all of his grievances from Maj. Everidge.  If she cannot get in touch with that attorney, call Angie Coggins, as she referred Inmate Sindell to the Atlanta attorney because he specializes in suing law enforcement.

**EARLIER PHONE CALL**  (see attachment 13)

During the above listed telephone call summary, Ms. Roberts mentions that she spoke with somebody earlier in the day at the detention facility after receiving the initial kiosk text from L-Pod, sent by Inmate Sindell. Upon searching calls records, the following call (summary below) was located between Ms. Roberts and the front desk from approximately 1439 hours on June 30, 2020:

Ms. Roberts advises front desk personnel that she received a message from Inmate Adam Sindell advising that he's been locked down again; she wants information on why. She is informed that the computer system is showing that inmate as being housed within Medical. Ms. Roberts asks if something is wrong with Inmate Sindell, at which time she is told to hold-on just a second so that a call could be placed to Medical. (I note that call was in-house and not recorded).

Ms. Roberts is informed that per the nurse, Inmate Sindell is fine, but is in Medical for observation. Ms. Roberts asks for what reasons an inmate would be held for an evaluation; she's told that it could be for a number of things. Ms. Roberts is asked if the inmate has any medical conditions and responds that he does have ADHD. She's told by front desk personnel that in reality, Medical cannot really tell her, or the front desk, for what reason the inmate is being looked at due to HIPAA.

Ms. Roberts advises that she is concerned due to an incident involving an officer a couple days ago where a mattress was pulled out from underneath Inmate Sindell. Ms. Roberts advises that she is his fiancé and she wants him to be treated okay. She is told that if Inmate Sindell is sending her messages when he's angry or upset, it's understandable that it would make her upset, as well; she's told to try to not let that get to her.

Ms. Roberts is informed that visitation may start back during the next upcoming week, to which she replies that was good and that it was her birthday today. Ms. Roberts begins explaining the charges against her fiancé and explaining that Inmate Sindell had no knowledge of the gun being in the car, adding that the drugs were on the opposite side of the vehicle and not in his possession. She is told that he will have to see a Superior Court judge in order to argue his case, to which Ms. Roberts advises that she understands. Inmate Sindell's pending case is discussed further, and then the call is discontinued.

**USE OF FORCE EVALUATION**   (see attachment 14)

Lt. Brian Blanton, a certified defensive tactics instructor, reviewed video involving this case, focusing on the force utilized against Inmate Sindell by deputies. His findings are as follows:

"UoF Dated: 06/30/2020

Case Number: 20-08491

Deputies Involved: Cleckner, Jacob / Boerger, Kyle

Suspect(s) Involved: Sindell, Adam

Force Used: Soft Hands (Takedown)

Justification: 1 – Severity of Crime: Refusing to Lockdown

Reasonableness: Suspect had been told multiple times by the Pod deputy to lockdown and had refused. The movement deputies responded to the Pod and Cleckner told him to lockdown again. Sindell stopped walking, put his hands out to the side and asked why? Cleckner thought Sindell's, actions were him "bowing out his chest and closing his hands into fists". Cleckner performed a "takedown" of Sindell (form tackle, controlling Sindell all the way to the floor). Once Sindell was on the ground Cleckner and Boerger handcuffed Sindell and took him to his cell.

Findings: Although the "form tackle" is not a taught technique it does fall within approved Use of Force, because the force was Justified and Reasonable within Policy, State Law, Case Law and Constitutional Rights"

**MEDICAL**   (see attachment 15)

I went by Medical and spoke with Nurse Manager Jeannie Vaughan about Inmate Sindell's concerns. She informed me that he was scheduled to see a Southern Correction doctor on July 08, 2020, not on July 06, 2020. I asked if it was possible to obtain the nursing notes/records for any visits to Medical as a result of the incident taking place on June 30, 2020. The following notations were made on Inmate Sindell's file:

**Encounter**                                                      06-30-2020 Tue 02:41 PM

**SINDELL, ADAM HARLEN**          **Epic# 019074**    **Gender: Male**    **DOB 04-30-1975**

| | |
|---|---|
| Dictation: | Called to L POD for an assessment after use of force, entered L POD observed IM lying on Left side, holding head, crying with small amount of blood noted to floor and around IM mouth. IM wouldn't answer questions. Officers reported seizure like activity after IM slide to floor during use of force, general assessment compled, ok for IM to move to medical for a more thorough assessment. IM assisted into w/c and wheeled to medical, as he was being wheeled into medical IM begins to scream out "I haven't done nothing, leave me alone as he was sliding out of w/c onto the floor. officers assisted IM off floor on into medical onto exam table. more thorough assessment completed by Jeannie Vaughn, LPN DHS. VS obtained and stable noted Housed in medical at this time for observation. |
| Vitals: | Blood Pressure: 148/86<br>Temperature: 99.9<br>Pulse: 114<br>Pulse Oxygen: 99<br>Respirations: 20 |
| Condition Related To: | |
| Dates: | Current Illness Date:<br>1st Date Of Illness<br>Unable To Work Dates:<br>Hospitalization Dates: |
| Diagnosis: | |
| Procedures: | |
| Providers: | Attending Provider: Rice, Sandra, , ID: |
| Facility: | Houston County Detention Center |

**Order**                                                         06-30-2020 Tue 03:13 PM

**SINDELL, ADAM HARLEN**          **Epic# 019074**    **Gender: Male**    **DOB 04-30-1975**

| | |
|---|---|
| Order: | Verbal Order - Medical |
| Instructions: | Called Dr Wrobel and received verbal order over phone.<br><br>PHENYTOIN SOD EXT, 100MG #270, Sig: Take 3 Capsules by mouth 1 time per day for 90 days<br>Neuro checks<br>House in medical for OBS. |
| Status: | Pending |
| Entered by: | ADMINJV |
| Approval Status: | Pending |
| Approved/Rejected by: | |
| Approved/Rejected on: | |
| Requested Start Date: | Tue 06-30-2020 |
| Requested Start Shift: | |
| Requested End Date: | Tue 06-30-2020 |
| Requested End Shift: | |
| Actual Start Date: | |
| Actual Start Shift: | |
| Actual End Date: | |
| Actual End Shift: | |
| Renewal Date: | |
| Assigned to: | |
| Requesting Provider: | Vaughn, Jeannie |
| Supervising Department: | Medical |
| Implementation Department: | Medical |
| Verbal Order?: | No |
| Facility: | Houston County Detention Center |

| Order | | | 06-30-2020 Tue 03:18 PM |
|---|---|---|---|
| SINDELL, ADAM HARLEN | Epic# 019074 | Gender: Male | DOB 04-30-1975 |
| Order: | Hourly Neurological Assessment | | |
| Instructions: | Patient is to be assessed every hour.  If condition warrants more assessment, see patient every 15 minutes.<br>Observation Guidelines - BE ALERT FOR:<br>1.  Change in level of responsiveness<br>2.  Lethargy, slowing of speech;<br>3.  Sudden changes (ie - quiet to restless, orientation to confusion)<br>4.  Changes in vital signs:  Pulse < 60 or > 100; slow or irregular resp; rising BP or<br>     widening pulse pressure;<br>5.  Moderately elevated temperature<br>6.  Headache<br>7.  Vomiting<br>8.  Pupillary changes | | |
| Status: | Completed | | |
| Entered by: | SRICE | | |
| Approval Status: | Pending | | |
| Approved/Rejected by: | | | |
| Approved/Rejected on: | | | |
| Requested Start Date: | Tue 06-30-2020 | | |
| Requested Start Shift: | STAT | | |
| Requested End Date: | Tue 06-30-2020 | | |
| Requested End Shift: | STAT | | |
| Actual Start Date: | Tue 06-30-2020 | | |
| Actual Start Shift: | STAT | | |
| Actual End Date: | Tue 06-30-2020 | | |
| Actual End Shift: | STAT | | |
| Renewal Date: | | | |
| Assigned to: | | | |
| Requesting Provider: | Rice, Sandra | | |
| Supervising Department: | Medical | | |
| Implementation Department: | Medical | | |
| Verbal Order?: | No | | |
| Facility: | Houston County Detention Center | | |

Dep. Bennett Curry and Lt. Theresa Craig both assisted providing medical attention to Inmate Sindell.  Verbatim copies of their typed/signed statements are as follows:     (see attachment 16)

Dep. Curry –

"Date: 06/30/2020
Time: 1415 Hours
Reference: Call for Assistance
Involved: Inmate Adam Sindell (Inmate # 2020-002217)

BACKGROUND:
    On Tuesday June 30, 2020 I was assigned to G-Pod at the Houston County Sheriff Office Detention Center (HCSODC).

NARRATIVE:
    At approximately 1415 hours, I responded to a Movement call to L-Pod for Inmate Adam Sindell (Inmate # 2020-002217) refusing to lockdown. When I entered the pod, I saw Deputies Jacob Cleckner Badge#7429 and Kyle Boerger Badge#7386 have Sindell on the ground in handcuffs.
    When I approached them, Sindell appeared to be having a seizure. To prevent him from receiving further injuries, I assisted in supporting his

head from hitting it on the floor by placing a blanket under his head.

CONCLUSION:
    Sindell was escorted to Medical by Dep. Boerger in a wheelchair. He was assigned to Medical cell M-1 for medical observation."


Lt. Craig –

"Date: Tuesday, June 30, 2020
Time: 1408 Hours
Location: L-pod
Incident: Inmate refusing to lockdown in L-pod
Involved parties: Deputy's Latonya Coach #7447, Jacob Cleckner #7429, Kyle Boerger #7386,
Bennett Curry #7328, Andrew Lauristen #7366, Garrett Cooley #7196, Sergeant Daphne Felder #6865, LPN Sandra Rice(Southern Correctional Medicine), LPN Jeannie Vaughn (Southern
Correctional Medicine)

BACKGROUND
    On the above date I was the assigned Watch Commander at the Houston County Sheriff's Office Detention Center.
At 1408 hours, I heard a call for assistance to lock down an inmate in L-pod by Dep. Coach.

INCIDENT
    When I arrived in L-pod, I saw Dep. Cleckner and Dep. Boerger on the left side of the pod with an inmate on the ground. As I rounded the desk, they were trying to place the inmate on the inmate sofa. As I got closer, I recognized the inmate as Adam Harlen Sindell # 2020002217.
    Sindell appeared to be breathing as noises were coming from his mouth. His body, mainly his legs and feet began to shake. I gave commands to place Sindell on the ground and support his head from hitting the floor. I told Dep. Coach to call Medical and get some paper towels. At 1409 the call was placed to Medical for a Nurse to come due to a possible seizure. While the deputies were supporting Sindell on his side and protecting his head from hitting the floor, I instructed Dep. Curry to get Sindell's blanket to place under his head. He did as instructed and the blanket was put in place.
    I monitored Sindell's breathing while waiting for a Nurse to arrive. Due to the extended amount of time I called Medical via radio again asking for a Nurse. Dep. Lauristen advised she was enroute. I asked Central Control if she could be seen on camera. She advised she was rounding the corner by Max Control.
    Nurse Sandra Rice with Southern Correctional Medicine arrived in L-pod

at 1416 hours. Nurse Rice had no equipment or gloves on when arriving to the dorm. When I saw this, I immediately went to the deputy desk and called LPN Vaughn and told her my observation. I started to explain my issue and that I didn't want to move him until cleared by Medical because he was involved in a Use of Force, in the event there were injuries. As I finished that sentence, the deputies began to pick up Sindell and place him in the wheelchair. Sindell began screaming. He was placed in the chair and wheeled to Medical.  At no point during the exam did Nurse Rice touch the inmate in the pod.

I gave instruction to Deputy Coach and Deputy Cooley to gather Sindell's property and inventory his belongings before being taken to Medical.

I departed L-pod enroute to Medical. When I got almost to Medical's rec yard door, Sindell threw himself out of the wheelchair and on to the ground screaming. He was picked up and taken to the Medical exam room. He continued to scream until he was placed on the exam table. He was examined by Nurse Vaugh.

After the exam, he was placed in Medical 1 due to his seizure like activity. I wanted to make sure he was monitored for at least the next 24 hours.

## CONCLUSION

I responded to a call for assistance in L-pod. Inmate Sindell appeared to be having a seizure. Medical arrived and he was cleared by Nurse Rice to be moved to Medical. He was assigned to Medical for further observation."

**PHOTOS / INMATE  SINDELL**   (see attachment 17)

Pictures of Inmate Sindell were taken following this incident.  They are as follows:









## SUMMARY & CONCLUSION

On June 30, 2020 at approximately 1405 hours, Inmate Adam Sindell exits his cell after receiving a loss of recreation order from Dep. LaTonya Coach. Inmate Sindell disregards multiple orders to lock down given by Dep. Coach and signs into a kiosk in the common area. He sends a message to his fiancé, Kayla Roberts, informing her that he was being locked down for no reason. Dep. Coach, whilst Inmate Sindell is typing, locks down the entire Pod and calls for assistance.

Dep. Jacob Cleckner and Dep. Kyle Boerger respond to L-Pod to assist Dep. Coach. Inmate Sindell is still on the kiosk, but then walks towards the deputies after they enter the Pod. He is instructed twice, by Dep. Cleckner, to lock down, but he does not. Dep. Cleckner takes the inmate to the floor, and he is handcuffed behind his back.

Deps. Cleckner and Boerger try to stand-up the inmate, but he either cannot, or does not, move his legs; they are limp. He is pulled over to the stairway leading to the bottom tier, where his cell is located. Then he is put, very briefly, into a seated position on a chair in front of the television viewing area, at which time he begins shaking. Medical is called, and the

inmate's head is placed on a blanket whilst his body is kept on its side. A nurse from Southern Correctional Medicine arrives in L-Pod and clears the inmate to be placed in a wheelchair; he is wheeled to Medical, but comes out of the chair, yelling, prior to getting him in the examination room. After being examined by medical personnel, Inmate Sindell is housed in Medical for observation.

Inmate Sindell advises that Dep. Coach allowed him to exit his cell to utilize the kiosk. Dep. Coach denies this wholeheartedly, advising that she sent a trustee to Inmate Sindell's cell to deliver tissue, as requested by Inmate Sindell. Inmate Sindell further advises that Dep. Coach did not tell him to lock down after exiting his cell. This is contradicted by in-Pod audio, in which Dep. Coach is heard more than once instructing Inmate Sindell to lock down. Inmate Sindell claims that he was told one time by Dep. Cleckner to lock down, which he was going to do, but then was immediately body slammed. The inmate added that Dep. Cleckner got in his path of travel, keeping him from returning to his cell. Video from the Pod does not reflect this as being accurate, as he walks towards the deputies when they enter the Pod and not towards his cell. Inmate Sindell claims that Dep. Boerger tried to keep Dep. Cleckner from making physical contact with him (Sindell), but Dep. Cleckner slapped Dep. Boerger's hand away. Video, again, does not reflect that this happened. Inmate Sindell claims that he put his hands in the air to show that he was not aggressive and was in the process of telling the deputies that he was already on-the-way to his cell. Video does not show Inmate Sindell ever raising his hands, and the only audible word heard from him was, "Why," after being told to lock down by Dep. Cleckner. I can confirm that when Inmate Sindell alleges that he was provided a Bible earlier in the day on June 30th, this is true. Dep. Boerger informed me during his interview that he did take a Bible to said inmate.

Dep. Cleckner advises that he was unsure as to the inmate's intentions, which is why he took the inmate to the floor, as Inmate Sindell balled-up his fists and bowed-up his chest. Video did not confirm that the inmate balled-up his fists and was inconclusive on whether or not Inmate Sindell bowed-up his chest. Dep. Boerger did advise that Inmate Sindell tensed-up his jaw muscles, but again, this is not verifiable on video. Dep. Cleckner further advised that he grabbed ahold of Inmate Sindell's waist and took him down to the floor; in actuality, he grabbed underneath the inmate's buttocks, lifted him off the floor, then brought him back down to the floor, similar to a form tackle in football.

Lt. Brian Blanton was asked to review the video footage of the incident, and he advised, "Although the "form tackle" is not a taught technique it does fall within approved Use of Force, because the force was Justified and Reasonable within Policy, State Law, Case Law and Constitutional Rights."

In reference to whether or not Deps. Coach or Boerger violated the following policies, I find any accusation UNFOUNDED:

Section 5, page 5 of the Houston County Sheriff's Office Policy and Procedure Manual under subsection 4(A) titled *Conduct Unbecoming an Officer*

Section 8.1, page 1 of the Houston County Detention Facility Policy and Procedure Manual under subsection II(C) titled *Use of Force*

   Dep. Coach utilized two Use of Force techniques.  The first was officer presence and the second was verbal commands.  Both were appropriate and this deputy never made physical contact with Inmate Sindell.
   Dep. Boerger made physical contact with the inmate, but only to cradle his torso when being taken to the ground and to free the inmate's right arm for handcuffing.  Again, both are appropriate in this situation.

   In reference to whether or not Dep. Cleckner violated the following policies, I find any accusation to be UNSUSTAINED:

Section 5, page 5 of the Houston County Sheriff's Office Policy and Procedure Manual under subsection 4(A) titled *Conduct Unbecoming an Officer*

Section 8.1, page 1 of the Houston County Detention Facility Policy and Procedure Manual under subsection II(C) titled *Use of Force*

   Dep. Cleckner utilized officer presence and verbal commands first, then transitioned to soft empty hands very quickly.  While his take down technique is not pretty to look at on video, it does fall into the soft empty hands category on the use of force continuum, which is an appropriate level of force given that the prior lower levels were unsuccessful at getting Inmate Sindell to obey the lawful order to lock down within his cell.
   I do note that Inmate Sindell was correct in the fact that he was provided a fourth book, a Bible, by a deputy, and that said Bible brought him over the limit of an acceptable number of periodicals; however, Inmate Sindell should have handled this by filing a grievance and/or requesting a supervisor and not by disregarding the Pod deputy.  The Pod deputy has control of the Pod and all movement within said Pod, not the inmate.

   These findings will be turned over to HCSODC administration for review and consideration.  Nothing further --------------------------------------

George Runyon
Lieutenant / Office of Professional Standards
Houston County Sheriff's Office

InsideMESSAGE | Pay Tel Communications

## Search Messages

Q **Search Messages**

✉ **View Conversation**

| Facility | Content Search | Inmate | Family & Friend |
|---|---|---|---|
| Houstor ▼ | | Sindell | |

| Status | Start Date | End Date | |
|---|---|---|---|
| Accepte ▼ | 06/3( 🗓 | MM/ 🗓 | |

**▼ Apply Filters**

| Date ▲ | Sender/Type ⇅ | Recipient/Type ⇅ | Status ⇅ | Message Text ⇅ |
|---|---|---|---|---|
| 06/30/2020 02:07PM | ADAM HARLEN SINDELL Inmate | Kayla Roberts Family/Friend | Read | Now she is locking me down again for no reason not letting me use the phone to call you call somebody please |
| 06/30/2020 07:41PM | ADAM HARLEN SINDELL Inmate | Kayla Roberts Family/Friend | Read | Im about to call you...In case I can't get through they. Beat the shit out of me ...real bad..if I don't talk to you call up here tommmorrow demand to speak to me ...call my lawyer tell him ITE emergency |

‹   Page 1 of 1   ›      Show   10 per page ▼

# HOUSTON COUNTY SHERIFF'S OFFICE
## DETENTION CENTER
## INCIDENT REPORT

**GA0760000**                    **CASE #: 2020-15796**

☐ **INITIAL REPORT**    ☒ **SUPPLEMENTAL REPORT**

### INCIDENT TYPE

**1. INMATE - FACILITY RULES VIOLATION**            **2. OTHER:** Click here to enter text.

### DATE / TIME / LOCATION

**DATE:** 6/30/20        **TIME:** 1415        **TO**
**DATE:** Click here to enter text.        **TIME:** Click here to enter text.

**L-Pod**, H.C.S.O. Detention Center, 203 N. Perry Pkwy, Perry, GA 31069

### OFFENSE

1.  **OFFENSE:** Choose an item.
    **OTHER:** Click here to enter text.            **COUNTS:** Choose an item.
2.  **OFFENSE:** Choose an item.
    **OTHER:** Click here to enter text.            **COUNTS:** Choose an item.
3.  **OFFENSE:** Choose an item.
    **OTHER:** Click here to enter text.            **COUNTS:** Choose an item.
4.  **OFFENSE:** Choose an item.
    **OTHER:** Click here to enter text.            **COUNTS:** Choose an item.

### NAMES

**1. Adam Sindell**
**INMATE #:** 2020-002217   **RACE:** W   **SEX:** MALE   **DOB:** 04/30/1975   **HEIGHT:** 6'3"   **WEIGHT:** 160lbs   **HAIR:** BROWN
**EYES:** BROWN   **HOW INVOLVED:** OFFENDER

**2. Deputy Bennett Curry Badge#7328**
**INMATE #:** Click here to enter text.   **RACE:** W   **SEX:** MALE   **DOB:** Click here to enter text.
**HEIGHT:** Click here to enter text.   **WEIGHT:** Click here to enter text.   **HAIR:**      **EYES:**
**HOW INVOLVED:** REPORTING DEPUTY

**3.**
**INMATE #:** Click here to enter text.   **RACE:** Choose an item.   **SEX:** Choose an item.   **DOB:** Click here to enter text.
**HEIGHT:** Click here to enter text.   **WEIGHT:** Click here to enter text.   **HAIR:** Choose an item.   **EYES:** Choose an item.
**HOW INVOLVED:**

**4.** Click here to enter text.
**INMATE #:** Click here to enter text.   **RACE:** Choose an item.   **SEX:** Choose an item.   **DOB:** Click here to enter text.
**HEIGHT:** Click here to enter text.   **WEIGHT:** Click here to enter text.   **HAIR:** Choose an item.   **EYES:** Choose an item.
**HOW INVOLVED:** Choose an item.

### STATEMENTS / EVIDENCE OBTAINED

**WRITTEN STATEMENT(S) OBTAINED**    ☐ YES      ☐ NO      ☒ N/A
**WRITTEN STATEMENT(S) ATTACHED**    ☐ YES      ☐ NO      ☒ N/A
**PHOTOS TAKEN**                     ☒ YES      ☐ NO      ☐ N/A
**PHOTOS ATTACHED**                  ☒ YES      ☐ NO      ☐ N/A
**EVIDENCE SEIZED**                  ☐ YES      ☐ NO      ☒ N/A
**PHOTOS TAKEN BY:**

### PROPERTY / EVIDENCE / ITEM INFORMATION

**PROPERTY STATUS:** Choose an item.    **PROPERTY VALUE:** Click here to enter text.

**PROPERTY OWNER:** Click here to enter text.
**PROPERTY DESCRIPTION:** Click here to enter text.
**WHO SEIZED / FOUND IT:** Click here to enter text.
**WHERE DID THEY PUT IT:** Choose an item.
**WHO WAS IT TURNED OVER TO:** Click here to enter text.

**PROPERTY STATUS:** Choose an item.    **PROPERTY VALUE:** Click here to enter text.
**PROPERTY OWNER:** Click here to enter text.
**PROPERTY DESCRIPTION:** Click here to enter text.
**WHO SEIZED / FOUND IT:** Click here to enter text.
**WHERE DID THEY PUT IT:** Choose an item.
**WHO WAS IT TURNED OVER TO:** Click here to enter text.

**PROPERTY STATUS:** Choose an item.    **PROPERTY VALUE:** Click here to enter text.
**PROPERTY OWNER:** Click here to enter text.
**PROPERTY DESCRIPTION:** Click here to enter text.
**WHO SEIZED / FOUND IT:** Click here to enter text.
**WHERE DID THEY PUT IT:** Choose an item.
**WHO WAS IT TURNED OVER TO:** Click here to enter text.

**PHOTOS**
**(CLICK ON THE ICON IN THE CENTER OF THE BOX TO INSERT PHOTOS FROM A FILE OR CARD**
**IF YOU HAVE MORE THAN 6 PHOTOS, EMAIL THE ADDITIONAL PHOTOS)**

# HOUSTON COUNTY SHERIFF'S OFFICE
# DETENTION CENTER
# INCIDENT REPORT

**GA0760000**                           **CASE #:  2020-15796**

### NARRATIVE

Date: 06/30/2020
Time: 1415 Hours
Reference: Call for Assistance
Involved: Inmate Adam Sindell (Inmate # 2020-002217)

**BACKGROUND:**
On Tuesday June 30, 2020 I was assigned to G-Pod at the Houston County Sheriff Office Detention Center (HCSODC).

**NARRITIVE:**
At approximately 1415 hours, I responded to a Movement call to L-Pod for Inmate Adam Sindell (Inmate # 2020-002217) refusing to lockdown. When I entered the pod, I saw Deputies Jacob Cleckner Badge#7429 and Kyle Boerger Badge#7386 have Sindell on the ground in handcuffs.

When I approached them, Sindell appeared to be having a seizure. To prevent him from receiving further injuries, I assisted in supporting his head from hitting it on the floor by placing a blanket under his head.

**CONCLUSION:**
Sindell was escorted to Medical by Dep. Boerger in a wheelchair. He was assigned to Medical cell M-1 for medical observation.

REPORTING DEPUTY: Bennett A. Curry            BADGE #: 7328

SIGNATURE OF REPORTING DEPUTY: _____

---

**SHIFT COMMANDER (or Sergeant if Shift Commander is unavailable)**

☒  I have reviewed this report for completeness and accuracy.

APPROVING SUPERVISOR: _____        BADGE #: _____

SIGNATURE OF APPROVING SUPERVISOR: _____

# HOUSTON COUNTY SHERIFF'S OFFICE
## DETENTION CENTER
## INCIDENT REPORT

### GA0760000                                    CASE #: 2020-15796

☐ INITIAL REPORT     ☒ SUPPLEMENTAL REPORT

### INCIDENT TYPE

**1. INFORMATION REPORT**          **2. OTHER:** Click here to enter text.

### DATE / TIME / LOCATION

**DATE:** 06/30/2020          **TIME:** 1408 hours          **TO**
**DATE:** Click here to enter text.     **TIME:** Click here to enter text.

L-pod , H.C.S.O. Detention Center, 203 N. Perry Pkwy, Perry, GA 31069

### OFFENSE

1. **OFFENSE:** Choose an item.
   **OTHER:** Click here to enter text.          **COUNTS:** Choose an item.
2. **OFFENSE:** Choose an item.
   **OTHER:** Click here to enter text.          **COUNTS:** Choose an item.
3. **OFFENSE:** Choose an item.
   **OTHER:** Click here to enter text.          **COUNTS:** Choose an item.
4. **OFFENSE:** Choose an item.
   **OTHER:** Click here to enter text.          **COUNTS:** Choose an item.

### NAMES

**1.  Adam Sindell**
**INMATE #:** 2020 2217   **RACE:** W   **SEX:** MALE   **DOB:** 04/30/1975   **HEIGHT:** 6'3   **WEIGHT:** 160   **HAIR:** BROWN
**EYES:** BROWN   **HOW INVOLVED:** OFFENDER

**2. Lt. Theresa Craig #7056**
**INMATE #:** Click here to enter text.   **RACE:** Choose an item.   **SEX:** Choose an item.   **DOB:** Click here to enter text.
**HEIGHT:** Click here to enter text.   **WEIGHT:** Click here to enter text.   **HAIR:** Choose an item.   **EYES:** Choose an item.
**HOW INVOLVED:** REPORTING DEPUTY

**3. Dep. Latonya Coach #7447**
**INMATE #:** Click here to enter text.   **RACE:** Choose an item.   **SEX:** Choose an item.   **DOB:** Click here to enter text.
**HEIGHT:** Click here to enter text.   **WEIGHT:** Click here to enter text.   **HAIR:** Choose an item.   **EYES:** Choose an item.
**HOW INVOLVED:** ASSISTING DEPUTY

**4. Dep. Jacob Cleckner #7429**
**INMATE #:** Click here to enter text.   **RACE:** Choose an item.   **SEX:** Choose an item.   **DOB:** Click here to enter text.
**HEIGHT:** Click here to enter text.   **WEIGHT:** Click here to enter text.   **HAIR:** Choose an item.   **EYES:** Choose an item.
**HOW INVOLVED:** Choose an item.

### STATEMENTS / EVIDENCE OBTAINED

| | YES | NO | N/A |
|---|---|---|---|
| **WRITTEN STATEMENT(S) OBTAINED** | ☐ YES | ☒ NO | ☐ N/A |
| **WRITTEN STATEMENT(S) ATTACHED** | ☐ YES | ☒ NO | ☐ N/A |
| **PHOTOS TAKEN** | ☒ YES | ☐ NO | ☐ N/A |
| **PHOTOS ATTACHED** | ☒ YES | ☐ NO | ☐ N/A |
| **EVIDENCE SEIZED** | ☐ YES | ☒ NO | ☐ N/A |

**PHOTOS TAKEN BY:**  Cpl. Matthew Murphy #7222

### PROPERTY / EVIDENCE / ITEM INFORMATION

**PROPERTY STATUS:** Choose an item.   **PROPERTY VALUE:** Click here to enter text.

**PROPERTY OWNER:** Click here to enter text.
**PROPERTY DESCRIPTION:** Click here to enter text.
**WHO SEIZED / FOUND IT:** Click here to enter text.
**WHERE DID THEY PUT IT:** Choose an item.
**WHO WAS IT TURNED OVER TO:** Click here to enter text.

**PROPERTY STATUS:** Choose an item.     **PROPERTY VALUE:** Click here to enter text.
**PROPERTY OWNER:** Click here to enter text.
**PROPERTY DESCRIPTION:** Click here to enter text.
**WHO SEIZED / FOUND IT:** Click here to enter text.
**WHERE DID THEY PUT IT:** Choose an item.
**WHO WAS IT TURNED OVER TO:** Click here to enter text.

**PROPERTY STATUS:** Choose an item.     **PROPERTY VALUE:** Click here to enter text.
**PROPERTY OWNER:** Click here to enter text.
**PROPERTY DESCRIPTION:** Click here to enter text.
**WHO SEIZED / FOUND IT:** Click here to enter text.
**WHERE DID THEY PUT IT:** Choose an item.
**WHO WAS IT TURNED OVER TO:** Click here to enter text.

---

**PHOTOS**
**(CLICK ON THE ICON IN THE CENTER OF THE BOX TO INSERT PHOTOS FROM A FILE OR CARD**
**IF YOU HAVE MORE THAN 6 PHOTOS, EMAIL THE ADDITIONAL PHOTOS)**

## HOUSTON COUNTY SHERIFF'S OFFICE
## DETENTION CENTER
## INCIDENT REPORT

**GA0760000**                          **CASE #:  2020-15796**

**NARRATIVE**

Date: Tuesday, June 30, 2020
Time: 1408 Hours
Location: L-pod
Incident: Inmate refusing to lockdown in L-pod
Involved parties: Deputy's Latonya Coach #7447, Jacob Cleckner #7429, Kyle Boerger #7386, Bennett Curry #7328, Andrew Lauristen #7366, Garrett Cooley #7196,  Sergeant Daphne Felder #6865, LPN Sandra Rice(Southern Correctional Medicine), LPN Jeannie Vaughn (Southern Correctional Medicine)

BACKGROUND
On the above date I was the assigned Watch Commander at the Houston County Sheriff's Office Detention Center.
At 1408 hours, I heard a call for assistance to lock down an inmate in L-pod by Dep. Coach.

INCIDENT
When I arrived in L-pod, I saw Dep. Cleckner and Dep. Boerger on the left side of the pod with an inmate on the ground. As I rounded the desk, they were trying to place the inmate on the inmate sofa. As I got closer, I recognized the inmate as Adam Harlen Sindell # 2020002217.

Sindell appeared to be breathing as noises were coming from his mouth. His body, mainly his legs and feet began to shake. I gave commands to place Sindell on the ground and support his head from hitting the floor. I told Dep. Coach to call Medical and get some paper towels. At 1409 the call was placed to Medical for a Nurse to come due to a possible seizure.  While the deputies were supporting Sindell on his side and protecting his head from hitting the floor, I instructed Dep. Curry to get Sindell's blanket to place under his head. He did as instructed and the blanket was put in place.

I monitored Sindell's breathing while waiting for a Nurse to arrive. Due to the extended amount of time I called Medical via radio again asking for a Nurse. Dep. Lauristen advised she was enroute. I asked Central Control if she could be seen on camera. She advised she was rounding the corner by Max Control.

Nurse Sandra Rice with Southern Correctional Medicine arrived in L-pod at 1416 hours. Nurse Rice had no equipment or gloves on when arriving to the dorm. When I saw this, I immediately went to the deputy desk and called LPN Vaughn and told her my observation. I started to explain my issue and that I didn't want to move him until cleared by Medical because he was involved in a Use of Force, in the event there were injuries. As I finished that sentence, the deputies began to pick up Sindell and place him in the wheelchair. Sindell began screaming. He was placed in the chair and wheeled to Medical. At no point during the exam did Nurse Rice touch the inmate in the pod.

I gave instruction to Deputy Coach and Deputy Cooley to gather Sindell's property and inventory his belongings before being taken to Medical.

I departed L-pod enroute to Medical. When I got almost to Medical's rec yard door, Sindell threw himself out of the wheelchair and on to the ground screaming. He was picked up and taken to the Medical exam room. He continued to scream until he was placed on the exam table. He was examined by Nurse Vaugh.

After the exam, he was placed in Medical 1 due to his seizure like activity. I wanted to make sure he was monitored for at least the next 24 hours.

CONCLUSION
I responded to a call for assistance in L-pod. Inmate Sindell appeared to be having a seizure. Medical arrived and he was cleared by Nurse Rice to be moved to Medical. He was assigned to Medical for further observation.

I responed to a call for assistance in L-pod. Inmate Sindell appeared to be having a seizure. Medical arrived and he was cleared by Nurse Rice to be moved to Medical. He was assigned to Medical for further observation.

**REPORTING DEPUTY: Lt. Theresa Craig**          **BADGE #: 7056**

**SIGNATURE OF REPORTING DEPUTY:** _____

---

**SHIFT COMMANDER (or Sergeant if Shift Commander is unavailable)**

☒  **I have reviewed this report for completeness and accuracy.**

**APPROVING SUPERVISOR:** _____          **BADGE #:** _____

**SIGNATURE OF APPROVING SUPERVISOR:** _____

# HOUSTON COUNTY SHERIFF'S OFFICE
## DETENTION CENTER
## INCIDENT REPORT

**GA0760000**                    **CASE #: 2020-15796**

☒ **INITIAL REPORT**    ☐ **SUPPLEMENTAL REPORT**

### INCIDENT TYPE

**1. INMATE - FACILITY RULES VIOLATION**    **2. OTHER:** FAILURE TO FOLLOW INSTRUCTIONS

### DATE / TIME / LOCATION

**DATE: Tuesday, June 30, 2020**        **TIME: Approximately 1407 hours**        **TO**
**DATE:**                                **TIME:** Click here to enter text.

**L-Pod Dayroom , H.C.S.O. Detention Center, 203 N. Perry Pkwy, Perry, GA 31069**

### OFFENSE

1.  **OFFENSE: DISOBEYING INMATE MOVEMENT RULES**
    **OTHER:** Click here to enter text.            **COUNTS: 1**
2.  **OFFENSE:** Choose an item.
    **OTHER:** Click here to enter text.            **COUNTS:** Choose an item.
3.  **OFFENSE:** Choose an item.
    **OTHER:** Click here to enter text.            **COUNTS:** Choose an item.
4.  **OFFENSE:** Choose an item.
    **OTHER:** Click here to enter text.            **COUNTS:** Choose an item.

### NAMES

**1. Adam Harlen Sindell**
**INMATE #:** 2020 002217  **RACE:** W  **SEX:** MALE  **DOB:** 04301975  **HEIGHT:** 6'3"  **WEIGHT:** 160  **HAIR:** BROWN
**EYES:** BROWN  **HOW INVOLVED:** OFFENDER

**2. Deputy LaTonya Coach Badge #7447**
**INMATE #:** Click here to enter text.  **RACE:** Choose an item.  **SEX:** Choose an item.  **DOB:** Click here to enter text.
**HEIGHT:** Click here to enter text.  **WEIGHT:** Click here to enter text.  **HAIR:** Choose an item.  **EYES:** Choose an item.
**HOW INVOLVED: REPORTING DEPUTY**

**3.** Click here to enter text.
**INMATE #:** Click here to enter text.  **RACE:** Choose an item.  **SEX:** Choose an item.  **DOB:** Click here to enter text.
**HEIGHT:** Click here to enter text.  **WEIGHT:** Click here to enter text.  **HAIR:** Choose an item.  **EYES:** Choose an item.
**HOW INVOLVED:** Choose an item.

**4.** Click here to enter text.
**INMATE #:** Click here to enter text.  **RACE:** Choose an item.  **SEX:** Choose an item.  **DOB:** Click here to enter text.
**HEIGHT:** Click here to enter text.  **WEIGHT:** Click here to enter text.  **HAIR:** Choose an item.  **EYES:** Choose an item.
**HOW INVOLVED:** Choose an item.

### STATEMENTS / EVIDENCE OBTAINED

| | | | |
|---|---|---|---|
| **WRITTEN STATEMENT(S) OBTAINED** | ☐ YES | ☐ NO | ☒ N/A |
| **WRITTEN STATEMENT(S) ATTACHED** | ☐ YES | ☐ NO | ☒ N/A |
| **PHOTOS TAKEN** | ☒ YES | ☐ NO | ☐ N/A |
| **PHOTOS ATTACHED** | ☒ YES | ☐ NO | ☐ N/A |
| **EVIDENCE SEIZED** | ☐ YES | ☐ NO | ☒ N/A |

**PHOTOS TAKEN BY: Cpl. Matthew Murphy #7222**
### PROPERTY / EVIDENCE / ITEM INFORMATION

**PROPERTY STATUS:** Choose an item.    **PROPERTY VALUE:** Click here to enter text.
**PROPERTY OWNER:** Click here to enter text.

**PROPERTY DESCRIPTION:** Click here to enter text.
**WHO SEIZED / FOUND IT:** Click here to enter text.
**WHERE DID THEY PUT IT:** Choose an item.
**WHO WAS IT TURNED OVER TO:** Click here to enter text.

**PROPERTY STATUS:** Choose an item.    **PROPERTY VALUE:** Click here to enter text.
**PROPERTY OWNER:** Click here to enter text.
**PROPERTY DESCRIPTION:** Click here to enter text.
**WHO SEIZED / FOUND IT:** Click here to enter text.
**WHERE DID THEY PUT IT:** Choose an item.
**WHO WAS IT TURNED OVER TO:** Click here to enter text.

**PROPERTY STATUS:** Choose an item.    **PROPERTY VALUE:** Click here to enter text.
**PROPERTY OWNER:** Click here to enter text.
**PROPERTY DESCRIPTION:** Click here to enter text.
**WHO SEIZED / FOUND IT:** Click here to enter text.
**WHERE DID THEY PUT IT:** Choose an item.
**WHO WAS IT TURNED OVER TO:** Click here to enter text.

**PHOTOS**
**(CLICK ON THE ICON IN THE CENTER OF THE BOX TO INSERT PHOTOS FROM A FILE OR CARD**
**IF YOU HAVE MORE THAN 6 PHOTOS, EMAIL THE ADDITIONAL PHOTOS)**

# HOUSTON COUNTY SHERIFF'S OFFICE
# DETENTION CENTER
# INCIDENT REPORT

**GA0760000**                                    **CASE #: 2020-15796**

### NARRATIVE

Date: Tuesday, June 30, 2020
Time: 1324 hrs
Location: L-pod
Reference: Inmate refusing to lockdown

**BACKGROUND**
On Tuesday, June 30, 2020, I was assigned as the Pod Deputy in L-Pod at the Houston County Sheriff's Office Detention Center (H.C.S.O.D.C.).

**INCIDENT**
At approximately 1324 hours, Adam Sindell #2020002217 lost his rec after his cell was searched and he had too many books in his possession.

The bottom tier began rec at 1400 hours. Sindell rang the buzzer to exit his cell. I told him his rec was gone because he had too many books. He later rang the buzzer and stated that he didn't care about rec he needed tissue. I tossed a roll of tissue to my pod orderly to pass to him. I accessed cell L1 for Sindell to retrieve the tissue. When the door opened, he brushed passed the orderly then proceeded to walk to the KIOSK. I turned on my body cam while instructing him to return to his cell, but he refused to comply. I instructed him again to return to his cell, he again refused to comply. I instructed all other inmates to return to their assigned cells. They all complied. Once the pod dayroom was clear with the exception of Sindell, I gave him one last instruction to lock down in his cell. He refused again and continued to use the KIOSK. I called for Movement.

Deputies Jacob Cleckner #7429 and Kyle Boerger #7386 arrived. Deputy Cleckner instructed Sindell to go to his cell and he still refused to comply. As Deputy Cleckner got closer to Sindell, he began to walk towards the deputies. Deputy Cleckner grabbed him and took him to the ground while Deputy Boerger handcuffed Sindell to gain control. Sindell began to have what appeared to be a seizure. By this time, other deputies arrived including shift Lieutenant Theresa Craig #7056. Medical staff was notified. The nurse entered the pod to evaluate Sindell. He was escorted to Medical in a wheelchair.

**CONCLUSION**
Sindell was reassigned to Medical cell 1 for 24 hour observation. His property was bagged and baggage by myself and pod orderlies, while the body cam was running. Deputy Garrett Cooley #7196 retrieved the property and took it to Medical.

REPORTING DEPUTY: LaTonya Coach                    BADGE #: 7447

SIGNATURE OF REPORTING DEPUTY: _____

---

**SHIFT COMMANDER (or Sergeant if Shift Commander is unavailable)**

☒ I have reviewed this report for completeness and accuracy.

APPROVING SUPERVISOR: _____    BADGE #: _____

SIGNATURE OF APPROVING SUPERVISOR: _____

**HOUSTON COUNTY SHERIFF'S OFFICE**
**DETENTION CENTER**

**USE OF FORCE REPORT**

**CASE #:** 2020-15796    **DATE:** 6/30/2020    **TIME:** 1408 hours

**LOCATION:** L-Pod , H.C.S.O. Detention Center, 203 N. Perry Pkwy, Perry, GA 31069

**INITIAL REASON FOR CONTACT:** Refusal to Lockdown

---

**PERSON FORCE WAS USED AGAINST**

**NAME:** Sindell, Adam Harlen
**INMATE #:** 2020-002217    **RACE:** WHITE        **SEX:** MALE
**DOB:** 04/30/1975        **HEIGHT:** 6'03''  **WEIGHT:** 160
**HAIR:** BROWN            **EYES:** BROWN        **HOW INVOLVED:** INMATE

---

**LEVEL OF RESISTANCE (SELECT ALL THAT APPLY)**

1. ☐ Unarmed subject resisted control, fell on ground, was taken to the ground, or blow struck, no deputy's weapon(s) were used.
2. ☒ **#1 plus** at least one more Deputies needed for assistance.
3. ☐ Unarmed subject resisted control, Deputy's weapon(s) used.
4. ☐ **#3 plus** at least one more deputies needed for assistance.
5. ☐ Subject armed with club or similar weapon and threatened or attacked deputy or third party.
6. ☐ Subject armed with knife or similar weapon and threatened to attack deputy or third party.
7. ☐ Subject armed with firearm threatened deputy or third party.
8. ☐ Subject armed with firearm shot at deputy or third party.
9. ☐ **OTHER:** Click here to enter text.

---

**TYPE OF FORCE USED (SELECT ALL THAT APPLY)**

**TYPE:** PUSH, PULL, GRAB, TAKE DOWN, GRAPPLING, OPEN HAND STRIKE
**LOCATION ON BODY:** CHEST - BELOW DIAPHRAM
**TYPE:** PUSH, PULL, GRAB, TAKE DOWN, GRAPPLING, OPEN HAND STRIKE
**LOCATION ON BODY:** WRIST
**TYPE:**
**LOCATION ON BODY:**
**TYPE:** Choose an item.
**LOCATION ON BODY:** Choose an item.
**TYPE:** Click here to enter text.
**LOCATION ON BODY:** Choose an item.

---

**WAS THE SUBJECT ARMED?** ☐ YES  ☒ NO  **WAS ARMED WITH:** Click here to enter text.

**WAS THE SUBJECT UNDER THE INFLUENCE?**    ☐ YES        ☒ NO        ☐ UNABLE TO DETERMINE

**WERE RESTRAINTS USED?** ☒ YES        ☐ NO        **TYPE USED:** Handcuffs

**WAS THE SUBJECT CHARGED?**    ☐ YES    ☒ NO
**WHAT WAS THE SUBJECT CHARGED WITH?**

---

**WITNESSES**

NAME: Kyle Boerger    ADDRESS: 203 N Perry Pkwy Perry, GA 31069    PHONE: 4782184900
NAME: Theresa Craig    ADDRESS: 203 N Perry Pkwy Perry, GA 31069    PHONE: 4782184900
NAME: LaTonya Coach    ADDRESS: 203 N Perry Pkwy Perry, GA 31069    PHONE: 4782184900

## INJURIES

If injuries were incurred as a result of the use of force, including any officers and/or other persons, provide the information below. If additional space is required, please include a separate attachment to this form.

NAME:                                    INJURY:
WHERE TREATED:                           NAME OF NURSE OR DR.:


NAME:                                    INJURY:
WHERE TREATED:                           NAME OF NURSE OR DR.:


CASE #: 2020-17596

### NARRATIVE

INSTRUCTIONS
The narrative should reflect the incident as a chronological account of facts and relevant events that occurred and resulted in the use of force. If additional details and or space are required, attach the additional information as an attachment to this form.  Attachments are to be titled "Use of Force Attachment for Case # ", with the reporting Deputy's name and date of the report.

Date: 6/30/20
Time: 1408 hours
Location: L-pod
Re: Inmate Refusal to Lockdown

BACKGROUND:
On June 30, 2020 I was assigned to D-pod at the Houston County Sheriff's Office Detention Center, when L-Pod called for assistance for an inmate Refusing to Lockdown.

INCIDENT
Approximatley 1408 hours, Inmate Sindell, Adam inmate #20-002217 was refusing to lockdown. I ran into L-pod and advised Sindell to lockdown. He refused, so I grabbed Sindell by the waist to maintain control and took him to the ground. While on the floor, I restrained him to the floor by keeping my left arm on his upper back. Deputy Kyle Boerger #7386 assisted by putting handcuffs on Sindell. I assisted Sindell to a chair, while Medical was in route to the pod. Medical arrived and cleared him to be in a wheelchair. Sindell was taken to Medical, and reassigned to Medical cell 1.


REPORTING DEPUTY: Deputy Jacob Cleckner          BADGE #: 7429

SIGNATURE: _____

SUPERVISOR'S NAME: Lt. Theresa          BADGE #: 7056

SIGNATURE: _____

**DO NOT WRITE BELOW THIS LINE. BELOW THIS LINE IS FOR ADMINISTRATION / I.A. USE ONLY**

## ADMINISTRATION / I.A. USE ONLY

### THIS USE OF FORCE REPORT HAS BEEN REVIEWED BY:

NAME: _____    DATE: _____

SIGNATURE: _____

☐ **APPROVED    DATE:** _____

☐ **UNDER INVESTIGATION    DATE:** _____

☐ **INVESTIGATION SHOWED APPROVED FORCE    DATE:** _____

☐ **INVESTIGATION SHOWED UNAPPROVED FORCE.**
   **CASE FORWARDED FOR ADMINISTRATIVE REVIEW.    DATE:** _____

☐ **ADMINISTRATIVE REVIEW:**

    ☐ I concur with the findings of the investigation.

    ☐ I do not concur with the findings of the investigation.

NAME: _____

SIGNATURE: _____

DATE: _____

TITLE:   ☐ **JAIL ADMINISTRATOR**   ☐ **CHIEF OF DETENTION**

# HOUSTON COUNTY SHERIFF'S OFFICE
## DETENTION CENTER
### INCIDENT REPORT

**GA0760000**                           **CASE #:  2020-15796**

☐ **INITIAL REPORT**      ☒ **SUPPLEMENTAL REPORT**

### INCIDENT TYPE

**1. INMATE - FACILITY RULES VIOLATION**                    **2. OTHER:** Click here to enter text.

### DATE / TIME / LOCATION

**DATE:** June 30, 2020                **TIME:  1408 hrs**        **TO**
**DATE:**                              **TIME:** Click here to enter text.

L-Pod , H.C.S.O. Detention Center, 203 N. Perry Pkwy, Perry, GA 31069

### OFFENSE

1.  **OFFENSE: DISOBEYING OFFICER**
    **OTHER:** Click here to enter text.                **COUNTS:** Choose an item.
2.  **OFFENSE:** Choose an item.
    **OTHER:** Click here to enter text.                **COUNTS:** Choose an item.
3.  **OFFENSE:** Choose an item.
    **OTHER:** Click here to enter text.                **COUNTS:** Choose an item.
4.  **OFFENSE:** Choose an item.
    **OTHER:** Click here to enter text.                **COUNTS:** Choose an item.

### NAMES

**Adam Harlen Sindell**
**INMATE #:** 2020-002217   **RACE:**  W   **SEX:  MALE   DOB:** 04/30/1975   **HEIGHT:** 6'3"   **WEIGHT:** 160   **HAIR: BROWN**
**EYES: BROWN   HOW INVOLVED: OFFENDER**

**2. Deputy Jacob Cleckner #7429**
**INMATE #:** Click here to enter text.   **RACE:**  Choose an item.   **SEX:**  Choose an item.   **DOB:**  Click here to enter text.
**HEIGHT:** Click here to enter text.   **WEIGHT:** Click here to enter text.   **HAIR:** Choose an item.   **EYES:** Choose an item.
**HOW INVOLVED: REPORTING DEPUTY**

**3. Deputy Kyle Boeger #7386**
**INMATE #:** Click here to enter text.   **RACE:**  Choose an item.   **SEX:**  Choose an item.   **DOB:**  Click here to enter text.
**HEIGHT:** Click here to enter text.   **WEIGHT:** Click here to enter text.   **HAIR:** Choose an item.   **EYES:** Choose an item.
**HOW INVOLVED:**

**4.**
**INMATE #:**      **RACE:**  W   **SEX:**      **DOB:**
**HEIGHT:**      **WEIGHT:**      **HAIR:**      **EYES:**
**HOW INVOLVED:**

### STATEMENTS / EVIDENCE OBTAINED

| | | | | | |
|---|---|---|---|---|---|
| **WRITTEN STATEMENT(S) OBTAINED** | ☐ YES | ☒ NO | ☐ N/A |
| **WRITTEN STATEMENT(S) ATTACHED** | ☐ YES | ☒ NO | ☐ N/A |
| **PHOTOS TAKEN** | ☒ YES | ☐ NO | ☐ N/A |
| **PHOTOS ATTACHED** | ☒ YES | ☐ NO | ☐ N/A |
| **EVIDENCE SEIZED** | ☐ YES | ☐ NO | ☒ N/A |

**PHOTOS TAKEN BY:  Cpl. Matthew Murphy #7222**

### PROPERTY / EVIDENCE / ITEM INFORMATION

**PROPERTY STATUS: DAMAGED  PROPERTY VALUE:**
**PROPERTY OWNER:  Houston County Detention Center**
**PROPERTY DESCRIPTION:**

WHO SEIZED / FOUND IT:
WHERE DID THEY PUT IT: TURNED OVER TO
WHO WAS IT TURNED OVER TO:

**PROPERTY STATUS:** Choose an item.    **PROPERTY VALUE:** Click here to enter text.
**PROPERTY OWNER:** Click here to enter text.
**PROPERTY DESCRIPTION:** Click here to enter text.
**WHO SEIZED / FOUND IT:** Click here to enter text.
**WHERE DID THEY PUT IT:** Choose an item.
**WHO WAS IT TURNED OVER TO:** Click here to enter text.

**PROPERTY STATUS:** Choose an item.    **PROPERTY VALUE:** Click here to enter text.
**PROPERTY OWNER:** Click here to enter text.
**PROPERTY DESCRIPTION:** Click here to enter text.
**WHO SEIZED / FOUND IT:** Click here to enter text.
**WHERE DID THEY PUT IT:** Choose an item.
**WHO WAS IT TURNED OVER TO:** Click here to enter text.

---

**PHOTOS**
**(CLICK ON THE ICON IN THE CENTER OF THE BOX TO INSERT PHOTOS FROM A FILE OR CARD**
**IF YOU HAVE MORE THAN 6 PHOTOS, EMAIL THE ADDITIONAL PHOTOS)**



# HOUSTON COUNTY SHERIFF'S OFFICE
## DETENTION CENTER
## INCIDENT REPORT

**GA0760000**                                      **CASE #:  2020-17596**

### NARRATIVE

**Date: June 30, 2020**
**Time: At approximately 1408 hours**
**Location: L-Pod**
**Inmate Involved: Adam Sindell #2020-002217**
**Deputies Involved: Dep. Latonya Coach #7447, Dep. Kyle Boerger #7386, Dep. Bennett Curry #7328, Dep. Andrew Lauristen #7366, Dep. Garrett, Cooley #7196, Sergent Daphne Felder #6865,  Lt. Craig, Theresa #7056**

**BACKGROUND:**
On Tuesday June 30, 2020 at approximately 1408 hours I was assigned to D-Pod at the Houston County Sheriffs Office Detention Center.

**INCIDENT**
Deputy Latonya Coach # 7447 called for Movement via radio to L-pod for an inmate refusing to lockdown. I made my way down the hallway to L-pod with Deputy Kyle Boeger # 7386. We both entered the Pod throught the side door. I witnessed Adam Sindell inmate #2020-002217 using the Kiosk. I approached Sindell and asked him to lockdown. He refused and I told him to Lockdown. Sindell still refused. I used both my arms and wrapped them around his waist and took him to the ground. Deputy Boerger assisted by putting handcuffs on him.

Deputy Boerger and I realized he was bleeding from his mouth, and Deputy Boerger called for Medical via radio. We attempted to sit Sindell on the chair, and waited for Medical to arrive. Sindell began to have what appeared to be a siezure. We placed him on the ground. Deputy Bennett Curry Badge #7328 assisted keeping him still until Medical arrived. Nurse Sandra Rice arrived and cleared Sindell to be put in a wheel chair. Deputy Curry, Deputy Boerger, and I escored Sindell to Medical.

**CONCLUSION**
Medical assessed the injuries. No further injuries to report. Sindell was reassigned to Medical cell 1 for observation.

**REPORTING DEPUTY: Deputy Jacob Cleckner**                **BADGE #: 7429**

**SIGNATURE OF REPORTING DEPUTY:** _____

| SHIFT COMMANDER (or Sergeant if Shift Commander is unavailable) |
|---|
| ☐ I have reviewed this report for completeness and accuracy. |
| **APPROVING SUPERVISOR:** _____    **BADGE #:** _____ |
| **SIGNATURE OF APPROVING SUPERVISOR:** _____ |

# Appeal: Reply to Inmate Grievance

Inmate: <u>ADAM SINDELL</u>

Location: E 03 B 3

Kiosk:

Entry ID: 253746

Inmate ID: 19074

Inmate State ID:

Original ID: 253299

Original Date: Jul 1, 2020 - 3:02 pm CDT

Subject: Appeal: Assault by staff member

Assigned To: All

Classification: Pod Rules

Complaint Against:None

Date Added: Jul 3, 2020 - 1:24 pm CDT

## Original Grievance (ID: 253299)

I was assaulted by a deputy for the second time ..I will not give many details this time because in doing so last week it seems it only gave this institution names of witnesses in order to threaten/ entice them into helping cover up the brutality.. I was attacked by a deputy do know his name as of yet but he is Caucasian short musclebound with !it's of colorful tattoos on his forearms. He approached me in my po (l) on 6/30/20 and said" I'm only gonna tell you to lock down one time" I was already headed to my cell to lock down so I proceed to respond "yes sir" but before I could get the sir out of my mouth he picked me up, lifted me about seven feet high in the air , then slammed me viscously tone pavement causing my head to slam onto the cement floor . I was knocked unconscious. My head was bleeding and has a giant lump . my neck back mouth shoulder wrist and elbow are injured...I am reserving all further details for my attorney. I am formally requesting this officer be charged with assaulting me if not I am formally asking to be allowed to take out a warrant on him. I want his name badge number all footage of body cameras showing the event(it was viewed by several deputies )and dorm camera footage made readily available to my and my attorne

Original Response to Inmate

A report was generated and will be given to our Office of Professional Standards to investigate, as with all use of force incidents.

Original Grievance Status: Resolved Unsubstantiated

Grievance:

i am wondering how this matter is being investigated when no one has even asked me what happened. I was brutally assaulted by deputy cletner (not sure if that is his name) for absolutely no reason. My family is being lied to about the incident. I would like to know what is going on with the investigation assuming there even is one

Status:

Resolved Unsubstantiated

Original Admin Notes:

Notes for Admin:

Original Inmate Notes: A report was generated and will be given to our Office of Professional Standards to investigate,

SINDELL, ADAM HARLEN
Epic# 019074

Order: 06-30-2020 03:18 PM
Record 110 of Set #3 of 139 total records, Page 110 of 139

| Order | 06-30-2020 Tue 03:18 PM |
|---|---|
| **SINDELL, ADAM HARLEN          Epic# 019074    Gender: Male          DOB 04-30-1975** | |

| | |
|---|---|
| Order: | Hourly Neurological Assessment |
| Instructions: | Patient is to be assessed every hour.  If condition warrants more assessment, see patient every 15 minutes.<br>Observation Guidelines - BE ALERT FOR:<br>1.  Change in level of responsiveness<br>2.  Lethargy, slowing of speech;<br>3.  Sudden changes (ie - quiet to restless, orientation to confusion)<br>4.  Changes in vital signs:  Pulse < 60 or > 100; slow or irregular resp; rising BP or<br>     widening pulse pressure;<br>5.  Moderately elevated temperature<br>6.  Headache<br>7.  Vomiting<br>8.  Pupillary changes |
| Status: | Completed |
| Entered by: | SRICE |
| Approval Status: | Pending |
| Approved/Rejected by: | |
| Approved/Rejected on: | |
| Requested Start Date: | Tue 06-30-2020 |
| Requested Start Shift: | STAT |
| Requested End Date: | Tue 06-30-2020 |
| Requested End Shift: | STAT |
| Actual Start Date: | Tue 06-30-2020 |
| Actual Start Shift: | STAT |
| Actual End Date: | Tue 06-30-2020 |
| Actual End Shift: | STAT |
| Renewal Date: | |
| Assigned to: | |
| Requesting Provider: | Rice, Sandra |
| Supervising Department: | Medical |
| Implementation Department: | Medical |
| Verbal Order?: | No |
| Facility: | Houston County Detention Center |
| Discontinued by: | |
| Comments: | |

SINDELL, ADAM HARLEN
Epic# 019074

| Encounter | | | 06-30-2020 Tue 02:41 PM |
|---|---|---|---|
| **SINDELL, ADAM HARLEN** | **Epic# 019074** | **Gender: Male** | **DOB 04-30-1975** |
| Dictation: | Called to L POD for an assessment after use of force, entered L POD observed IM lying on Left side, holding head, crying with small amount of blood noted to floor and around IM mouth. IM wouldn't answer questions, Officers reported seizure like activity after IM slide to floor during use of force, general assessment compled, ok for IM to move to medical for a more thorough assessment. IM assisted into w/c and wheeled to medical, as he was being wheeled into medical IM begins to scream out "I haven't done nothing, leave me alone as he was sliding out of w/c onto the floor. officers assisted IM off floor on into medical onto exam table, more thorough assessment completed by Jennie Vaughn, LPN DHS. VS obtained and stable noted. Housed in medical at this time for observation. | | |
| Vitals: | Blood Pressure: 148/86 | | |
| | Temperature: 99.9 | | |
| | Pulse: 114 | | |
| | Pulse Oxygen: 99 | | |
| | Respirtions: 20 | | |
| Condition Related To: | | | |
| Dates: | Current Illness Date: | | |
| | 1st Date Of Illness: | | |
| | Unable To Work Dates: | | |
| | Hospitalization Dates: | | |
| Diagnosis: | | | |
| Procedures: | | | |
| Providers: | Attending Provider: Rice, Sandra, , ID | | |
| Facility: | Houston County Detention Center | | |
| Encounter Type:> | | | |

Generated by CorrecTek, Version: 2014.1.4.12

Printed 07-06-2020 11:18 AM Printed By: ADMINJV                     Generated by CorrecTek, Version 2014 1 4 12

**Order: 06-30-2020 Tue 03:13 PM**

| SINDELL, ADAM HARLEN | Epr# 019074 | Gender: Male | DOB 04-30-1975 |
|---|---|---|---|

| | |
|---|---|
| Order: | Verbal Order - Medical |
| Intervention: | Called Dr Krobel and received verbal order over phone. |
| | PHENYTOIN SOD EXT, 100MG #270, SIg: Take 3 Capsules by mouth 1 time per day for 90 days. |
| | House in medical for obs. |
| | Neuro checks |
| Status: | Pending |
| Entered by: | ADMINJV |
| Approval Status: | Pending |
| Approved/Rejected by: | |
| Approved/Rejected on: | |
| Requested Start Date: | Tue 06-30-2020 |
| Requested Start Shift: | |
| Requested End Date: | Tue 06-30-2020 |
| Requested End Shift: | |
| Actual Start Date: | |
| Actual Start Shift: | |
| Actual End Date: | |
| Actual End Shift: | |
| Renewal Date: | |
| Assigned to: | |
| Requesting Provider: | Vaughan, Jeanne |
| Reporting Departments: | Medical |
| Implementation Departments: | Medical |
| Verbal Order?: | No |
| Facility: | Houston County Detention Center |
| Discontinued by: | |
| Comments: | |

SINDELL, ADAM HARLEN
Epr# 019074

Order: 06-30-2020 01:13 PM
Record 109 of Set # 1 of 139 total records. Page 109 of 139











# CULLEN TALTON
# SHERIFF, HOUSTON COUNTY
**203 North Perry Parkway**
**Perry, GA 31069**
**Phone (478) 218-4900      Fax (478) 218-4905**

### William Rape, *Chief Deputy*



**Maj. Alan Everidge**
Jail Administrator

**Lt. George Runyon**
Professional Standards

**Capt. Michelle Westbrook**
Ass't Jail Administrator

**Lt. George Horne**
Operations

June 29, 2020

To: Deputy Coach

From: Captain Westbrook

Ref: IA 20-08492

CC: Major Everidge
    Lieutenant Craig
    Personnel File

Deputy Coach

Recently, the Office of Professional Standards conducted an investigation on an allegation of excessive force used by you. This allegation was received via grievance with the kiosk in the pod. Inmate Adam Sindell, Booking #2020002217, alleges during a shakedown, you flipped him off his mattress when he refused to get off the bunk for a cell search. Further, he alleges, you are picking on him by searching his cell every day and came back to his cell to taunt him about taking the books, specifically the bible.

POLICY STANDARD:
Houston County Sheriff's Office Standard Operating Procedure, section 5, page 5, subsection 4(A) *Conduct Unbecoming an Officer* states: An officer must at all times, on and off duty, conduct himself in a manner which does not bring discredit to himself, the department, or the county.

Houston County Detention Center Policy and Procedure Manual, section 8.1, page 1, subsection II(C) *Use of Force* states Detention Deputies shall use the minimum amount of force necessary to 1) physically control a inmate, 2) protect staff, inmates, and other persons, 3) to prevent damage to HCDC and HCDC equipment, 4) maintain or restore order and discipline, 5) enforce the lawful orders of the HCDC, and 6) further other legitimate penological interests where safety, security, and control are threatened.




# *CULLEN TALTON*
# *SHERIFF, HOUSTON COUNTY*
### *203 North Perry Parkway*
### *Perry, GA 31069*
### *Phone (478) 218-4900    Fax (478) 218-4905*

### William Rape, *Chief Deputy*

In the interviews of the witnesses he provided, their testimony did not support the allegations. You did not activate your body-worn camera. Had you don so, this investigation may not have taken as long to come to a conclusion. Your Watch Commander, Lieutenant Craig had already spoken to you, giving instructions on the importance of the using the body-worn cameras and utilizing Movement when an inmate not wanting to follow instructions arises. Since Lieutenant Craig already counseled you on this topic, no further action will be taken.




# *Sheriff Cullen Talton*
# HOUSTON COUNTY SHERIFF'S OFFICE
## Detention Center
### *203 North Perry Parkway*
### *Perry, Georgia 31069*
### Phone (478) 218-4900     Fax (478) 218-4905

June 29, 2020

To: Captain Westbrook

From: Major Everidge

Re: Is 2020-08492

I have reviewed the investigation and your recommendation regarding the incident in question involving Dep. Latonya Coach and Inmate Adam Sindell. I concur no excessive force was used by Coach, her failure to use the body camera while searching the cell caused the investigation of this incident to take longer than necessary. Deputy Coach has been counseled and no further action should take place regarding this incident unless new information is discovered.

*Coming together is a beginning.*
*Keeping together is progress.*
*Working together is success.*

*- Henry Ford*

1




# CULLEN TALTON
# SHERIFF, HOUSTON COUNTY
### 203 North Perry Parkway
### Perry, GA 31069
### Phone (478) 218-4900      Fax (478) 218-4905

### William Rape, Chief Deputy

**Maj. Alan Everidge**
Jail Administrator

**Lt. George Runyon**
Professional Standards

**Capt. Michelle Westbrook**
Ass't Jail Administrator

**Lt. George Horne**
Operations

June 29, 2020

To: Major Everidge

From: Captain Westbrook

Ref: IA 20-08492

Major,

Recently, the Office of Professional Standards conducted an investigation on an allegation of excessive force used by Deputy Latonya Coach. This allegation was received via grievance with the kiosk in the pod. Inmate Adam Sindell, Booking #2020002217, alleges during a shakedown, Deputy Coach flipped him off his mattress when he refused to get off the bunk for a cell search. Further, he alleges, she is picking on him by searching his cell every day and she came back to his cell to taunt him about taking the books, specifically the bible.

POLICY STANDARD:
Houston County Sheriff's Office Standard Operating Procedure, section 5, page 5, subsection 4(A) *Conduct Unbecoming an Officer* states: An officer must at all times, on and off duty, conduct himself in a manner which does not bring discredit to himself, the department, or the county.

Houston County Detention Center Policy and Procedure Manual, section 8.1, page 1, subsection II(C) *Use of Force* states Detention Deputies shall use the minimum amount of force necessary to 1) physically control a inmate, 2) protect staff, inmates, and other persons, 3) to prevent damage to HCDC and HCDC equipment, 4) maintain or restore order and discipline, 5) enforce the lawful orders of the HCDC, and 6) further other legitimate penological interests where safety, security, and control are threatened.

Lieutenant Runyon started by interviewing Inmate Sindell. He alleges Deputy Coach is aggressive in nature. He and Deputy Coach had a playful back-and-forth interactions with each other since she has been assigned to L-pod. He felt she was picking on him by searching his cell everyday she is at work. On or about June 24, 2020, she flipped him off the mattress when he refused to get off the bunk due to an erection. He claims he never has any contraband in his cell. On June 25, 2020, three extra books were taken out of his cell, because he did not want to identify which ones he would like to keep. According to Inmate Sindell, Deputy Coach threw the books in the trash once she left his cell. He advised he had two other inmates witnesses, he referred to as "orderlies".



**CULLEN TALTON**
**SHERIFF, HOUSTON COUNTY**
**203 North Perry Parkway**
**Perry, GA 31069**
**Phone (478) 218-4900    Fax (478) 218-4905**

**William Rape, *Chief Deputy***



Inmate Tavarus Thomas, Booking #2020001979 was interviewed. He said on June 25, 2020, he was in the restroom when the interaction between Deputy Coach and Inmate Sindell took place. He went around the pod cleaning cell door windows on this day. He did say, the cell searches conducted by Deputy Coach went "straight". He said when Deputy Coach finds more than the allotted amount of books in a cell, she explains to the inmate how many are allowable and lets the inmate choose which he prefers to keep. When asked if he witnessed Deputy coach pull the mattress from under Inmate Sindell, he said on June 24, 2020, Deputy Coach told Inmate Sindell to get off the bunk so she could search the cell and he refused. She lifted the mattress, causing Inmate Sindell to roll towards the cell wall. Inmate Sindell was laughing over this and did not complain of any injury. He feels Inmate Sindell likes to play and shouldn't if he is going to try to claim unfair treatment later. He advises Deputy Coach searches all the occupied cells everyday she is at work.

Inmate Daniel Weathington, Booking #2020004491 was interviewed. He was holding the trash bag for Deputy Coach on June 25, 2020. He was present when Deputy Coach searched Inmate Sindell's cell. When Deputy Coach entered the cell and ordered Inmate Sindell to get off the bunk, he refused, citing he had an erection. She told him she did not have time for "all that" and proceeded with the cell search. She did grab the mattress, causing Inmate Sindell to roll off of it again, towards the cell wall. During this search, six books were found. She confiscated three and asked Inmate Sindell which ones he would like to keep. At first, he said the bible, but refused to say anything about the other books. She removed the extra books and placed them on the floor under the railing. The bible was included in this cache. Inmate Sindell did not say anything about having important paperwork in the bible she confiscated. He did start complaining of pain in his elbow. He advised Deputy Coach searches all the cells every day she is working. It is his opinion Deputy Coach has not done anything wrong.

Deputy Coach was interviewed as well. She said she searches all the cells in her pod every day she works. She goes into the cells for a "quick sweep" and only touches things which are in a visible area. She said she did not think anything of Inmate Sindell not wanting to get off the bunk, as he has done this several times. When searching a net bag on the foot of the bunk, Inmate Sindell started laughing, claiming she was tickling his feet. She said he plays around like that all the time.

On June 24, 2020, after she searched the cell and was getting ready to leave it, Inmate Sindell told her she forgot to look under his mattress. When she did so, she found some lotion inside a glove Inmate Sindell had put there. When she pulled the mattress up, Inmate Sindell rolled towards the cell wall, still laughing. He refused to stand up, so she could put the mattress back on the bunk, but he refused, so she placed it on the floor. She called him silly, exited the cell, and went to the next cell to search.




# CULLEN TALTON
# SHERIFF, HOUSTON COUNTY
### 203 North Perry Parkway
### Perry, GA 31069
### Phone (478) 218-4900        Fax (478) 218-4905

### William Rape, *Chief Deputy*

On June 25, 2020, when she entered Inmate Sindell's cel to search it, he again refused to get off the bunk. She lifted one side of the mattress to look under and he rolled towards the cell wall. When she told him to get up, so she could replace the mattress on the bunk, he told her to throw it on the floor like she did the day before. She called him silly, put the mattress on the floor next to the bunk. She searched around the cell, finding the extra books. Since he was refusing to tell her which ones he wanted, she took the extra ones out, including the bible. She exited the cell with the books and placed them on the floor to be put back into the pod library. She went to the next cell to start another search. When Inmate Sindell complained of the pain in his elbow, he was sent to Medical and seen by LPN, Rawni Sprague of Southern Correction Medicine. He had a minor abrasion to his inner left elbow. He was treated and sent back to the pod.

Later in the day, she went back to Inmate Sindell's cell in an attempt to get him to identify which books he wanted, especially the bible. Inmate Sindell was supposed to have said "get the fuck out of my room; I want my bible". She left the cell with the books, since he was irate and cursing at this time.

The pod cameras were reviewed for the dates and times given in the grievance and/or interviews. Deputy Coach did not have her body worn camera on and running during the cell searches. No footage could be seen in the cell, due to the pod workers standing in the door, blocking the view. Deputy Coach spends about two minutes searching the cell. This was on June 24, 2020.

The pod cameras were reviewed for June 25, 2020 as well. Again, the pod cameras were blocked from seeing inside the cell, because the pod worker were standing in the doorway. She spent about two minutes searching the cell and moving on to the next cell. She did come out of the cell with extra books. She placed these on the floor under the railing, until she had finished her cell searches. Noted, no audio was able to be heard between Deputy Coach and Inmate Sindell, due to the cell being too far from the microphone on the camera. She did not have her body worn camera running on this day either.

Lieutenant Craig was present during all these interviews. At the conclusion of Deputy Coach's interview, Lieutenant Craig advised any time an inmate refused verbal orders, to include getting off a bunk for a cell search, Movement will be called to help. She further instructed Deputy Coach to have her body worn camera running when conducting the cells searches in the future. Had she been running the camera, we could have possibly had further evidence of Inmate Sindell trying to "play around" with her. Deputy Coach acknowledged she understood those orders and was sent back to her post.

The Office of Professional Standards find the allegation of Conduct Unbecoming an Officer : UNSUSTAINED.



# CULLEN TALTON
## SHERIFF, HOUSTON COUNTY
*203 North Perry Parkway*
*Perry, GA 31069*
*Phone (478) 218-4900      Fax (478) 218-4905*



**William Rape,** *Chief Deputy*

The Office of Professional Standards find the allegation of violating the Use of Force policy : UNFOUNDED.

I concur with his findings. Deputy Coach did; however, violate the body worn camera policy. She was oral counseled by her Watch Commander about the importance of turning the body worn camera on in the discharge of her duties. Had she not allowed herself to become complacent with Inmate Sindell, there could have been more proof to prove or disprove these allegations. Since she was orally counseled on this, I recommend it be documented and placed in her file.

# SHERIFF CULLEN TALTON

**Major A. Everidge**
Jail Administrator

Houston County Sheriff's Office
Detention Center
203 North Perry Parkway
Perry, Georgia 31069
Phone: (478) 218-4900

**Captain M. Westbrook**
Chief of Detention

### *HOUSTON COUNTY SHERIFF'S OFFICE*
### *INTERNAL AFFAIRS*
### *REPORT OF INVESTIGATION*

## CASE NUMBER

IA 20-08492

## DATE OF INCIDENT

June 25, 2020

## SUBJECT

Dep. LaTonya Coach, Badge #7447, African American Female, DOB: July 02, 1977, SSN: 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, Employer: Houston County Sheriff's Office Detention Center (HCSODC), 203 North Perry Parkway, Perry, GA 31069

## GRIEVANCE / ALLEGATION, INQUIRY, & ALLEGATION (AIC)  FORM    (see attachment 1)

On June 25, 2020, the following verbatim grievance was received from Inmate Adam Sindell (to include any spelling, punctuation, and/or grammar mistakes) :

"at approximately 7:30 am on 6/25/20 I was assaulted by officer coach. She charged into my room while I was sleeping to conduct a "shakedown" and started yelling at me to get out of my bed. When I didn't get out of my bed fast enough (according to her) she grabbed my mattress and yanked it out from under me causing me to flip over onto the steel bed causing my elbow to slam into the metal and now my elbow is injured. Officer Coach then threw my mattress on top of me and her and the orderly had a big laugh while I layed there in pain. Then she took my bible. She did this because she knows I use a bible as a source of escape from my incarceration and read it a lot. She said I had too many books but I do not I only have two . I told her to please give me my bible back that I have my pastors and legal phone numbers inside it . officer Coach said something foul and then threw away my bible and again laughed saying next time you will do what I say. This is

not the first time this has occurred either. She has conducts a shakedown of my cell every single day. I do not have any contraband nor have I in the past this is just a way for her to harass and assault me. Yesterday ( June 24 2020 she did the same thing. She came into my cell yet that day she didn't even ask me to get up she just snatched my mattress out from under me causing me to flip onto the steel frame and laughed. I stated that that was police brutality she just laughed and stated " I knew you were going to say thatâ€  ....I do not feel I should be subject to being assaulted by staff for any reason and my religious material should not be subject to confiscation as a form of harassment so I am writing this grievance and am considering legal action against officer coach and this facility."

An AIC form was completed so that an investigation into the allegation(s) could begin.

**POLICY STANDARD**   (see attachment 2)

Section 5, page 5 of the Houston County Sheriff's Office Policy and Procedure Manual under subsection 4(A) titled *Conduct Unbecoming an Officer*, which reads, "An officer must at all times, on and off duty, conduct himself in a manner which does not bring discredit to himself, the department, or the county."

Section 8.1, page 1 of the Houston County Detention Facility Policy and Procedure Manual under subsection II(C) titled *Use of Force*, which reads:

"Detention Deputies shall use the minimum amount of force necessary to:
1.  physically control an inmate,
2.  protect staff, inmates, and other persons,
3.  to prevent damage to the HCDC and HCDC equipment,
4.  maintain or restore order and discipline,
5.  enforce the lawful orders of the HCDC, and
6.  further other legitimate penological interests where safety, security and control are threatened."

**INTERVIEW OF INMATE ADAM SINDELL**   (see attachment 3)

On June 25, 2020 at approximately 0845 hours, Inmate Sindell was called up to the Watch Commander's office at the HCSODC for a recorded interview.  Lt. Theresa Craig, Dep. Coach's supervisor, was present.
According to this inmate, Dep. Coach is aggressive in nature but did ask him to be an orderly yesterday.  Initially, he accepted the invitation, but decided to decline after the deputy told him that he might get fifteen minutes or so after performing his orderly duties to stay out of his cell; she

added that this was per supervision at the HCSODC. Inmate Sindell felt that the deputy was not being truthful when she said that she was instructed to lockdown the orderlies after only fifteen minutes, adding that he believed an orderly should get a little more time out for the work they'd be doing, so he declined.    *see notation

Inmate Sindell advised that up until he declined to be an orderly, he and Dep. Coach have kind of played back-and-forth with each other. Everything would be verbal and all in fun with no malice from either, but he felt, after a search of his cell this morning, that he needed to report something. Every single day that Dep. Coach is at work, she shakes down his cell...every day, and it's always when he is asleep, early in the morning. Dep. Coach will lift up his mattress while he's atop of it and look underneath it for contraband. Two or so days ago, she pulled on the mattress a little too hard and he came off of it; she laughed about, and he did as well. As he got to thinking about it, though, she never really finds anything; he does not have contraband in his cell, yet each day she continues to check like she's picking on him. Yesterday, the same thing happened.

This morning, Dep. Coach came into his cell and ordered him to get out of bed for a search. He advised that he had an erection, so he did not want to stand. Dep. Coach told him that she did not have time for all that and grabbed ahold of his mattress. She pulled forcefully on the mattress and flipped him off. He struck his left elbow on the bed's framing when this occurred, and it hurt badly.

Dep. Coach started looking around the cell and located a number of books, in excess of three. She took the books and then tossed his Bible in a trash bag. He tried to tell her that he'd written some legal information inside there, along with a telephone number for his pastor, but she didn't care and threw away the book anyway. He felt that she did this because she knew that he spent a good bit of time studying God's word and this would punish him. He said that an orderly with dreadlocks was present when this took place, and he laughed about it, along with the deputy. Inmate Sindell said that the extra books belonged to an ex-cellmate of his who was no longer in this facility. They were not his books.

Inmate Sindell said that he wanted to file a grievance so that it would be on file in case Dep. Coach tried to do something to him in the future, like if he awoke and there was all of a sudden drugs planted in his cell.

I informed the inmate that I would look into the situation and that if it was determined that the deputy had done something to violate HCSODC policy, corrective action would be taken by HCSODC Administration. I added, too, that if it turned out that his allegations were totally baseless and false in nature, he could face both in-house and OCGA charges. He agreed that was fair.

* (Following my talk with Inmate Sindell, Lt. Craig informed me that the instructions given to the deputy by HCSODC supervision in reference to

orderlies not spending an excessive amount of time outside of their cells following clean-up came from Maj. Alan Everidge in response to limiting inmates' potential exposure to COVID-19.)

### INTERVIEW OF INMATE TAVARES THOMAS   (see attachment 4)

Following my conversation with Inmate Sindell, I called-up Inmate Thomas to the Watch Commander's office for a recorded interview. He was the trustee with dreadlocks.

According to this inmate, he was in the restroom when Inmate Sindell's cell was searched earlier this morning. He was present yesterday for the search. When asked if he could go through the cell search with me, he replied that first of all, Dep. Coach searches everybody's cell, everyday she is at work. She never picks just a few cells to search; she searches them all, every time she works.

I asked if he recalled there being several books in Inmate Sindell's cell yesterday, and he could not recall, but stated that when there's a situation where an inmate is found to have too many, Dep. Coach always informs them of the three book limit and asks that person which three he'd like to keep. The extra books are confiscated and placed on a bookshelf within the Pod.

I asked if Inmate Thomas could remember whether or not Dep. Coach said anything to Inmate Sindell which was inappropriate or could make that inmate feel like he was being singled out. Inmate Thomas answered in the negative, advising that the cell search, "went straight" yesterday.

Being as Inmate Sindell mentioned that the mattress had been pulled out from underneath him more than once, I asked this inmate if that happened yesterday. He responded, "He was, they were playing like, he was playing with her yesterday, like if that's the case he shouldn't have did, he shouldn't have did what he did yesterday." When asked what Inmate Sindell had done, Inmate Thomas said that Inmate Sindell had stuffed a glove and some lotion under his mattress for the deputy to find. Inmate Thomas advised that, "it's not cool," to play with the deputy and then to claim that she's not being fair to you or treating you improperly. Dep. Coach did nothing mean to Inmate Sindell at all. He added that it's got to work both ways, if the inmate is playing around then he can't get upset when the deputy plays around, as well. Inmate Thomas stated that following the search, Dep. Coach told Inmate Sindell to get up off the bed so that she could place the mattress back on the bed. He refused to get up, so she placed, not slammed, the mattress on the floor. There was nothing mean in nature, and nobody got hurt. Inmate Sindell was laughing the whole time.

To make sure that I was not missing anything, I inquired again about how often Dep. Coach goes to Inmate Sindell's cell. Inmate Thomas told me that Dep. Coach goes to every inmate's cell every day; she searches every inmates cell daily, all of them.

Inmate Thomas wished to add that he did see when Dep. Coach went back to Inmate Sindell's cell following the initial search.  She asked Inmate Sindell what book(s) he wanted, but he wouldn't answer, so she closed the cell door.

## INTERVIEW OF INMATE DANIEL WEATHINGTON  (see attachment 5)

After learning that Inmate Thomas was not present for Inmate Sindell's cell search this morning, I called down to L-Pod and discovered that it was Inmate Weathington.  He was asked to report to the Watch Commander's office for a recorded interview.

According to this inmate, on today's date he was an orderly and was present when Inmate Sindell's cell was searched by Dep. Coach.  He advised that the deputy asked Inmate Sindell to get up so that she could check underneath his mattress for contraband.  "He wouldn't do it," stated Inmate Weathington, adding that when he declined to move, Dep. Coach rolled the inmate off the mat by picking-up the mat from the side.  The cell was searched, and Inmate Sindell, "still wouldn't get up," telling Dep. Coach that, "he had something going on," meaning that he had an erection.

When asked what Inmate Sindell did whilst the deputy was searching his cell, Inmate Weathington replied that he stayed on the bed.  The deputy found six books within the cell and left him with three, which would be the maximum amount allowed per the inmate handbook.  When asked whether or not the deputy asked Inmate Sindell what books he'd like to keep, Inmate Weathington replied that she did, and he requested at first to keep a Bible, then didn't say anything else. Dep. Coach took several books, including the Bible, and stored them in the book closet until Inmate Sindell decided which three he wished to keep.  The Bible was never thrown in the trash and there was never an in-depth talk between Inmate Sindell and Dep. Coach about the Bible.  Inmate Weathington denied that Inmate Sindell ever told Dep. Coach that he had legal info/papers inside of the Bible...never happened that he heard, and he was in the cell the whole time.

After the books were removed from the cell, Inmate Sindell began to say that his elbow had been injured.  Inmate Weathington said in response to that comment, "I think it's bullshit; she didn't do nothing wrong."

I asked Inmate Weathington if he has noticed that Dep. Coach goes to, or searches, Inmate Sindell's cell more often than she does other inmates' cells.  He replied that Dep. Coach searches every occupied cell, all of them, so if Inmate Sindell claimed that she was going to his cell every time she was working, he'd be correct, but she does it to each other inmate, as well.

I asked the inmate that if in his opinion Dep. Coach did anything wrong; he replied in the negative.  I asked that if in his opinion did Dep. Coach treat Inmate Sindell any differently than any other inmate; he replied in the negative.

**INTERVIEW OF DEPUTY LaTONYA COACH** (see attachment 6)

At around 1000 hours on June 25, 2020, Dep. Coach was called up to the Watch Commander's office for a recorded interview in reference to the allegation(s) leveled against her by Inmate Sindell. As with the other three conversations, Lt. Theresa Craig was present during this interview, as well.

Dep. Coach stated that every day she is at work, she does a shakedown of each tier...all cells. Not yesterday, but the day prior to that when she was assigned to L-Pod, she was checking Inmate Sindell's cell. He was still lying down in his bed, which was okay with her because she was just doing a quick sweep and only touching things that she could visibly see. There was a net bag close to the feet of the inmate, and when she touched it, Inmate Sindell began joking with her and saying that she was tickling his feet; he plays around like that all-the-time.

Yesterday while she was searching Inmate Sindell's cell, he was lying down again. He told her that she'd forgotten to look under his mattress, adding that he had some stuff hidden there. With this being said, the deputy instructed the inmate to get up from the bed so she could search. Inmate Sindell declined to do so, in a joking manner, so Dep. Coach lifted up the side of the mattress, with him still on it, and located a number of jelly packets, some lotion, and some gloves. Dep. Coach removed the items without any problem, and Inmate Sindell continued being himself and acting silly/joking around.

This morning, Dep. Coach went into Inmate Sindell's for a cell search and the inmate remained lying down on the mattress. As was done yesterday, Dep. Coach lifted up the side of the mattress so she could see underneath it. Inmate Sindell rolled himself to the side; she never ripped the mattress out from under him. Inmate Sindell said that she should just thrown the mattress on the floor like she'd done the day prior, to which Dep. Coach told the inmate he was just being, "silly." She continued to search the cell and located a number of books, which she brought to his attention. She inquired as to what three he'd like to keep. He said that he was reading one book, so he wished to hold onto it, another book belonged to someone in a different cell (that would be book number two), and then he declined to answer as to what book he'd like to keep as book number three. With no answer on what additional book he'd like to have, Dep. Coach gathered the rest of them up, to include the one closest to the doorway (a Bible) and placed them under the railing on the concrete floor until she could place them back into the book storage area. She denied ever throwing the Bible in the trash at all.

Shortly thereafter Pill Call took place. By the time she got to cell number thirteen (housing Inmate Milton Winchester), she noticed that the one of the books which had been in Inmate Sindell's cell was now in Winchester's cell. Inmate Winchester informed her that Inmate Sindell had borrowed the book from him. The book was returned whilst both inmates were at Pill Call.

When she completed her cell searches, Dep. Coach returned to Inmate Sindell's cell in order to ask him if he wished to have another book, in particular the Bible. Inmate Sindell said, 'Get the fuck out of my room; I want my Bible.' Upon being talked to in that manner, Dep. Coach exited the cell. She later viewed Inmate Sindell on the kiosk within L-Pod; she assumed he was typing a grievance.

Dep. Coach stated that what she believed to have happened is that Inmate Winchester had influenced Inmate Sindell to come up with a reason to grieve her because she took away an extra towel that was in Inmate Winchester's cell and additionally turned a television within the Pod away from facing Inmate Winchester's cell. Someone kept moving the television to face a certain direction, so she moved it back to its original position of facing forward.

Dep. Coach denied singling out Inmate Sindell for any purpose and advised that she had never even written him up or taken recreation time for the contraband located within his cell.

*Prior to Dep. Coach exiting the Watch Commander's office, Lt. Craig instructed her that from now on, she needed to call movement if an inmate declined to stand-up from his bed during a cell search instead of working around the inmate and trying to handle the situation herself while allowing the inmate to remain lying down.*

**REVIEW OF L-POD VIDEO**   (see attachment 7)

Video from within L-Pod was pulled and reviewed for the mornings of June 24th and 25th to see if any footage was available that would show the searches of Inmate Sindell's cell. The following notations were made:

June 24, 2020

- Just after 1255hrs, Dep. Coach is seen beginning her cell searches. She started with cell #1 on the bottom tier (Inmate Sindell's assigned cell)
- At approximately 1255:15hrs, the cell door is unlocked and opened, and by 1255:20hrs, Dep. Coach is inside of the cell. Inmate Thomas is seen standing outside with a trash bag
- At approximately 1256:18hrs, Dep. Coach throws something into the trash
- At approximately 1256:34hrs, Dep. Coach throws something into the trash
- At approximately 1257:18hrs, Dep. Coach exits cell #1, closing the door and by 1257:23hrs she has started to open the cell door to #2 to begin a cell search.
- Throughout this time, another orderly was going up/down the bottom tier washing the outside of windows.

June 25, 2020

- At approximately 0657:26hrs, Dep. Coach unlocks Inmate Sindell's cell (#1)
- At approximately 0657:33hrs, Inmate Weathington is seen standing in the doorway & holding open the cell door
- At approximately 0657:49hrs, Inmate Thomas is seen walking up to cell #1, where he begins cleaning/wiping off the window within the cell door
- From approximately 0657:50hrs through 0658:47hrs, Inmate Thomas continues to clean. He then leans out the rail outside of cell #1. Inmate Weathington stands in the cell's doorway holding a trash bag, and Dep. Coach is inside of the cell itself.
- At approximately 0659:48hrs, Dep. Coach exits cell #1 and hands several books to Inmate Weathington, who places them under the railing in front of said cell
- At approximately 0659:49hrs, cell #1's door is shut and Dep. Coach walks onto cell #2 for a search. By 0659:57hrs, Dep. Coach has opened up cell #2's door.

   The video within L-Pod was equipped for audio; however, no words can be distinguished due to the distance from cell #1 to the camera's mic. Also, the inside of cell #1 is not visible from due to the orderlies blocking the doorway and the cell door itself not being propped all-the-way open.

## MEDICAL EVALUATION  (see attachment 8)

   Inmate Sindell was sent to Medical and seen by Nurse Rawni Sprague at approximately 0905 hours on June 25, 2020. Her notations were as follows:



| Encounter | | 06-25-2020 Thu 09:05 AM |
|---|---|---|
| SINDELL, ADAM HARLEN | Epic# 019074    Gender: Male | DOB 04-30-1975 |
| Dictation: | came to medical after receiving 'an injury' in pod. Patient has a 1 cm circulerence abrasion to left inner elbow, appears that first layer of skin rubbed off, no bleeding or drainage noted. area cleaned TAO & bandaid applied, patient returned to pod | |
| Vitals: | Blood Pressure: 111/72<br>Temperature: 98.1<br>Pulse: 66<br>Pulse Oxygen: 99<br>Respirations: 18 | |
| Condition Related To: | | |
| Dates: | Current Illness Date:<br>1st Date Of Illness:<br>Unable To Work Dates:<br>Hospitalization Dates: | |
| Diagnosis: | | |
| Procedures: | | |
| Providers: | Attending Provider: SPRAGUE, RAWNI, , SCM ID: | |
| Facility: | Houston County Detention Center | |
| Encounter Type:> | | |

A photograph of Inmate Sindell's alleged injury resulting from this incident was additionally taken:



## SUMMARY

On June 25, 2020 just after 0800 hours, a grievance was received from Inmate Adam Sindell alleging that Dep. Coach had assaulted him and thrown his Bible into the trash. He was called-up to the Watch Commander's office, where he reiterated his account of events, advising that Dep. Coach forcefully pulled his mattress out from underneath him, causing him to strike his elbow on the bed's frame and injure him all the while laughing about the situation. This happened yesterday morning, as well, and though the two had played around previously, the more he thought about it, the more he realized that he was being picked-on by Dep. Coach.

A trustee from June 24th was called-up to the Watch Commander's office in an attempt to see if he would be willing to talk about the search of Inmate Sindell's cell on that date. That inmate, Tavares Thomas, stated that Inmate Sindell was always playing. On the 24th, Inmate Sindell stuffed some contraband under his bed mattress for Dep. Coach to find and then wouldn't get up when she tried to search for it. Dep. Coach and Inmate

Sindell were both finding the situation comical, and she rolled the inmate off to the bedside by picking up on one side of his mattress. Contraband was located and disposed of, with nothing negative happening to either party. In reference to Inmate Sindell's cell being chosen daily for search when Dep. Coach was working, that was true; the same would be true for every other inmate within the Pod because Dep. Coach searches everyone's cell, every day.

A trustee, Inmate Weathington, from June 25th, today, was then asked to come to the Watch Commander's office. He, too, agreed to talk about the search of Inmate Sindell's cell, advising that Dep. Coach went-in and told the inmate to get up so she could look under his mattress. "He wouldn't do it," according to this inmate, so Dep. Coach pulled up on the side of his mattress to look underneath it; he rolled over to the one side. When the deputy finished searching, she again asked Inmate Sindell to get up so that she could put the mattress back on his bunk, but Inmate Sindell would still not move, informing the deputy that he had an erection. Too many books were found in cell #1; inmates are only allowed to have three and Inmate Sindell had around six in his room. Inmate Weathington stated that due to Inmate Sindell's lack of response once Dep. Coach asked him which three books he wished to keep, most of them were taken out of his cell until he could decide. None were ever thrown in the trash, and there was no mention of legal paperwork or legal/pastoral telephone numbers being written in the Bible. Following the removal of the literature, Inmate Sindell claimed injury, which was "bullshit," per Inmate Weathington. In reference to Dep. Coach searching Inmate Sindell's cell more often than other inmates', that was false, too, as Inmate Weathington advised that Dep. Coach searches every cell, every day she is working.

Dep. Coach was called to the Watch Commander's office and said that Inmate Sindell has always played around a lot. It has not ever really bothered her, as she goes into each cell for a quick sweep of the obvious each day and did not mind an inmate remaining inside during her search. On last date, Dep. Coach stated that Inmate Sindell informed her that she'd overlooked some contraband within his cell, telling her it was under his mattress. He was asked to get off the bed, but declined, so she pulled-up the side of the mattress and allowed him to roll to the side of the bed next to the wall. Sure enough, there was contraband, just as the inmate had told her. It was removed from the cell and thrown in the trash.

The following day, today, when Dep. Coach was doing her daily cell checks, she again requested Inmate Sindell to get up from bed, but he, again, declined to do so, asking the deputy if she was going to roll him off the mattress like she'd done yesterday. Dep. Coach called him, "silly," and continued her search. She did pick up on the side of the inmate's mattress, and he rolled over to the other side of the bunk so the mattress could be removed. There was no mention of him being injured or claiming that he'd been assaulted by the deputy at this time.

When the deputy located a number of extra books in Inmate Sindell's room, there was some confusion, or non-answering, by the inmate as to what literature he wished to keep; he added that he had a book belonging to Inmate Milton Winchester, as well, which he was told that while it was in his cell, it counted as a book for him (Sindell). Dep. Coach took several of the books, awaiting the inmate to make a decision of which one(s) he wanted to keep. They were not trashed, nor were the re-distributed during this wait time. Dep. Coach discovered, during her search of cell #13, Inmate Winchester's cell, that Inmate Sindell returned the borrow book to Inmate Winchester, so when she completed the bottom tier searches, she returned to cell #1 to ask Inmate Sindell what other books he wished to have. He'd mentioned the Bible earlier, so she inquired about that. Inmate Sindell cursed at her, so she left the cell without distributing another book to him.

Video was pulled from both June 24th and June 25th. While no audio was available, it was verified that contraband was thrown into the trash by the deputy on the 24th. It was additionally verified that on the 25th, no books, to include the Bible, were thrown into the trash. Due to the inaudibility of the conversations between the deputy and Inmate Sindell, I could decipher any words which the had spoken to each other.

Inmate Sindell, after claiming injury, was seen by Nurse Sprague of Southern Correctional Medicine, where he was photographed with an approximated one centimeter area of skin near his elbow having been "rubbed off," per the nurse's notes. The inmate claimed that this was done when the mattress got pulled out from underneath him this morning.

Dep. Coach was instructed by Lt. Theresa Craig to, in the future, call for Movement when an inmate declines to follow instructions, even if it's simply not getting out of bed when being told to do so for a search. This deputy was also told that it would behoove her to run her body camera when situations such as this arise so that if she is accused of wrong doing, camera footage can assist with proving the allegations either true or false. While there was camera footage available from within L-Pod, it was limited and lacked coherent sound; an activated body camera would have added more concise evidence to the investigation.

## CONCLUSION

After viewing video, taking into consideration each individual's account reference to the allegations leveled by Inmate Sindell, and considering that both inmate witnesses declined to fully support his allegation details against Dep. Coach, I find that any accusation of Dep. Coach violating the following HCSO policy are UNSUSTAINED:

Section 5, page 5 of the Houston County Sheriff's Office Policy and Procedure Manual under subsection 4(A) titled *Conduct Unbecoming an Officer*

I find no grounds for Inmate Sindell's accusation that he is targeted unfairly by Dep. Coach for cell searches, as she searches all cells within the Pod, daily. I also find it disproven that Dep. Coach threw Inmate Sindell's Bible into the trash. There is no evidence to support the claim that Dep. Coach acted in a manner that would discredit herself, the department, or Houston County.

In reference to any violation of the HCSODC's use of force policy, I find any allegation that Dep. Coach violated it as UNFOUNDED:

Section 8.1, page 1 of the Houston County Detention Facility Policy and Procedure Manual under subsection II(C) titled *Use of Force*

Inmate Sindell's claim of police brutality and assault by an officer are based on his claim that she forcefully pulled out a mattress from under him, allegedly causing him pain and injury. Both of the trustee witnesses (one from the 24th and one from the 25th of June) underscore that these events did not take place as portrayed by Inmate Sindell.

These findings will be turned over to HCSODC administration for review and consideration. Nothing further -------------------------------------

George Runyon      6/25/20
Lieutenant / Office of Professional Standards
Houston County Sheriff's Office

# Reply to Inmate Grievance

Inmate: <u>ADAM SINDELL</u>

Location: L 01 A 3

Kiosk:

Entry ID: 252001

Inmate ID: 19074

Inmate State ID:

Subject: police brutality..excessive force..cruel an unusual punishment

Assigned To: All

Classification: Pod Rules

Complaint Against:None

Date Added: Jun 25, 2020 - 7:25 am CDT

Grievance:

at approximately 7:30 am on 6/25/20 I was assaulted by officer coach. She charged into my room while I was sleeping to conduct a "shakedown" and started yelling at me to get out of my bed. When I didn't get out of my bed fast enough (according to her) she grabbed my mattress and yanked it out from under me causing me to flip over onto the steel bed causing my elbow to slam into the metal and now my elbow is injured. Officer Coach then threw my mattress on top of me and her and the orderly had a big laugh while I layed there in pain. Then she took my bible. She did this because she knows I use a bible as a source of escape from my incarceration and read it a lot. She said I had too many books but I do not I only have two . I told her to please give me my bible back that I have my pastors and legal phone numbers inside it . officer Coach said something foul and then threw away my bible and again laughed saying next time you will do what I say. This is not the first time this has occurred either. She has conducts a shakedown of my cell every single day. I do not have any contraband nor have I in the past this is just a way for her to harass and assault me. Yesterday ( June 24 2020 she did the same thing. She came into my cell yet that day she didn't even ask me to get up she just snatched my mattress out from under me causing me to flip onto the steel frame and laughed. I stated that that was police brutality she just laughed and stated " I knew you were going to say thatâ€....I do not feel I should be subject to being assaulted by staff for any reason and my religious material should not be subject to confiscation as a form of harassment so I am writing this grievance and am considering legal action against officer coach and this facility.

Status:

In Progress

Notes for Admin:

Notes for Inmate:

**Item History**

No history found




# HOUSTON COUNTY SHERIFF'S OFFICE
**202 Carl Vinson Pkwy**
**Warner Robins, GA 31088**
**Phone (478) 542-2080    Fax (478) 542-2138**

## A – I – C   REPORT

☒ Allegation of Misconduct          ☐ Inquiry          ☐ Commendation

RECEIVED BY:    ☐ TELEPHONE          ☐ IN PERSON          ☐ EMAIL          ☐ SOCIAL MEDIA

☒ OTHER: Grievance Form

DATE REPORTED: 06-25-2020                    TIME REPORTED: approx. 0815hrs

DATE OF OCCURANCE:   06-24 & 06-25-2020                TIME OF OCCURANCE: approx 1300 & 0700hrs

LOCATION OF OCCURANCE: L-Pod  HCSODC  cell #1

EMPLOYEE(S) NAMED AND ASSIGNMENT(S):

1.  LaTonya Coach
2.

IMMEDIATE SUPERVISOR    CONTACTED?    ☒ YES          ☐ NO

IF IMMEDIATE SUPERVISOR NOT CONTACTED, EXPLAIN WHY:

(CODES: **RP** – REPORTING PARTY, **W** – WITNESS, **A** – ARRESTED, **PA** – PERSON ALLEGED MISCONDUCT AGAINST)

| CODE | NAME | SEX | D.O.B. | WORK ADDRESS / PHONE | HOME ADDRESS / PHONE |
|------|------|-----|--------|----------------------|----------------------|
| RP | Adam Sindell | M | / | Inmate, HCSODC | 478-218-4900 |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

<u>ALLEGATION:</u>

Inmate Sindell alleges that Dep. Coach assaulted & injured him by pulling out a bed mattress from underneath him while he was lying in bed.




# HOUSTON COUNTY SHERIFF'S OFFICE
## 202 Carl Vinson Pkwy
## Warner Robins, GA 31088
### Phone (478) 542-2080    Fax (478) 542-2138

| | | | | |
|---|---|---|---|---|
| MEMOS REQUESTED | ☐ YES ☒ NO | MEMOS ATTACHED | ☐ YES ☒ NO |
| TAPE / DISC REQUESTED | ☒ YES ☐ NO | TAPE / DISC ATTACHED | ☒ YES ☐ NO |
| PREVIOUS CONTACTS | ☐ YES ☒ NO | CONNECTING CR(S) | ☐ YES ☒ NO |
| REPORT(S) ATTACHED | ☒ YES ☐ NO | PHOTO(S) ATTACHED | ☒ YES ☐ NO |

### EVALUATION OF SOURCE:

☐ RELIABLE        ☐ UNRELIABLE        ☒ RELIABILITY UNKNOWN

### EVALUATION OF INFORMATION:

☐ CONFIRMED        ☐ PROBABLY TRUE        ☐ POSSIBLY TRUE

☐ DOUBTFULLY TRUE    ☐ IMPROBABLE        ☒ TRUTH CANNOT BE JUDGED

SIGNATURE OF INTERVIEWER __Lt. George Runyon_____        BADGE # __3215_____

### DO NOT WRITE BELOW THIS LINE

### INVESTIGATION CLASSIFICATION:

☐ COMMUNICATION        ☐ INQUIRY        ☐ INFORMAL INV.        ☒ FORMAL INV.

### FINAL ACTION TAKEN:

☐ VERBAL OR WRITTEN REPRIMAND        ☐ SUSPENSION/TERMINATION        ☐ UNFOUNDED ALLEGATION
☐ COMMENDATION PLACED IN FILE

### ADMINISTRATIVE SERVICES DIVISION REVIEW:

RECEIVED BY: _Office of Professional Standards_____ DATE: 6/25/2020        TIME: 0830hrs

REVIEWED BY: _____    DATE: _____    TIME: _____

employee business in such might tend to cast an
adverse reflection on the department of any officer or
employee therefor, no officer shall receive any gift or
gratuity from other officers or employees higher in rank
without the express permission of the sheriff.

3. OTHER TRANSACTIONS

Officers and employees are prohibited from buying or
selling anything of value from or to any complainant,
suspect, witness, defendant, prisoner, or other person
involved in any case which has come to their attention or
which arose out of their departmental employment except
as may be specifically authorized by the sheriff.

4. REWARDS

Officers and employees shall not accept any gift, gratui-
ty or reward in money or other consideration for services
rendered in the line of duty to the community or to any
person, business or agency except lawful salary and that
which may be authorized by law or approved by the sher-
iff.

   • DISPOSITION OF UNAUTHORIZED GIFTS, GRATUITIES, ETC.

Any unauthorized gift, gratuity, loan, fee, reward or
other thing falling into any of the above categories
which come into the possession of any officer or employee
shall be forwarded to the sheriff together with a written
report explaining the circumstances connected therewith.

5. CONDUCT UNBECOMING AN OFFICER

A) An officer must at all times, on and off duty, conduct
himself in a manner which does not bring discredit to him-
self, the department or the county.

B) Conduct unbecoming an officer shall include that conduct:

   1. Which adversely affects the morale or efficiency of
   the department.

   2. Which has a tendency to destroy public respect for
   employees and confidence in the department.

C) To sustain conduct unbecoming an officer it is not neces-
sary that the alleged conduct be criminal in character nor
that it be proved beyond a reasonable doubt.

D) Violations may be charged under conduct unbecoming an
officer or under a specific rule.

Typical examples of conduct unbecoming an officer include,
but are not limited to:

# SECTION 8

# USE OF FORCE

I.        **USE OF FORCE**                    **SECTION 8.1**

**F 05.01.01    I.    POLICY**
Detention Deputies in the HCDC use the minimum amount of force necessary to control inmates.

**F 05.01.02    II.    PROCEDURES**
In the event an inmate becomes uncooperative, the deputy is to direct the inmate to conduct the desired behavior.

A.    If the inmate continues to be uncooperative, the deputy is to summon back up to physically control the inmate. While awaiting backup, if the deputy reasonably believes an inmate is in danger of death or great bodily harm that deputy should take action to prevent that death or great bodily harm.

**F 05.02.06    C.    Detention Deputies shall use the minimum amount of force necessary to:**
**F 05.02.04**

1.    physically control an inmate,

2.    protect staff, inmates, and other persons,

3.    to prevent damage to the HCDC and HCDC equipment,

4.    maintain or restore order and discipline,

5.    enforce the lawful orders of the HCDC, and

6.    further other legitimate penological interests where safety, security and control are threatened.

**F 05.02.03    D.    Deputies shall not use force:**

1.    as a punishment;

2.    in a purposeless, malicious, or sadistic manner;

3.    for the very purpose of causing harm. or

4.    for any purpose which does not further a legitimate government interest or which is an excessive or exaggerated response to that legitimate interest.

1

 **Encounter**                                          **06-25-2020 Thu 09:05 AM**

 **SINDELL, ADAM HARLEN**      **Epic# 019074**    **Gender: Male**    **DOB 04-30-1975**

| | |
|---|---|
| **Dictation:** | came to medical after receiving 'an injury' in pod. Patient has a 1 cm circuference abrasion to left inner elbow. appears that first layer of skin rubbed off. no bleeding or drainage noted. area cleaned TAO & bandaid applied. patient returned to pod |
| **Vitals:** | Blood Pressure: 114/72<br>Temperature: 98.1<br>Pulse: 66<br>Pulse Oxygen: 99<br>Respirations: 18 |
| **Condition Related To:** | |
| **Dates:** | Current Illness Date:<br>1st Date Of Illness:<br>Unable To Work Dates:<br>Hospitalization Dates: |
| **Diagnosis:** | |
| **Procedures:** | |
| **Providers:** | Attending Provider: SPRAGUE, RAWNI, , SCM ID: |
| **Facility:** | Houston County Detention Center |
| **Encounter Type:>** | |

**EXHIBIT 2**

# Reply to Inmate Medical Request

Inmate: ADAM SINDELL

Location: E 03 B 3

Entry ID: 1364351

Inmate ID: 19074

Inmate State ID:

Kiosk Name:

Subject: medical

Assigned To: All

Date Added: Jul 21, 2020 - 9:03 pm CDT

Emergency: ☐ This request is an emergency.

Kiosk ID: 0

Indigent: Yes

Request:

My neck and back are still causing me pain..my hand keeps going numb

Fee: 0.00

Status:

Resolved Unsubstantiated

Notes for Inmate:          NSC Scheduled

## Item History

| Date | Modified By | Assigned To | Status |
|------|-------------|-------------|--------|
| 07/21/2020 09:37:29 pm CDT | (scmmedical) SCM Medical | () | Resolved Unsubstantiated |

# Reply to Inmate Medical Request

Inmate: <u>ADAM SINDELL</u>                          Entry ID: 1470363

Location: E 03 B 3                                Inmate ID: 19074

Inmate State ID:

Kiosk Name:                                       Kiosk ID: 0

Subject: Pain                                    Indigent: Yes

Assigned To: All

Date Added: Sep 24, 2020 - 2:34 pm CDT

Emergency:  ⊔ This request is an emergency.

Request:

Still having serious back pain . need to see the doctor. Am I scheduled for a follow up with the doctor since I had xrays
taken ? I can't deal with is pain every single day. It is starting to affect my mental well being. My wrist also has not
gotten better it has not regained flexibility and is constantly hurting. The gabapentin seems to be working somewhat for
my neck/nerve problem but by the time I wake up I'm back in pain I think it would help me to have it twice a day.
Mainlyni need to speak with the doctor

Fee: 0.00

Status:

Resolved Unsubstantiated

Notes for Inmate:          NSC Scheduled

## Item History

No history found

# Reply to Inmate Medical Request

Inmate: <u>ADAM SINDELL</u>

Location: E 03 B 3

Kiosk Name:

    Subject: medication renew

Assigned To: All

Date Added: Jul 15, 2020 - 7:23 pm CDT

Emergency: ☐ This request is an emergency.

Entry ID: 1355613

Inmate ID: 19074

Inmate State ID:

Kiosk ID: 0

Indigent: Yes

Request:

My meds apparently ran out last night ..I still need them . I am still In A lot of pain just have been trying to be quiet about it:can my medications please be refilled? They were working some now I'm already back in pain

    Fee: 0.00

Status:

Resolved Unsubstantiated

Message History

Date: 07/16/2020 5:33 am CDT
User: SCM Medical (scmmedical)
scheduled

Notes for Inmate:

**Item History**

No history found

# Reply to Inmate Medical Request

Inmate: <u>ADAM SINDELL</u>

Location: E 03 B 3

Entry ID: 1440572

Inmate ID: 19074

Inmate State ID:

Kiosk Name:

Kiosk ID: 0

Subject: emergency

Indigent: Yes

Assigned To: All

Date Added: Sep 7, 2020 - 9:11 am CDT

Emergency: ☐ This request is an emergency.

Request:

I have been requesting to see the doctor for months. I am in extreme pain and my hand keeps going numb

Fee: 0.00

Status:

Resolved Substantiated

Notes for Inmate:    you are scheduled Friday 09/11 with MD

## Item History

No history found

# Reply to Inmate Medical Request

Inmate: <u>ADAM SINDELL</u>

Location: E 03 B 3

Entry ID: 1342489

Inmate ID: 19074

Inmate State ID:

Kiosk Name:

Subject: emergency

Assigned To: All

Date Added: Jul 7, 2020 - 12:20 pm CDT

Emergency:  ⌐ This request is an emergency.

Kiosk ID: 0

Indigent: Yes

Request:

I am in extreme pain. My back has started hurting so bad I can't take it.. I can't even sleep the pain is so bad ...I have barely slept at all in the past two days..the ibuprofen I have been taking for the pain is not even taking the pain away Anymore... I think something is seriously wrong

Fee: 0.00

Status:

Resolved Unsubstantiated

Notes for Inmate:        NSC Scheduled

## Item History

No history found

# Reply to Inmate Medical Request

Inmate: <u>ADAM SINDELL</u>                          Entry ID: 1393995
Location: E 03 B 3                              Inmate ID: 19074
                                           Inmate State ID:

Kiosk Name:                                Kiosk ID: 0
Subject: back                              Indigent: Yes
Assigned To: All
Date Added: Aug 10, 2020 - 9:43 am CDT
Emergency:  ☐  This request is an emergency.
Request:

Back still hurting pain is sometimes unbearable.. Hard for me to lay in bed..

Fee: 0.00

Status:

Resolved Unsubstantiated

**Message History**

Date: 08/11/2020 8:53 am CDT
User: SCM Medical (scmmedical)
Your follow up appointment is scheduled for 9/17/2020.

**\*\* Waiting on Inmate response since 08/11/2020 8:53 am CDT \*\***

Notes for Inmate:

**Item History**

No history found

# Reply to Inmate Medical Request

Inmate: <u>ADAM SINDELL</u>

Location: E 03 B 3

Entry ID: 1367592

Inmate ID: 19074

Inmate State ID:

Kiosk Name:

Subject: emergency

Assigned To: All

Date Added: Jul 23, 2020 - 7:21 pm CDT

Emergency: ☐ This request is an emergency.

Kiosk ID: 0

Indigent: Yes

Request:

I am in extreme pain. My back and neck have not stopped hurting ..my left hand is going numb frequently`

Fee: 0.00

Status:

Resolved Unsubstantiated

Notes for Inmate:          Scheduled NSC.

## Item History

No history found

# Reply to Inmate Medical Request

Inmate: <u>ADAM SINDELL</u>

Location: E 03 B 3

Entry ID: 1404960

Inmate ID: 19074

Inmate State ID:

Kiosk Name:

Subject: in excruciating pain

Assigned To: All

Date Added: Aug 16, 2020 - 6:59 pm CDT

Emergency:  ⊔ This request is an emergency.

Kiosk ID: 0

Indigent: Yes

Request:

Dont know what to do. Back pain is not going away. Left hand keeps going numb. I need an mri

Fee: 0.00

Status:

Resolved Unsubstantiated

Notes for Inmate:          Scheduled

## Item History

No history found

# Reply to Inmate Medical Request

Inmate: <u>ADAM SINDELL</u>

Location: E 03 B 3

Entry ID: 1422593

Inmate ID: 19074

Inmate State ID:

Kiosk Name:

Subject: emergency

Assigned To: All

Date Added: Aug 27, 2020 - 7:11 am CDT

Emergency:   ☐ This request is an emergency.

Kiosk ID: 0

Indigent: Yes

Request:

I am in agonizing pain at times other times dull aching pain but it is not going away. I need to see a doctor.

Fee: 0.00

Status:

Resolved Unsubstantiated

Notes for Inmate:            NSC scheduled

**Item History**

No history found