IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| ADAM SINDELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION FILE |
| v. ) | |
| ) | NO. 5:22-cv-00365-TES |
| LATONYA COACH, et al., ) | |
| ) | |
| Defendants. ) | |

**RESPONSE DEFENDANTS' STATEMENT OF MATERIAL FACTS**

Pursuant to Fed. R. Civ. P. 56 and/or L.R. 56 of the Court, Plaintiff responds to Defendants' Statement of Undisputed Material Facts by showing that the following alleged facts are inaccurate, objectionable, unsupported by evidence, or otherwise invalid and present genuine issues for trial. Plaintiff further lists additional Disputed Facts that present an issue for trial. By not responding to a specific fact with a (-), Plaintiff deems the fact admitted solely for the purpose of this motion and in no way stipulate, waive, or admit any alleged facts for any other purpose, including trial. Plaintiff's responses directly correspond, by number, to Defendants' Statement of Material Facts:

1. –

2. –

3. Having spent time in the Houston County jail prior to the incident, Plaintiff knew the policies for inmates, however Plaintiff also understood that some jailers enforced some rules while other jailers did not enforce some rules which made many of the rules arbitrary. Sindell Dep. at 86:12-24.

4. –

5. –

6. While it is not contested that Plaintiff was locked down, it is contested that Defendant Coach's lockdown of Plaintiff was valid pursuant to policies, as other staff members at the jail told Sindell that Defendant Coach was not supposed to have locked down Plaintiff. Sindell Dep. at 105:12-19.

7. –

8. –

9. –

10. Plaintiff indeed left his cell in an attempt to send a message to his girlfriend to ask that she call the jail and report Defendant Coach for wrongfully and unjustifiably placing Plaintiff on lockdown. Sindell Dep. at 105:20 – 106:3.

11. Plaintiff's First Amendment claim rests on the fact that Defendant Coach threw away Plaintiff's bible, as well as Defendants trying to prevent Plaintiff from calling his family in order to ask for help against the unlawful

treatment of Plaintiff while he was in pretrial incarceration. Sindell Dep. 177-78.

12. There is no evidence that Plaintiff heard the alleged order from Defendant Coach.

13. It is not disputed that Plaintiff did not respond, but Plaintiff did not respond to Defendant Coach's command to return to his cell because Plaintiff did not hear the command due to concentrating on typing his message regarding Defendant Coach's wrongful treatment of him. Sindell Dep. at 115:19 – 116:10.

14. It is not disputed that Coach told all inmates to lockdown, however it is disputed whether the entire pod should have been locked down at this time, or the reason for the lockdown, as there was no routine shift change or meal distribution at the time, nor was there any situation demonstrating that the pod was "out of control" so as to justify the lockdown, which are stated reasons for a jailer to lock down an entire pod. Even in the latter situations, "most pods wouldn't get locked down unless there was a fight or something like that." Cleckner Dep. at 38:17 – 40:13

15. It is disputed that Plaintiff "ignored" Defendant Coach's orders, as he did not hear Defendant Coach's alleged orders. Sindell Dep. at 115:19 – 116:10.

16. –

17. –

18. It is not disputed that Defendant Coach called for backup. However, given that Plaintiff did not hear Defendant Coach's orders to lockdown, it is disputed that Plaintiff "refused" to do so. Sindell Dep. at 115:19 – 116:10.

19. –

20. It is disputed that the video depicted Plaintiff remaining at the kiosk upon realizing that Defendants Cleckner and Boerger arrived in the pod, as the video shows Plaintiff looking up to see both Defendants and slowly walking towards them and his cell. Pod video at 14:07:46.

21. –

22. –

23. Plaintiff calmly walked toward his cell and Defendant Cleckner in a non-aggressive manner and also did not make any verbal threats against Defendants. Pod video at 14:07:46; Sindell Dep. at 107:8-12; Cleckner Dep. at 56:14-18.

24. It is disputed that Plaintiff began to argue. Sindell Dep. at 107:8-12.

25. It is disputed that Plaintiff dropped his shoulder, as this is not depicted in the video and did not occur. Pod vide at 14:07:50-55.

26. It is not disputed that Defendant Cleckner testified to his own "feelings" about Plaintiff, but it is disputed that Defendants' "feelings" are material to the case, as the standard for "reasonableness" is based on objective facts, not subjective "feelings" or considering the situation in "20/20 hindsight". Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015). Plaintiff did not refuse commands or take an aggressive posture, according to the video.

27. Deputy Cleckner slammed Plaintiff's body and head to the floor in an extremely aggressive and forceful manner. Pod video at 14:07:50 *et seq.*

28. It is not disputed that Defendant Boerger unsuccessfully attempted to prevent Plaintiff's head from hitting the concrete. However it is disputed that he "[made] sure" that Plaintiff's head did not slam against the concrete floor, as the fact that Plaintiff suffered from a seizure from the attack, as well as the internal investigation observed that Defendant Boerger grabbed Plaintiff's back and shoulder, and Plaintiff hit the concrete floor first with his head, neck and shoulder. All of this demonstrates that Defendant Boerger's efforts were unsuccessful. Pod video at 14:07:55; Exhibit 1 at 11.

29. These still shots are not disputed, but it is disputed that this demonstrates the full context of the "take down," as the two images depicted below are screenshots from the same video once Plaintiff's head hit the concrete

ground with Defendant Boerger's hands supporting Plaintiff's shoulders and not preventing Plaintiff's head from hitting the concrete. The full video, in context, is accurate.

 

Pod video at 14:07:55 and 14:07:56.

30. It is not disputed that Plaintiff does not recall what occurred between being taken to the ground and waking up in the hallway due to being unconscious and having seizures, though there is video of much of this time period. See Pod Video.

31. It is disputed that Plaintiff remained conscious and resisted giving up his right arm, as Plaintiff was unconscious and having seizures upon being taken to the ground. Pod Video at 14:07:55 onwards.

32. It is not disputed that Defendants cuffed Plaintiff while Plaintiff was unconscious and having seizures. Id.

33. It is disputed that Defendants "did not strike Plaintiff in any way," as a jury can find that the act of "taking Plaintiff to the ground" as constituting a "strike" upon Plaintiff.

34. It is undisputed that Defendants attempted to pick up Plaintiff while he was unconscious and limp. Id.

35. It is undisputed that Defendants attempted to place Plaintiff in a chair while Plaintiff remained unconscious and having a seizure. Id.

36. It is not disputed that Plaintiff was having a seizure, nor is it disputed that Defendants perceived that Plaintiff was having a seizure. Id.; see also Exhibit 1.

37. –

38. It is not disputed that officers attempted to prevent Plaintiff from harming himself upon realizing he was having a seizure. However, it is disputed that Plaintiff was prevented from hitting hard surfaces altogether, as Plaintiff was slammed into the concrete ground by Defendant Cleckner, causing his head to hit the concrete despite Defendant Boerger attempting to support Plaintiff's upper torso, and Defendants Cleckner and Boerger continued to rough-handle Plaintiff while he was unconscious on the concrete floor prior

to them finally acknowledging that Plaintiff was indeed unconscious and having a seizure. See Pod Video at 14:07:55 onwards.

39. –

40. It is not disputed that Plaintiff fell out of the wheel chair after suffering from another seizure in the hallway. It is, however, disputed that this area was where Plaintiff regained consciousness, as this is a hallway that leads to a patio area before Defendants carried Plaintiff to the medical pod. Sindell Dep. at 108.

41. It is disputed that Plaintiff "fabricated" what he recalls, as Plaintiff was suffering a seizure at the time of this event, and Plaintiff has since suffered from memory issues due to the injury causing unconsciousness and seizures. Sindell Dep. at 83:10-14; 84:25 – 86:7.

42. It is not disputed that Defendants transported Plaintiff to the medical pod after slamming him into the concrete ground, causing him to become unconscious while continuing to handle him roughly, and only making the decision to take him to the medical pod upon finally realizing that Plaintiff was having seizures.

43. It is disputed that Plaintiff had no visible injuries other than "a mildly lacerated lip", as Plaintiff's wrist is seen to be favored and stiff in the

photographs, as well as the Pod Video catching visible seizures of an internal head injury.

44. It is not disputed that Plaintiff suffered bruising and cuts. Plaintiff also suffered from an injured wrist, seizures, a low grade fever, and continued pain that limited his ability to work. Exhibit 1 at 15-16; Sindell Dep. at 108:6-7, 166:17-25.

45. –

**ADDITIONAL FACTS THAT PRESENT A GENUINE ISSUE FOR TRIAL**

1. Generally the pods in the detention center could house up to 85 inmates. However, during the COVID pandemic, the inmate population for each pod did not exceed 50 inmates. Coach Dep. at 55:19 – 56:4.

2. Prior to Defendant Cleckner's physical use of force of body slamming Plaintiff head first into a concrete floor, Plaintiff was not verbally or physically threatening, and the pod was calm. Coach Dep. at 59:17-23.

3. Defendant Coach described the scene prior to the take down as "calm" and "not threatening." Id.

4. The move Defendant Cleckner used was neither approved, nor taught in Use of Force training, and was similar to a "form tackle" used in football. Exhibit 1 at 14, 21.

5. The internal investigation report found that Defendant Boerger's perspective that Plaintiff had clenched jaws was not verified on the video. Exhibit 1 at 21.

6. The internal investigation report also conceded that Defendant Cleckner's take down of Plaintiff was "not pretty to look at on video." Id. at 22.

7. No body camera footage exists because Defendants did not utilize their body cameras in violation of the detention center's policy. Cleckner Dep. at 79:19 – 80:21, 86:9-24; Coach Dep. at 77:17 – 78:20.

    Respectfully Submitted, this 11th day of September, 2023.

        /s/ Jessica Burton
        Jordan Johnson
        Georgia State Bar No. 673643

        Jessica Burton
        Georgia State Bar No. 196253
        Attorneys for Plaintiff

Bernard & Johnson, LLC
5 Dunwoody Park
Suite 100
Atlanta, GA  30338
404.477.4755
404.592.9089 (Fax)
Alex@Justice.Law
Jessica@Justice.Law

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| ADAM SINDELL, | ) |
|     Plaintiff, | ) ) ) CIVIL ACTION FILE |
| v. | ) ) NO. 5:22-cv-00365-TES |
| LATONYA COACH, et al., | ) ) |
|     Defendants. | ) |

## CERTIFICATE OF SERVICE

On this date, I have served Plaintiff's Response to Defendants' Statement of Material Facts and Brief in Opposition to Defendant's Motion for Summary Judgment on defense counsel via a valid ECF system or mail.

Respectfully Submitted, this 11th day of September, 2023.

/s/ Jessica Burton
Jordan Johnson
Georgia State Bar No. 673643

Jessica Burton
Georgia State Bar No. 196253
Attorneys for Plaintiff

Bernard & Johnson, LLC
5 Dunwoody Park
Suite 100
Atlanta, GA  30338

404.477.4755
404.592.9089 (Fax)
Alex@Justice.Law
Jessica@Justice.Law