IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| ADAM SINDELL,<br>    Plaintiff,<br>v.<br><br>LATONYA COACH, *et al.*,<br>    Defendants. | )<br>)<br>)<br>)   CIVIL ACTION FILE NO.:<br>)<br>)<br>)   5:22-cv-00365-CAR |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

COME NOW Defendants COACH and CLECKNER in this action and file their Reply Brief in Support of their Motion for Summary Judgment as follows:

**OVERVIEW**

This case involves federal and state claims arising from a use of force incident in the Houston County Jail. Defendants are sheriff's deputies who moved for summary judgment. Plaintiff responded, and Defendants address Plaintiff's arguments below.

**ARGUMENTS AND CITATIONS TO AUTHORITY**

**I.    PLAINTIFF ABANDONS CERTAIN CLAIMS**

Defendants moved for summary judgment on all claims against them. Plaintiff abandons any federal claim involving denial of medical care, and he abandons all claims under state law.[1] Plaintiff does not provide any substantive response to Defendants' arguments against those claims, which requires dismissal.[2] With the scope of issues before the Court appropriately

---

[1] Aside from failing to argue for any state law claim, Plaintiff provides no response to dispositive state law defenses argued for summary judgment, such as official immunity. Doc. 21 at 19.

[2] See Jones v. Bank of Am., N.A., 564 F. App'x 432, 434 (11th Cir. 2014) (finding abandonment where claim was not defended against summary judgment motion); Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim abandoned, and affirming grant of summary judgment, as to claim presented in complaint but not defended in initial response to motion for summary judgment); Richardson v. Quitman Cty., 912 F. Supp. 2d 1354,

narrowed, Defendants address Plaintiff's arguments below.

## II.   PLAINTIFF FAILS TO OVERCOME QUALIFIED IMMUNITY

Plaintiff does not contest that Defendants acted within their discretionary authority for purposes of qualified immunity. Therefore, "[t]he burden of showing that an officer violated clearly established law falls on the plaintiff … ." Estate of Salter v. Mitchell, 711 F. App'x 530, 537 (11th Cir. 2017). To overcome qualified immunity, courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Id. (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 743, 131 S.Ct. 2074 (2011); citing Taylor v. Barkes, 575 U.S. 822, 135 S.Ct. 2042 (2015)).

Here, in opposition to qualified immunity Plaintiff cites nothing more than general rules. He has not shown by reference to binding precedent that any Defendant's specific conduct clearly violated the federal constitution. Where "[n]o controlling precedent put [any Defendant's] alleged violation beyond debate," qualified immunity is required. Echols v. Lawton, 913 F.3d 1313, 1324 (11th Cir. 2019). As discussed in more detail for each particular type of claim, qualified immunity entitles Defendants to summary judgment.

## III.   QUALIFIED IMMUNITY BARS PLAINTIFF'S EXCESSIVE FORCE CLAIM

### A.   Deputy Cleckner's Force Was Reasonable and Proportional to the Situation

After significant briefing and in light of video, there is not much more to be said about the ordinary takedown underlying this case. Caselaw says a takedown was justified, Deputy Boerger supported Plaintiff on the way to the ground, and a medical response was immediate and there is no objective evidence of a significant injury. This was more than trivial use of force, but not much more.

"The use of a takedown is not disproportionate to the need to control an inmate who has

---

1372 (M.D. Ga. 2012) (same).

2

failed to obey a jailer's orders." Miles v. Jackson, 757 F. App'x 828, 830 (11th Cir. 2018) (per curiam) (internal quotation marks and citation omitted) (recognizing that the use of the takedown was not excessive force when the prisoner was tackled onto his bed and then to the cell floor after failing to comply with an order). Jail officers can use "a takedown to subdue an inmate as long as a valid penological reason supports the use of such force." Sconiers v. Lockhart, 946 F.3d 1256, 1264 (11th Cir. 2020).  The rule from Miles and Sconiers is exactly on point, and no binding case existed to the contrary at the time of this incident. See also Tate v. Rockford, 497 F. App'x 921, 925 (11th Cir. 2012) ("Our precedent … permits the use of force even when a defendant is not physically resisting."). Plaintiff fails to meet his burden to show a violation of clearly established law. Consequently, qualified immunity bars Plaintiff's excessive force claim.

      **B.**      **Deputy Coach Cannot be Liable for Failure to Intervene**

The record, including clear video, plainly shows that Deputy Coach was not close enough to intervene, she did not know that Deputy Cleckner would tackle Plaintiff, the tackle was too fast for anyone to intervene, and the tackle was not clearly excessive. Therefore, Deputy Coach had no Fourth Amendment duty to intervene and the claim against her must be dismissed. See Johnson v. White, 725 F. App'x 868, 878 (11th Cir. 2018);  Hadley v. Gutierrez, 526 F.3d 1324, 1330-31 (11th Cir. 2008); Sanders v. City of Union Springs, 207 Fed.Appx. 960, 966 (11th Cir.2006) ("[G]iven that the plaintiffs are unable to establish a constitutional violation, their claim for failure to intervene must fail.").

      **C.**      **Neither the Fourteenth nor the Eighth Amendment Applies**

Plaintiff was a pretrial detainee so the Fourth Amendment governs his excessive force claim. Kingsley v. Hendrickson, 576 U.S. 389, 135 S. Ct. 2466 (2015). It follows that neither the less specific Fourteenth Amendment nor the Eighth Amendment apply here. Albright v. Oliver, 510 U.S. 266, 273, 114 S. Ct. 807, 813 (1994) ("Where a particular Amendment "provides an

explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." Graham v. Connor, 490 U.S. at 395, 109 S.Ct., at 1871"); Tinney v. Shores, 77 F.3d 378, 381 (11th Cir. 1996); Tittle v. Jefferson Cnty. Comm'n, 10 F.3d 1535, 1546 (11th Cir. 1994) (*en banc*) ("It is well settled that the Eighth Amendment prohibitions against cruel and unusual punishment do not apply to pretrial detainees.").

### D.  Plaintiff Fails to Show a Clear Fourth Amendment Violation

Plaintiff offers nothing but general rules to support his contention that Defendant Cleckner used excessive force, and therefore qualified immunity bars this claim. Plaintiff does not offer a case that told Defendants that the level of force used here clearly violated the Fourth Amendment. In all but the most extreme cases—and this is not one of them—the dearth of supporting authority is fatal to Plaintiff's claim.

"[S]pecificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." Mullenix v. Luna, 577 U.S. 7, 12, 136 S.Ct. 305 (2015) (*per curiam*) (internal quotation marks omitted).

> Use of excessive force is an area of the law "in which the result depends very much on the facts of each case," and thus police officers are entitled to qualified immunity unless existing precedent "squarely governs" the specific facts at issue. [Mullenix,]136 S.Ct., at 309 (internal quotation marks omitted and emphasis deleted).

Kisela v. Hughes, — U.S. —, 138 S. Ct. 1148, 1153 (2018); see also Brosseau v. Haugen, 543 U.S. 194, 201, 125 S.Ct. 596 (2004) (qualified immunity applied where prior precedents were fact-specific and none of them "squarely govern[ed] the case … ."); Corbitt v. Vickers, 929 F.3d 1304, 1312 (11th Cir. 2019) ("if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant.").

The Supreme Court has "repeatedly told courts ... not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." Plumhoff v. Rickard, 572 U.S. 765, 779, 134 S. Ct. 2012, 2023 (2014) (internal punctuation and citation omitted). The Eleventh Circuit has said the same thing in a different way. See Estate of Salter v. Mitchell, 711 F. App'x 530, 537 (11th Cir. 2017) ("a plaintiff's citation of general rules or abstract rights is insufficient to strip a 1983 defendant of his qualified immunity."); Gilmore v. Hodges, 738 F.3d 266, 278 (11th Cir.2013) (same). Plaintiff fails to overcome qualified immunity for his excessive force claim.

IV.   **QUALIFIED IMMUNITY BARS PLAINTIFFS' FIRST AMENDMENT CLAIM**

   A.   **The Only First Amendment Retaliation Act Raised in the Complaint and Disclosed in Discovery is Use of Force in Response to Plaintiff's Refusal to Lock Down**

The Court does not allow plaintiffs "to raise additional claims for the first time in a response brief as this deprives the opposing party of the proper notice of the claim as well as the opportunity to develop a defense." Robinson v. Houston Cty., No. 5:09-CV-156 (CAR), 2010 U.S. Dist. LEXIS 58298, at *7-8 (M.D. Ga. 2010) (citing Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("[P]laintiff may not amend her complaint through argument in a brief opposing summary judgment."); Iraola & CIA, S.A. v. Kimberly-Clark Corp., 325 F.3d 1274, 1286 (11th Cir. 2003) (stating that claims not raised in a complaint cannot be raised for the first time in plaintiff's response to defendant's motion for summary judgment)).

As applied here, the Complaint's only reference to the First Amendment says this:

Assuming arguendo that Defendants' violent actions were in response to any action by Plaintiff, Defendants' actions were solely in response to protected speech by Plaintiff, a violation of his First Amendment rights.

Doc. 1-1 at ¶ 43.

So, the Complaint says that the use of force incident ("Defendants' violent actions") was

in retaliation for some unspecified "protected speech by Plaintiff." When asked what particular speech was a basis for retaliation, Plaintiff testified it was his e-mail to his girlfriend using the kiosk. Sindell Dep. at 177-178. Likewise, Plaintiff's interrogatory response says this about the basis for his claim:

> Defendant Deputy Jacob Cleckner used excessive force and attacked Plaintiff without reason. Defendants Coach and Boerger further created what Plaintiff believes to be the conditions that aggravated Plaintiff's injuries, including negligently placing Plaintiff in a chair after a seizure, causing further injuries. Plaintiff believes this conduct was in an attempt to stifle and suppress Plaintiff's right to reasonable objections and consideration of Plaintiff's need to maintain communications with those in the community who support Plaintiff, and Plaintiff's complaint that he was set up to have more books than the number authorized in order to suffer punishment.

*Plaintiff's Responses to Interrogatories* 7 and 11 (incorporating answer to Interrogatory 7) (interrogatory responses are filed as an Exhibit with this Reply).

So, when squarely asked what conduct underlies his First Amendment claim, Plaintiff answered that the use of force incident involving Deputy Cleckner, as well as the aftermath of that incident, was in retaliation for Plaintiff's e-mail and/or his complaint about books.

A party is prohibited from raising a claim that was not revealed in response to discovery requests that require disclosure. Fed.R.Civ.P. 37(c); Mee Indus. v. Dow Chem. Co., 608 F.3d 1202, 1221 (11th Cir. 2010) (barring undisclosed theory of damages); SiteLock LLC v. GoDaddy.com LLC, 562 F. Supp. 3d 283, 322 (D. Ariz. 2022) (barring legal theory as a discovery sanction where party failed "to provide fair notice of its intent to pursue the theories at issue"); N.J. Dep't of Envtl. Prot. v. Atl. Richfield Co. (In re Methyl Tertiary Butyl Ether), No. 1:00-1898, 2014 U.S. Dist. LEXIS 15966, at *13 (S.D.N.Y. Feb. 6, 2014) (barring undisclosed theory under Rule 37).

Accordingly, the rules require rejection of any attempt by Plaintiff to expand the nature or type of a First Amendment retaliation claim beyond his pleadings and discovery. With that in

mind, Defendants consider the First Amendment claim arguably raised in the Complaint and disclosed in discovery.

  **B.** **Plaintiff Makes No Argument that Deputy Cleckner Retaliated, and There is No Evidence to Support Retaliatory Motive by Cleckner**

There is no evidence, and no contention by Plaintiff, that Deputy Cleckner had some prior conflict with Plaintiff, or that Cleckner knew anything about Plaintiff's book incident, any grievance, or any other claimed "speech." Sindell Dep. at 67; Cleckner Dep. at 33-34. The record reveals that Deputy Cleckner simply responded to a call for help from another officer and then acted to deal with the situation. This is not even arguably "retaliation." See Nieves v. Bartlett, 139 S. Ct. 1715, 1727-1728 (2019) (holding that Officer Weight could not be liable for retaliation where there was no evidence he knew about acts for which other officer allegedly retaliated); Farrow v. West, 320 F.3d 1235, 1248-49 (11th Cir. 2003) (affirming summary judgment on retaliation claim when evidence established that alleged retaliator had no knowledge of an inmate's protected speech). Therefore, Deputy Cleckner is entitled to summary judgment on Plaintiff's First Amendment claim.

  **C.** **There Is No Evidence to Support Retaliation by Deputy Coach in this Incident**

Plaintiff alleges that his prior grievance filing against Deputy Coach caused her to retaliate in this incident. As evidence, Plaintiff asserts that when Deputies Cleckner and Boerger arrived, Coach told them Plaintiff "needs his ass kicked." Sindell Dep. at 106:20. Similar to Plaintiff's false story about Deputy Cleckner choking him in a hallway—which is refuted by video—video reveals this allegation about Deputy Coach's comment is pure fiction.[3]

The Pod incident video reveals Deputies Cleckner and Boerger arriving shortly after time

---

  [3] Compare Hall video at 0:30 *et seq.* (showing what happened in the hallway, which manifestly did not involve choking) with Sindell Dep. at 109 (falsely claiming in great detail how he was choked by Defendant Cleckner in the hallway).

stamp 14:07:40. Officers' statements can be heard on the video, including Deputy Coach's statements. Deputy Coach never says anything about Sindell needing his "ass kicked." See Pod video; Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769 (2007) (finding that video recording was objective evidence that conclusively established the record). The upshot is that Plaintiff simply fabricated the "needs his ass kicked" story and perjured himself by telling that story under oath. See ABF Freight System, Inc. v. N.L.R.B., 510 U.S. 317, 323, 114 S.Ct. 835, 839 (1994) ("[f]**alse testimony in a formal proceeding is intolerable**. **We must neither reward nor condone such a "flagrant affront" to the truth-seeking function of adversary proceedings.**").

As discussed below, Plaintiff's attempt to twist Deputy Coach's legitimate response to Plaintiff's misconduct into a retaliation claim has been tried before by other inmates. Courts usually are too smart to fall for that.

### D. Defendant Coach's Response to Plaintiff's Misconduct Was Objectively Reasonable, Rendering Allegedly Retaliatory Motive Irrelevant

In the prisoner context one critical requirement for a First Amendment claim is that the alleged retaliatory action "did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). That is one way to say that, where the inmate's action violates a jail rule, an officer's response to the inmate's violation is caused *by the violation,* not retaliation, and the officer's response cannot support a retaliation claim. See O'Bryant v. Finch, 637 F.3d 1207, 1215-1216 (11th Cir. 2011) (holding that "a prisoner cannot maintain a retaliation claim when he is convicted of the actual behavioral violation underlying the alleged retaliatory false disciplinary report and there is evidence to sustain the conviction"; and the inmate "suffered adverse action (here 30 days' disciplinary confinement) because he actually violated the prison rules and not because of his earlier grievances"); Smith v. Mosley,

532 F.3d 1270, 1277 (11th Cir. 2008) (dismissing inmate retaliation claim where inmate's "false and insubordinate remarks fell within the rules' proscriptions"); Moulds v. Bullard, 345 F. App'x 387, 394 (11th Cir. 2009) (holding that punishment for sending a note in violation of jail rules could not ground a retaliation claim); Thaddeus-X v. Blatter, 175 F.3d 378, 395 (6th Cir. 1999) ("if a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct' ").

Here, Plaintiff left his cell in clear violation of jail rules, ignored Deputy Coach's multiple orders to lock down, and he triggered an escalated response from Deputy Coach, who had to call backup officers. Any other reasonable officer in Deputy Coach's place would have had to do the same thing. Coach's only other alternatives were to (1) allow Plaintiff's misconduct to pass without a response or (2) physically compel Plaintiff to get back in his cell, by herself. Both of those options were patently unreasonable, particularly where Deputy Coach was responsible to supervise dozens of other inmates.[4]

Under prevailing law, qualified immunity bars Plaintiff's retaliation claim because Deputy Coach's response to Plaintiff's misconduct was justified and motivated by a lawful purpose. There can be no serious dispute about that. In fact, Plaintiff does not argue that he was really allowed to be out of his cell or allowed to ignore Coach's orders.

Even if Plaintiff had some evidence for improper motive in addition to Deputy Coach's clearly lawful motive to restore order and do her job, for qualified immunity the only showing required is that the defendant's purpose was lawful *in part*, even if improper motive was also in play.

> Unless it, as a legal matter, is plain under the specific facts and circumstances of the case that the defendant's conduct—despite [her] having adequate lawful reasons to support the act—was the result of [her] unlawful motive, the defendant is entitled to

---

[4] Plaintiff asserts there were roughly 50 male inmates in this dorm, rather than the normal 80, and he thinks that makes some difference. Fifty male inmates is just as overwhelming as 80 for a single female officer faced with a defiant inmate and a potential physical confrontation.

immunity. Where the facts assumed for summary judgment purposes in a case involving qualified immunity show mixed motives (lawful *and* unlawful motivations) and pre-existing law does not dictate that the merits of the case must be decided in plaintiff's favor, the defendant is entitled to immunity.

Foy v. Holston, 94 F.3d 1528, 1535 (11th Cir. 1996) (emphasis in original); see also Brannon v. Finkelstein, 754 F.3d 1269, 1279 (11th Cir. 2014) (granting qualified immunity in mixed motive case); Huff v. Walton Cty., Ga., No. 3:20-CV-57 (CDL), 2022 U.S. Dist. LEXIS 162390, at *32 (M.D. Ga. 2022) (granting qualified immunity to individuals where a jury could find action based on both lawful and unlawful grounds); *cf.* Mt. Healthy v. Doyle, 429 U.S. 274, 286, 97 S. Ct. 568 (1977) (establishing burden-shifting in case against a government entity, where government is entitled to judgment if it would have taken the same action regardless of retaliatory motive).

Here, as a matter of objective reality Deputy Coach had to respond to Plaintiff's misconduct by calling other officers, and video reveals that is all she did. Even if—contrary to the record—Deputy Coach wanted to retaliate against Plaintiff, she had no choice but to act as any other reasonable officer in her situation would. She gave orders to Plaintiff—which he ignored—and then she called for backup. The record shows legitimate, objectively reasonable action consistent with Deputy Coach's job responsibilities. Consequently, qualified immunity bars Plaintiff's retaliation claim against Deputy Coach.

### V.   PLAINTIFF CANNOT RECOVER PUNITIVE DAMAGES

Plaintiff offers nothing more than conclusory commentary to support punitive damages. There is no evidence that any Defendant acted with "evil motive or intent, or … reckless or callous indifference to [Plaintiff's] federally protected rights." Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640 (1983). Accordingly, Defendants are entitled to summary judgment on the punitive damages claim.

## CONCLUSION

For each of the foregoing reasons, and as discussed more thoroughly in Defendants' initial Brief, Defendants are entitled to summary judgment.

Respectfully submitted,

WILLIAMS & WAYMIRE, LLC

/s/ Jason C. Waymire
JASON C. WAYMIRE
Georgia Bar No. 742602
Attorney for Defendants

Building 400, Suite A
4330 South Lee Street, NE
Buford, Georgia 30518
(678) 541-0790
(678) 541-0789
jason@wmwlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing **REPLY BRIEF** and attached **EXHIBIT** upon all parties to all counsel through the Court's CM/ECF system.

This October 9, 2023.

/s/ Jason Waymire
JASON WAYMIRE
Georgia Bar No. 742602

11